# EXHIBIT J

**NOT YET SCHEDULED FOR ORAL ARGUMENT**

No. 24-1135

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

DENKA PERFORMANCE ELASTOMER LLC,

*Petitioner*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,

*Respondents.*

ON PETITION FOR REVIEW OF FINAL AGENCY ACTION OF THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

**RESPONDENTS' OPPOSITION TO MOTION TO STAY FINAL RULE**

|  | TODD KIM |
|---|---|
|  | *Assistant Attorney General* |
| *Of Counsel:* |  |
| MICHAEL THRIFT | BRANDON N. ADKINS |
| HALI KERR | *Attorney, Environmental Defense* |
|   Office of General Counsel | *Section* |
|   U.S. Environmental Protection Agency | Environment and Natural Resources Division |
|   Washington, D.C. | U.S. Department of Justice |
|  | P.O. Box 7611 |
|  | Washington, D.C. 20044 |
|  | (202) 616-9174 |
|  | Brandon.Adkins@usdoj.gov |

# BACKGROUND

## A. Statutory Background

The Clean Air Act establishes a comprehensive program for controlling and improving the Nation's air quality. At dispute are emission standards that EPA promulgated under 42 U.S.C. § 7412. 89 Fed. Reg. 42,932 (May 16, 2024) ("the Rule").

Section 7412 establishes a process for regulating emissions of hazardous air pollutants from stationary sources. Among the hazardous air pollutants that Congress identified for regulation is the carcinogen chloroprene. 42 U.S.C. § 7412(b)(1). EPA must identify the types of facilities (called source categories) that emit hazardous air pollutants like chloroprene and establish emissions standards for each category. *See id.* § 7412(c).

Section 7412's regulatory framework uses a two-stage process. First, for each category of regulated sources, EPA sets technology-based emission standards. *Id.* § 7412(d). Later, EPA must review the standards to see (1) whether to update them given technological developments (this is known as the technology review), *id.* § 7412(d)(6), and (2) whether more measures are needed to address any remaining health risks or adverse environmental effects (this is known as the residual-risk review), *id.* § 7412(f)(2).

3

The residual-risk review considers, among other things, the maximum lifetime individual cancer risk from exposure to the source category's emissions. That risk is generally presumed to be acceptable if it is no higher than 1 in 10,000 (or 100 in 1 million). *See* 54 Fed. Reg. 38,044, 38,044–45 (Sept. 14, 1989) (setting forth EPA's approach to risk); 42 U.S.C. § 7412(f)(2)(B); *NRDC v. EPA*, 529 F.3d 1077, 1080 (D.C. Cir. 2008).

The compliance deadline for section 7412(f) chloroprene standards applicable to Denka is relevant to the motion. Existing sources generally must comply with section 7412(f) residual risk standards within ninety days after their effective date. 42 U.S.C. § 7412(f)(4)(A). Congress authorized EPA to grant a longer compliance period of up to two years after the effective date of section 7412(f) standards. *Id.* § 7412(f)(4)(B); *Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 672 (D.C. Cir. 2013). EPA may grant such an extension upon finding that (1) it is necessary for the installation of controls and (2) steps will be taken during the extension period to ensure that the health of persons will be protected from imminent endangerment. 42 U.S.C. § 7412(f)(4)(B).

**B.    The Rule**

In the Rule, EPA amended emissions standards that apply to several source categories under section 7412, among other regulations. Relevant here, the Rule imposes section 7412(f) standards for ethylene oxide and chloroprene emissions.

4

Denka makes chloroprene and uses the chloroprene to produce neoprene, an oil-resistant substitute for natural rubber. *See* Mot. 1 & n.1. Denka is the only affected neoprene producer currently operating in the United States. 89 Fed. Reg. at 42,955. Its lone production facility is adjacent to Fifth Ward Elementary School in St. John the Baptist Parish. *See id.* at 42,964. Children are especially susceptible to chloroprene's harmful effects because it can damage DNA. *Id.* at 43,058.

EPA initially proposed to extend the deadline for existing sources to comply with the ethylene oxide and chloroprene standards to up to two years after the effective date. *See id.* at 42,954. EPA finalized the two-year extension for the ethylene oxide standards. *See id.* For existing sources producing neoprene (that is, Denka's facility in Louisiana), EPA finalized the ninety-day statutory default period for the chloroprene standards, which ends on October 15, 2024. 40 C.F.R. § 63.481(o), (p)(2). EPA provided that an existing source producing neoprene may request an extension under section 7412(f)(4)(B) if it demonstrates the statutory and regulatory prerequisites. 89 Fed. Reg. at 42,955 (citing 42 U.S.C. § 7412(f)(4)(B); 40 C.F.R. § 63.6(*i*)(4)(ii)). EPA acknowledged this "change from the proposed rule" and justified it "due to the EPA's finding that chloroprene emissions from the only [existing neoprene] source pose an imminent and substantial endangerment under [42 U.S.C. § 7603]." *Id.*

5

### C. Clean Air Act Endangerment Action

In February 2023, the United States, acting at EPA's request, had filed a complaint alleging that carcinogenic chloroprene emissions from Denka's neoprene manufacturing operations in Louisiana present an imminent and substantial endangerment to public health and welfare. Compl. ¶ 1, Opp'n Ex. A.[1] The United States alleges that thousands of infants, young children, and adults living in nearby communities are being exposed to an unacceptably high risk of developing certain cancers because of Denka's chloroprene emissions. *E.g.*, *id.* ¶¶ 6, 11.

The United States seeks injunctive relief that would require Denka immediately to reduce its chloroprene emissions to levels that no longer cause or contribute to unacceptably high cancer risks within neighboring communities, including at the adjacent elementary school. *Id.*

In February 2024, the district court granted the United States' motion to reset the March 2024 trial date considering the forthcoming Rule and continued the trial. Mot. to Continue Trial 1, Opp'n Ex. B; Minute Entry of Feb. 16, 2024, at 1–

---

[1] All citations in this subsection are to documents filed in *United States v. Denka Performance Elastomer, LLC*, E.D. La. Case No. 2:23-cv-00735, and, for convenience, are exhibits to this Opposition.

2, Opp'n Ex. C. The court set a status conference for July 17 to discuss the effect of the Rule on the endangerment action. Order 1, Opp'n Ex. D.

### D. Denka's Response to the Rule

Before filing the Petition, Denka asked EPA to stay the Rule's chloroprene standard for neoprene producers under the Administrative Procedure Act, 5 U.S.C. § 705. Mot. Ex. V. EPA denied Denka's request without prejudice because Denka had not followed through in requesting an extension of the compliance deadline under the regulations implementing section 7412(f)(4). Mot. Ex. W. In its response, EPA explained that under its regulations, such a request must focus narrowly on the specific measures the applicant intends to pursue to reduce emissions from a specific source. *Id.*

Denka petitioned for review of the Rule without submitting a compliance-extension request to EPA under section 7412(f). Denka and EPA had informal discussions regarding a potential compliance-extension request, in which EPA "made clear . . . that [Denka] must commit to substantial additional actions to obtain relief from the 90-day implementation period." Mot. Ex. X, at 2. Denka did not submit a compliance-extension request before filing this motion, or since.[2]

---

[2] Denka states that it has requested a compliance extension from a Louisiana state agency and suggests it lacked notice that EPA was not delegating authority to states to grant or deny extension requests under 40 C.F.R. § 63.6(*i*)(4)(ii). Mot. 8;
*Cont.*

7

## STANDARD OF REVIEW

Like a preliminary injunction, a stay of a rule is an "extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008). Denka shoulders the burden to justify a stay. *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985). The Court considers (1) whether Denka made a strong showing that it is likely to succeed on the merits; (2) whether Denka will suffer irreparable harm absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) whether a stay would serve the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The third and fourth requirements merge here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

On the merits, the Court must uphold the compliance deadline in the Rule unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(9)(A); *id.* § 7607(d)(1)(C) (noting that subsection (d) applies to "any standard under section 7412(f)"). In this analysis, the Court applies the same standard of review as under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See Allied Loc. & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 68 (D.C. Cir. 2000). Relevant here, Denka shoulders the burden to show EPA

---

*see* 89 Fed. Reg. at 42,955 n.33. Denka offers no argument why EPA's delegation decision is unlawful. Any purported compliance extension granted by a state agency to Denka would be ineffectual.

8