# **<u>EXHIBIT B</u>**

[FR Doc. 04–6309 Filed 3–25–04; 8:45 am]
BILLING CODE 6560–50–P

---

# ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Parts 60, 61, and 63**

[LA–69–2–7617a; FRL–7638–7]

**New Source Performance Standards and National Emission Standards for Hazardous Air Pollutants; Delegation of Authority to Louisiana**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Direct final rule; delegation of authority.

**SUMMARY:** The Louisiana Department of Environmental Quality (LDEQ) has submitted updated regulations for receiving delegation of EPA authority for implementation and enforcement of New Source Performance Standards (NSPS) and National Emission Standards for Hazardous Air Pollutants (NESHAPs) for all sources (both part 70 and non-part 70 sources). These regulations apply to certain NSPS promulgated by EPA at 40 CFR part 60, as amended through July 1, 2002; and certain NESHAPs promulgated by EPA, as amended through July 1, 2002, for both 40 CFR part 61 and 63 standards. The delegation of authority under this notice does not apply to sources located in Indian Country. EPA is providing notice that it has approved delegation of certain NSPS to LDEQ, and taking direct final action to approve the delegation of certain NESHAPs to LDEQ.

**DATES:** This rule is effective on May 25, 2004, without further notice, unless EPA receives adverse comment by April 26, 2004. If EPA receives such comment, EPA will publish a timely withdrawal in the **Federal Register** informing the public that this rule will not take effect.

**ADDRESSES:** Comments may be submitted electronically, by mail, or through hand delivery/courier. Follow the detailed instructions as provided in the **SUPPLEMENTARY INFORMATION** section below.

**FOR FURTHER INFORMATION CONTACT:** Mr. Jeffery Robinson, U.S. EPA, Region 6, Multimedia Planning and Permitting Division (6PD), 1445 Ross Avenue, Dallas, TX 75202–2733, (214) 665–6435; or electronic mail at *robinson.jeffrey@epa.gov*.

**SUPPLEMENTARY INFORMATION:**

Table of Contents

I. General Information
II. What Does This Action Do?
III. What Is The Authority For Delegation?
IV. What Criteria Must Louisiana's Program Meet To Be Approved?
V. How Did LDEQ Meet The Subpart E Approval Criteria?
VI. What Is Being Delegated?
VII. What Is Not Being Delegated?
VIII. How Will Applicability Determinations Under Section 112 Be Made?
IX. What Authority Does EPA Have?
X. What Information Must LDEQ Provide To EPA?
XI. What Is EPA's Oversight Of This Delegation To LDEQ?
XII. Should Sources Submit Notices To EPA Or LDEQ?
XIII. How Will Unchanged Authorities Be Delegated To LDEQ In The Future?
XIV. What Is The Relationship Between RCRA And The Hazardous Waste Combustor MACT?
XV. Final Action
XVI. Statutory and Executive Order Reviews

## I. General Information

### A. What Is the Public Rulemaking File?

EPA is committed to ensuring public access to the information that is used to inform the public of the Agency's decisions regarding the environment and human health and to ensuring that the public has an opportunity to participate in the Agency's decision process. The official public rulemaking file consists of the documents specifically referenced in this action, any public comments received, and other information related to this action. The public rulemaking file does not include Confidential Business Information (CBI) or other information for which disclosure is restricted by statute, although such information is a part of the administrative record for this action. The public rulemaking file is the collection of materials that is available for public viewing at the Regional Office. The administrative record is the collection of material used to inform the public of the Agency's decision on this rulemaking action.

### B. How Can I Get Copies of This Document and Other Related Information?

1. *An official public rulemaking file is available for inspection at the Regional Office.* The Regional Office has established an official public rulemaking file for this action under LA–69–2–7617a. The public rulemaking file is available for viewing at the Air Permits Section, U.S. Environmental Protection Agency, 1445 Ross Avenue, Suite 700, Dallas, Texas 75202–2733. EPA requests that, if at all possible, you contact the person listed in the **FOR FURTHER INFORMATION CONTACT** section two working days in advance to schedule your inspection. The Regional Office's official hours of business are Monday through Friday, 8:30 a.m. to 4 p.m. excluding Federal holidays.

2. *Copies of the State submittal.* Copies of the State submittal are also available for public inspection during official business hours, by appointment at the Louisiana Department of Environmental Quality, 602 N. Fifth Street, Baton Rouge, LA 70802.

3. *Electronic Access.* You may access this **Federal Register** document electronically through the Regulation.gov Web site located at *http://www.regulations.gov* where you can find, review, and submit comments on federal rules that are open for comment and have been published in the **Federal Register**.

The E Government Act of 2002 states that to "to the extent practicable" agencies shall accept electronic comments and establish electronic dockets. Also, President Bush's management plan for government includes a government-wide electronic rulemaking system. The first phase of the e-Rulemaking initiative was the development of a Federal portal that displays all **Federal Register** notices and proposed rules open for comment. The URL for this site is *http://www.regulations.gov*. The site also provides the public with the ability to submit electronic comments that can then be transferred to the Agency responsible for the rule.

EPA's policy is to make all comments it receives, whether submitted electronically or on paper, available for public viewing at the Regional Office as EPA receives them and without change. However, those portions of a comment that contain properly identified and claimed CBI or other information for which disclosure is restricted by statute will be excluded from the public rulemaking file. The entire comment, including publicly restricted information, will be included in the administrative record for this action.

### C. How and To Whom Do I Submit Comments?

You may submit comments electronically, by mail, or through hand delivery/courier. To ensure proper receipt by EPA, identify the appropriate docket identification number in the subject line on the first page of your comment. Please ensure that your comments are submitted within the specified comment period. Comments received after the close of the comment period will be marked "late." EPA is not required to consider these late comments. If you wish to submit CBI or information that is otherwise protected by statute, please follow the instructions in Section I.D, below. Do not use e-mail

to submit CBI or information protected by statute.

1. *Electronically.* If you submit an electronic comment as prescribed below, EPA recommends that you include your name, mailing address, and an e-mail address or other contact information in the body of your comment. Also include this contact information on the outside of any disk or CD ROM you submit, and in any cover letter accompanying the disk or CD ROM. This ensures that you can be identified as the submitter of the comment, and allows EPA to contact you in case EPA cannot read your comment due to technical difficulties or needs further information on the substance of your comment. EPA's policy is that EPA will not edit your comment, and any identifying or contact information provided in the body of a comment will be included as part of the comment that is placed in the public rulemaking file, and may be made available in EPA's electronic public docket. If EPA cannot read your comment due to technical difficulties and cannot contact you for clarification, EPA may not be able to consider your comment.

i. *E-mail.* Comments may be sent by electronic mail (e-mail) to *robinson.jeffrey@epa.gov,* Attention "Public comment on proposed rulemaking LA–69–2–7617a." In contrast to EPA's electronic public docket, EPA's e-mail system is not an "anonymous access" system. If you send an e-mail comment directly to the Docket without going through EPA's electronic public docket, EPA's e-mail system automatically captures your e-mail address. E-mail addresses that are automatically captured by EPA's e-mail system are included as part of the comment that is placed in the official public docket, and made available in EPA's electronic public docket.

ii. *Regulations.gov.* As an alternative to e-mail, you may submit comments electronically to EPA by using the Federal web-based portal that displays all **Federal Register** notices and proposed rules open for comment. To use this method, access the Regulations.gov Web site at *http://www.regulations.gov,* then select "Environmental Protection Agency" at the top of the page and click on the "Go" button. The list of current EPA actions available for comment will be displayed. Select the appropriate action and please follow the online instructions for submitting comments. Unlike EPA's e-mail system, the Regulations.gov Web site is an "anonymous" system, which means EPA will not know your identity, e-mail address, or other contact information, unless you provide it in the text of your comments.

iii. *Disk or CD ROM.* You may submit comments on a disk or CD ROM that you mail to the mailing address identified in Section I.C.2, directly below. These electronic submissions will be accepted in WordPerfect, Word, or ASCII file format. You should avoid the use of special characters and any form of encryption.

2. *By Mail.* Send your comments to: Jeff Robinson, Air Permits Section (6PD–R), Multimedia Planning and Permitting Division, U.S. Environmental Protection Agency, 1445 Ross Avenue, Suite 700, Dallas, Texas 75202–2733. Please include the text "Public comment on proposed rulemaking LA–69–2–7617a" in the subject line of the first page of your comments.

3. *By Hand Delivery or Courier.* Deliver your written comments or comments on a disk or CD ROM to: Jeff Robinson, Air Permits Section (6PD–R), Multimedia Planning and Permitting Division, U.S. Environmental Protection Agency, 1445 Ross Avenue, Suite 700, Dallas, Texas 75202–2733, Attention "Public comment on proposed rulemaking LA–69–2–7617a." Such deliveries are only accepted during official hours of business, which are Monday through Friday, 8:30 a.m. to 4:00 p.m., excluding Federal holidays.

*D. How Should I Submit CBI to the Agency?*

For comments submitted to the Agency by mail or hand delivery, in either paper or electronic format, you may assert a business confidentiality claim covering confidential business information (CBI) included in your comment by clearly marking any part or all of the information as CBI at the time the comment is submitted to EPA. CBI should be submitted separately, if possible, to facilitate handling by EPA. Submit one complete version of the comment that includes the properly labeled CBI for EPA's official docket and one copy that does not contain the CBI to be included in the public docket. If you submit CBI on a disk or CD ROM, mark on the outside of the disk or the CD ROM that it contains CBI and then identify the CBI within the disk or CD ROM. Also submit a non-CBI version if possible. Information which is properly labeled as CBI and submitted by mail or hand delivery will be disclosed only in accordance with procedures set forth in 40 CFR part 2. For comments submitted by EPA's e-mail system or through Regulations.gov, no CBI claim may be asserted. Do not submit CBI to Regulations.gov or via EPA's e-mail system. Any claim of CBI will be waived for comments received through Regulations.gov or EPA's e-mail system. For further advice on submitting CBI to the Agency, contact the person listed in the **FOR FURTHER INFORMATION CONTACT** section of this notice.

*E. Privacy Notice*

It is important to note that the comments you provide to EPA will be publicly disclosed in a rulemaking docket or on the Internet. The comments are made available for public viewing as EPA receives them and without change. Any personal information you choose to include in your comment will be included in the docket. However, EPA will exclude from the public docket any information labeled confidential business information (CBI), copyrighted material or other information restricted from disclosure by statute.

Comments submitted via Regulations.gov will not collect any personal information, e-mail addresses, or contact information unless they are included in the body of the comment. Comments submitted via Regulations.gov will be submitted anonymously unless you include personal information in the body of the comment. Please be advised that EPA cannot contact you for any necessary clarification if technical difficulties arise unless your contact information is included in the body of comments submitted through Regulations.gov. However, EPA's e-mail system is not an anonymous system. E-mail addresses are automatically captured by EPA's e-mail system and included as part of your comment that is placed in the public rulemaking docket.

*F. What Should I Consider as I Prepare My Comments for EPA?*

You may find the following suggestions helpful for preparing your comments:

1. Explain your views as clearly as possible.
2. Describe any assumptions that you used.
3. Provide any technical information and/or data you used that support your views.
4. If you estimate potential burden or costs, explain how you arrived at your estimate.
5. Provide specific examples to illustrate your concerns.
6. Offer alternatives.
7. Make sure to submit your comments by the comment period deadline identified.
8. To ensure proper receipt by EPA, identify the appropriate docket identification number in the subject line

on the first page of your response. It would also be helpful if you provided the name, date, and **Federal Register** citation related to your comments.

## II. What Does This Action Do?

EPA is providing notice that it is delegating authority for implementation and enforcement of certain NSPS to LDEQ. EPA is also taking direct final action to approve the delegation of certain NESHAPs to LDEQ. With this delegation, LDEQ has the primary responsibility to implement and enforce the delegated standards.

## III. What Is the Authority for Delegation?

Section 111(c)(1) of the Clean Air Act (CAA) authorizes EPA to delegate authority to any state agency which submits adequate regulatory procedures for implementation and enforcement of the NSPS program. The NSPS standards are codified at 40 CFR part 60.

Section 112(l) of the CAA and 40 CFR part 63, subpart E, authorizes EPA to delegate authority to any state or local agency which submits adequate regulatory procedures for implementation and enforcement of emission standards for hazardous air pollutants. The hazardous air pollutant standards are codified at 40 CFR parts 61 and 63, respectively.

## IV. What Criteria Must Louisiana's Program Meet To Be Approved?

EPA previously approved LDEQ's program for the delegation of NSPS. 47 FR 07665 (February 22, 1982). This action notifies the public that EPA is updating LDEQ's delegation to implement and enforce certain NSPS. As to the NESHAP standards in 40 CFR parts 61 and 63, section 112(l) of the CAA enables EPA to approve State air toxics programs or rules to operate in place of the Federal air toxics program or rules. 40 CFR part 63, subpart E (subpart E) governs EPA's approval of State rules or programs under section 112(l).

EPA will approve an air toxics program if we find that:

(1) the State program is "no less stringent" than the corresponding Federal program or rule;

(2) the State has adequate authority and resources to implement the program;

(3) the schedule for implementation and compliance is sufficiently expeditious; and

(4) the program otherwise complies with Federal guidance.

In order to obtain approval of its program to implement and enforce Federal section 112 rules as promulgated without changes (straight delegation), only the criteria of 40 CFR 63.91(d) must be met. 40 CFR 63.91(d)(3) provides that interim or final Title V program approval will satisfy the criteria of 40 CFR 63.91(d) for part 70 sources.

## V. How Did LDEQ Meet the Subpart E Approval Criteria?

As part of its Title V submission, LDEQ stated that it intended to use the mechanism of incorporation by reference to adopt unchanged Federal section 112 into its regulations. This applied to both existing and future standards as they applied to part 70 sources. 59 FR 43797 (August 25, 1994) and 60 FR 17750 (April 7, 1995). On September 12, 1995, EPA promulgated final full approval of the State's operating permits program effective October 12, 1995. 60 FR 42296. Under 40 CFR 63.91(d)(2), once a state has satisfied up-front approval criteria, it needs only to reference the previous demonstration and reaffirm that it still meets the criteria for any subsequent submittals. LDEQ has affirmed that it still meets the up-front approval criteria.

In addition, Louisiana has requested delegation of a State requirement to adjust a section 112 rule. The approval of this adjustment is regulated at 40 CFR 63.92. The LDEQ has adopted an earlier compliance date and is more stringent than the Federal requirement at 40 CFR 63.440(d)(1). The LDEQ has met the criteria of 40 CFR 63.91, and the State compliance date adjustment is not ambiguous with respect to stringency of applicability, level of control, compliance and enforcement measures, or the compliance date of any affected source or emission point, and satisfies the requirements at 40 CFR 63.92(b).

## VI. What Is Being Delegated?

EPA received requests to update the NSPS and NESHAP delegations on November 21, 1997, and June 17, 2003. LDEQ requested the EPA to update the delegation of authority for the following:

A. NSPS (40 CFR part 60 standards) through July 1, 2002;

B. NESHAPs (40 CFR part 61 standards) through July 1, 2002; and

C. NESHAPs (40 CFR part 63 standards) through July 1, 2002.

LDEQ's request was for delegation of certain NSPS and NESHAP for all sources (both part 70 and non-part 70 sources). The request includes revisions of the NESHAP standards adopted unchanged into Louisiana Administrative Code (LAC) Title 33:III, Chapter 30, Subchapter A, section 3003—Incorporation by Reference 40 CFR part 60; Chapter 51, Subchapter B, section 5116—Incorporation by Reference of 40 CFR part 61; Chapter 51, Subchapter C, section 5122—Incorporation by Reference of 40 CFR part 63 as it Applies to Major Sources, except for the compliance date established in Subpart S—Pulp and Paper Industry at 40 CFR 63.440(d)(1); and Chapter 53, Subchapter B, section 5311—Incorporation by Reference of 40 CFR part 63 as it Applies to Area Sources. For NSPS, this revision incorporated all NSPS promulgated by EPA (except Subpart AAA—Standards of Performance for New Residential Wood Heaters) as amended in the **Federal Register** through July 1, 2002. For the part 61 NESHAPs, this revision included all NESHAPs promulgated by EPA as amended in the **Federal Register** through July 1, 2002, excluding subparts B, H, I, K, Q, R, T, and W. For the part 63 NESHAPs, this includes the NESHAPs set forth in Table 1 below. The effective date of the Federal delegation for parts 61 and 63 standards is the effective date of this rule.

TABLE 1
40 CFR Part 63 NESHAP for Source Categories

| Subpart | Emission standard |
|---|---|
| A | General Provisions |
| D | Early Reductions |
| F | Hazardous Organic NESHAP (HON)—Synthetic Organic Chemical Manufacturing Industry (SOCMI) |
| G | HON—SOCMI Process Vents, Storage Vessels, Transfer Operations and Wastewater |
| H | HON—Equipment Leaks |
| I | HON—Certain Processes Negotiated Equipment Leak Regulation |
| J | Polyvinyl Chloride and Co-polymers Production |
| L | Coke Oven Batteries |
| M | Perchloroethylene Dry Cleaning |
| N | Chromium Electroplating |
| O | Ethylene Oxide Sterilizers |
| Q | Industrial Process Cooling Towers |
| R | Gasoline Distribution |
| S | Pulp and Paper Industry |
| T | Halogenated Solvent Cleaning |
| U | Polymers and Resins I |
| W | Polymers and Resins II—Epoxy Resins and Non-Nylon Polyamides |
| X | Secondary Lead Smelting |
| Y | Marine Tank Vessel Loading |
| AA | Phosphoric Acid |
| BB | Phosphate Fertilizers |
| CC | Petroleum Refineries |
| DD | Off-Site Waste and Recovery |
| EE | Magnetic Tape Manufacturing |

TABLE 1—Continued
40 CFR Part 63 NESHAP for Source Categories

| Subpart | Emission standard |
|---|---|
| GG | Aerospace Manufacturing and Rework |
| HH | Oil and Natural Gas Production |
| II | Shipbuilding and Ship Repair |
| JJ | Wood Furniture Manufacturing |
| KK | Printing and Publishing Industry |
| LL | Primary Aluminum Reduction Plants |
| OO | Tanks—Level 1 |
| PP | Containers |
| QQ | Surface Impoundments |
| RR | Individual Drain Systems |
| SS | Closed Vent Systems, Control Devices, Recovery Devices and Routing to a Fuel Gas System or a Process |
| TT | Equipment Leaks—Level 1 |
| UU | Equipment Leaks—Level 2 Standards |
| VV | Oil-Water Separators and Organic-Water Separators |
| WW | Storage Vessels (Tanks)—Control Level 2 |
| YY | Generic Maximum Achievable Control Technology Standards |
| CCC | Steel Pickling—HCl Process Facilities and Hydrochloric Acid Regeneration |
| DDD | Mineral Wool Production |
| EEE | Hazardous Waste Combustors |
| GGG | Pharmaceuticals Production |
| HHH | Natural Gas Transmission and Storage |
| III | Flexible Polyurethane Foam Production |
| JJJ | Polymers and Resins, Group IV |
| LLL | Portland Cement Manufacturing |
| MMM | Pesticide Active Ingredient Production |
| NNN | Wool Fiberglass Manufacturing |
| OOO | Polymer and Resins III—Amino Resins and Phenolic Resins |
| PPP | Polyether Polyols Production |
| QQQ | Primary Copper Smelting |
| RRR | Secondary Aluminum |
| TTT | Primary Lead Smelting |
| UUU | Petroleum Refineries—Catalytic Cracking, Catalytic Reforming and Sulfer Plants |
| VVV | Publicly Owned Treatment Works (POTW) |
| XXX | Ferroalloys Production |
| CCCC | Nutritional Yeast Mfg. |
| GGGG | Vegetable Oil Production—Solvent Extraction |
| HHHH | Wet Formed Fiberglass Mat Production |
| SSSS | Surface Coating for Metal Coil |

TABLE 1—Continued
40 CFR Part 63 NESHAP for Source Categories

| Subpart | Emission standard |
|---|---|
| TTTT | Leather Finishing Operations |
| UUUU | Cellulose Production Manufacture |
| VVVV | Boat Manufacturing |
| CCCCC | Coke Ovens: Pushing, Quenching and Battery Stacks |

## VII. What Is Not Being Delegated?

As mentioned above, LDEQ has not been delegated the authority for the following standards:

40 CFR Part 60, Subpart AAA (Standards of Performance for New Residential Wood Heaters);

40 CFR Part 61, Subpart B (National Emission Standards for Radon Emissions from Underground Uranium Mines);

40 CFR Part 61, Subpart H (National Emission Standards for Emissions of Radionuclides Other Than Radon From Department of Energy Facilities);

40 CFR Part 61, Subpart I (National Emission Standards for Radionuclide Emissions from Federal Facilities Other Than Nuclear Regulatory Commission Licensees and Not Covered by Subpart H);

40 CFR Part 61, Subpart K—(National Emission Standards for Radionuclide Emissions from Elemental Phosphorus Plants);

40 CFR Part 61, Subpart Q (National Emission Standards for Radon Emissions from Department of Energy facilities);

40 CFR Part 61, Subpart R (National Emission Standards for Radon Emissions from Phosphogypsum Stacks);

40 CFR Part 61, Subpart T (National Emission Standards for Radon Emissions from the Disposal of Uranium Mill Tailings); and

40 CFR Part 61, Subpart W (National Emission Standards for Radon Emissions from Operating Mill Tailings).

In addition, EPA cannot delegate to a State any of the Category II Subpart A authorities set forth in 40 CFR 63.91(g)(2). These include the following provisions: § 63.6(g), Approval of Alternative Non-Opacity Standards; § 63.6(h)(9), Approval of Alternative Opacity Standards; § 63.7(e)(2)(ii) and (f), Approval of Major Alternatives to Test Methods; § 63.8(f), Approval of Major Alternatives to Monitoring; and § 63.10(f), Approval of Major Alternatives to Recordkeeping and Reporting. In addition, some MACT standards have certain provisions that cannot be delegated to the States [*e.g.* 40 CFR 63.106(b)].[1] Therefore, any MACT standard that EPA is delegating to LDEQ that provides that certain authorities cannot be delegated are retained by EPA and not delegated. Furthermore, no authorities are delegated that require rulemaking in the **Federal Register** to implement, or where Federal overview is the only way to ensure national consistency in the application of the standards or requirements of CAA section 112. Finally, section 112(r), the accidental release program authority, is not being delegated by this approval.

All of the inquiries and requests concerning implementation and enforcement of the excluded standards in the State of Louisiana should be directed to the EPA Region 6 Office.

In addition, this delegation to LDEQ to implement and enforce certain NSPS and NESHAPs does not extend to sources or activities located in Indian country, as defined in 18 U.S.C. 1151. Under this definition, EPA treats as reservations, trust lands validly set aside for the use of a Tribe even if the trust lands have not been formally designated as a reservation. Consistent with previous federal program approvals or delegations, EPA will continue to implement the NSPS and NESHAPs in Indian country because LDEQ has not adequately demonstrated its authority over sources and activities located within the exterior boundaries of Indian reservations and other areas in Indian country.

## VIII. How Will Applicability Determinations Under Section 112 Be Made?

In approving this delegation, LDEQ will obtain concurrence from EPA on any matter involving the interpretation of section 112 of the CAA or 40 CFR part 63 to the extent that implementation, administration, or enforcement of these sections have not been covered by EPA determinations or guidance.

## IX. What Authority Does EPA Have?

We retain the right, as provided by CAA section 112(l)(7), to enforce any applicable emission standard or requirement under section 112. EPA also has the authority to make certain decisions under the General Provisions

---

[1] On June 23, 2003, EPA modified certain NESHAPs to clarify which authorities can be delegated to State, local, and tribal agencies. 68 FR 37334. However, this delegation is not directly affected by these changes, since LDEQ is receiving delegation of the part 63 standards that were promulgated by EPA, as amended thorugh July 1, 2002.

(subpart A) of part 63. We are granting LDEQ some of these authorities, and retaining others, as explained in sections VI and VII above. In addition, EPA may review and disapprove of State determinations and subsequently require corrections. (*See* 40 CFR 63.91(g) and 65 FR 55810, 55823, September 14, 2000.)

Furthermore, we retain any authority in an individual emission standard that may not be delegated according to provisions of the standard.[2] Also, listed in the footnotes of the part 63 delegation table at the end of this rule are the authorities that cannot be delegated to any State or local agency which we therefore retain.

## X. What Information Must LDEQ Provide to EPA?

In delegating the authority to implement and enforce these rules and in granting a waiver of EPA notification requirements, we require LDEQ to input all source information into the Aerometric Information Retrieval System (AIRS) for both point and area sources. LDEQ must enter this information into the AIRS system and update the information by September 30 of every year. LDEQ must provide any additional compliance related information to EPA, Region 6, Office of Enforcement and Compliance Assurance within 45 days of a request under 40 CFR 63.96(a).

In receiving delegation for specific General Provisions authorities, LDEQ must submit to EPA Region 6 on a semi-annual basis, copies of determinations issued under these authorities. For part 63 standards, these determinations include: Applicability determinations (§ 63.1); approval/disapprovals of construction and reconstruction (§ 63.5(e) and (f)); notifications regarding the use of a continuous opacity monitoring system (§ 63.6(h)(7)(ii)); finding of compliance (§ 63.6(h)(8)); approval/disapprovals of compliance extensions (§ 63.6(i)); approvals/disapprovals of minor (§ 63.7(e)(2)(i)) or intermediate (§ 63.7(e)(2)(ii) and (f)) alternative test methods; approval of shorter sampling times and volumes (§ 63.7(e)(2)(iii)); waiver of performance testing (§ 63.7(e)(2)(iv) and (h)(2), (3)); approvals/disapprovals of minor or intermediate alternative monitoring methods (§ 63.8(f)); approval of adjustments to time periods for submitting reports (§ 63.9 and 63.10); and approvals/disapprovals of minor alternatives to recordkeeping and reporting (§ 63.10(f)).

Additionally, EPA's Emission Measurement Center of the Emissions Monitoring and Analysis Division must receive copies of any approved intermediate changes to test methods or monitoring. (Please note that intermediate changes to test methods must be demonstrated as equivalent through the procedures set out in EPA method 301.) This information on approved intermediate changes to test methods and monitoring will be used to compile a database of decisions that will be accessible to State and local agencies and EPA Regions for reference in making future decisions. (For definitions of *major, intermediate* and *minor* alternative test methods or monitoring methods, see 40 CFR 63.90). The LDEQ should forward these intermediate test methods or monitoring changes via mail or facsimile to: Chief, Source Categorization Group A, EPA (MD–19), Research Triangle Park, NC 27711, Facsimile telephone number: (919) 541–1039.

## XI. What Is EPA's Oversight of This Delegation to LDEQ?

EPA must oversee LDEQ's decisions to ensure the delegated authorities are being adequately implemented and enforced. We will integrate oversight of the delegated authorities into the existing mechanisms and resources for oversight currently in place. If, during oversight, we determine that LDEQ made decisions that decreased the stringency of the delegated standards, then LDEQ shall be required to take corrective actions and the source(s) affected by the decisions will be notified, as required by 40 CFR 63.91(g)(1)(ii). We will initiate withdrawal of the program or rule if the corrective actions taken are insufficient.

## XII. Should Sources Submit Notices to EPA or LDEQ?

All of the information required pursuant to the Federal NSPS and NESHAP (40 CFR parts 60, 61, and 63) should be submitted by sources located outside of Indian country, directly to the LDEQ at the following address: Office of Environmental Services, P. O. Box 4313, Baton Rouge, LA 70821–4313. The LDEQ is the primary point of contact with respect to delegated NSPS and NESHAPs. Sources do not need to send a copy to EPA. EPA Region 6 waives the requirement that notifications and reports for delegated standards be submitted to EPA in addition to LDEQ in accordance with 40 CFR 63.9(a)(4)(ii) and 63.10(a)(4)(ii).

## XIII. How Will Unchanged Authorities Be Delegated to LDEQ in the Future?

In the future, LDEQ will only need to send a letter of request to EPA, Region 6, for those NSPS and NESHAP regulations that LDEQ has adopted by reference. The letter must reference the previous up-front approval demonstration and reaffirm that it still meets the up-front approval criteria. We will respond in writing to the request stating that the request for delegation is either granted or denied. If a request is approved, the effective date of the delegation will be the date of our response letter. A **Federal Register** will be published to inform the public and affected sources of the delegation, indicate where source notifications and reports should be sent, and to amend the relevant portions of the Code of Federal Regulations showing which NSPS and NESHAP standards have been delegated to LDEQ.

## XIV. What Is the Relationship Between RCRA and the Hazardous Waste Combustor MACT?

As part of today's rule, we are delegating, under the CAA, implementation and enforcement authority for the Hazardous Waste Combustor (HWC) MACT (subpart EEE) to LDEQ. Many of the sources subject to the HWC MACT are also subject to the RCRA permitting requirements. We expect air emissions and related operating requirements found in the HWC MACT will be included in part 70 permits issued by LDEQ. However, RCRA permits will still be required for all other aspects of the combustion unit and the facility that are governed by RCRA (*e.g.*, corrective action, general facility standards, other combustor-specific concerns such as materials handling, risk-based emissions limits and operating requirements, as appropriate and other hazardous waste management units).[3] See the HWC

---

[2] EPA amended several NESHPs to clarify the implementation and enforcement authorities within the standards that we may delegate to each State, local or tribal agency such as LDEQ. 68 FR 37334 (June 23, 2003). A complete list of the standards is contained in a copy of the proposal available for review at the Dallas Regional Office. An electronic copy of the proposal may be obtained from EPA's Internet site, *http://www.epa.gov/ttn/oarpg/t3pfpr.html*. EPA believes the changes make all of the standards consistent in defining what may not be delegated in actions such as the one we are taking today.

[3] EPA promulgated the HWC MACT (40 CFR part 63, subpart EEE) under the joint authority of the CAA and RCRA. Before this rule went into effect, the air emissions from these sources were primarily regulated under the authority of RCRA. *See* 40 CFR parts 264, 265, 266, and 270. With the release of HWC MACT, the air emissions are now regulated under both CAA and RCRA. Even though both statutes give EPA the authority to regulate air emissions, we determined that having the emissions standards and permitting requirements in both sets
Continued

MACT rule preamble discussion (64 FR 52828, 52839–52843 (September 30, 1999)), and the RCRA Site-Specific Risk Assessment Policy for HWC Facilities dated June 2000 for more information on the interrelationship of the MACT rule with the RCRA Omnibus provision and site specific risk assessments.

## XV. Final Action

The public was provided the opportunity to comment on the proposed approval of the program and mechanism for delegation of section 112 standards, as they apply to part 70 sources, on August 24, 1994, for the proposed interim approval of LDEQ's Title V operating permits program; and on April 7, 1995, for the proposed final approval of LDEQ's Title V operating permits program. In EPA's final full approval of Louisiana's Operating Permits Program (60 FR 47296), the EPA discussed the public comments on the proposed delegation of the Title V operating permits program. In this action, the public is given the opportunity to comment on the approval of LDEQ request for delegation of authority to implement and enforce certain section 112 standards for all sources (both part 70 and non-part 70 sources) which have been adopted by reference into Louisiana's state regulations. However, the Agency views the approval of these requests as a noncontroversial action and anticipates no adverse comments. Therefore, EPA is publishing this rule without prior proposal. However, in the "Proposed Rules" section of today's **Federal Register** publication, EPA is publishing a separate document that will serve as the proposal to approve the program and delegation of authority described in this action if adverse comments are received. This action will be effective May 25, 2004, without further notice unless the Agency receives relevant adverse comments by April 26, 2004.

If EPA receives adverse comments, we will publish a timely withdrawal in the **Federal Register** informing the public

the rule will not take effect. We will address all public comments in a subsequent final rule based on the proposed rule. The EPA will not institute a second comment period on this action. Any parties interested in commenting must do so at this time. Please note that if we receive adverse comment on an amendment, paragraph, or section of this rule and if that provision may be severed from the remainder of the rule, we may adopt as final those provisions of the rule that are not the subject of an adverse comment.

## XVI. Statutory and Executive Order Reviews

Under Executive Order 12866 (58 FR 51735, October 4, 1993), this action is not a "significant regulatory action" and therefore is not subject to review by the Office of Management and Budget. For this reason, this action is also not subject to Executive Order 13211, "Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use" (66 FR 28355, May 22, 2001). This action merely approves state law as meeting Federal requirements and imposes no additional requirements beyond those imposed by state law. Accordingly, the Administrator certifies that this rule will not have a significant economic impact on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 et seq.). Because this rule approves pre-existing requirements under state law and does not impose any additional enforceable duty beyond that required by state law, it does not contain any unfunded mandate or significantly or uniquely affect small governments, as described in the Unfunded Mandates Reform Act of 1995 (Public Law 104–4).

This rule also does not have tribal implications because it will not have a substantial direct effect on one or more Indian tribes, on the relationship between the Federal Government and Indian tribes, or on the distribution of power and responsibilities between the Federal Government and Indian tribes, as specified by Executive Order 13175 (65 FR 67249, November 9, 2000). This action also does not have Federalism implications because it does not have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government, as specified in Executive Order 13132 (64 FR 43255, August 10, 1999). This action merely approves a state request to receive delegation of certain Federal standards, and does not alter the relationship or

the distribution of power and responsibilities established in the Clean Air Act. This rule also is not subject to Executive Order 13045 "Protection of Children from Environmental Health Risks and Safety Risks" (62 FR 19885, April 23, 1997), because it is not economically significant.

In reviewing delegation submissions, EPA's role is to approve submissions provided that they meet the criteria of the Clean Air Act. In this context, in the absence of a prior existing requirement for the State to use voluntary consensus standards (VCS), EPA has no authority to disapprove a delegation submission for failure to use VCS. It would thus be inconsistent with applicable law for EPA to use VCS in place of a delegation submission that otherwise satisfies the provisions of the Clean Air Act. Thus, the requirements of section 12(d) of the National Technology Transfer and Advancement Act of 1995 (15 U.S.C. 272 note) do not apply. This rule does not impose an information collection burden under the provisions of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 et seq.).

The Congressional Review Act, 5 U.S.C. 801 et seq., as added by the Small Business Regulatory Enforcement Fairness Act of 1996, generally provides that before a rule may take effect, the agency promulgating the rule must submit a rule report, which includes a copy of the rule, to each House of the Congress and to the Comptroller General of the United States. EPA will submit a report containing this rule and other required information to the U.S. Senate, the U.S. House of Representatives, and the Comptroller General of the United States prior to publication of the rule in the **Federal Register**. A major rule cannot take effect until 60 days after it is published in the **Federal Register**. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the Clean Air Act, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by May 25, 2004. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this rule for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (*See* section 307(b)(2).)

---

of implementing regulations would be duplicative. For this reason, using the authority provided by section 1006(b) of RCRA, EPA deferred the RCRA requirements for the HWC emission controls to the CAA requirements of 40 CFR part 63, subpart EEE. After a facility has demonstrated compliance with the HWC MACT, the RCRA standards for air emissions from these units will no longer apply, with the exception of section 3005(c)(3) of RCRA, which requires that each RCRA permit contain the terms and conditions necessary to protect human health and the environment. Under this provision of RCRA, if a regulatory authority determines that more stringent conditions that the HWC MACT are necessary to protect human health and the environment for a particular facility, then that regulatory authority may impose those conditions in the facility's RCRA permit.

List of Subjects

*40 CFR Part 60*

Environmental protection, Administrative practice and procedure, Air pollution control, Hazardous substances, Intergovernmental relations, Reporting and recordkeeping requirements.

*40 CFR Part 61*

Environmental protection, Air pollution control, Arsenic, Benzene, Beryllium, Hazardous substances, Mercury, Radon, Reporting, and recordkeeping requirements, Uranium, Vinyl chloride.

*40 CFR Part 63*

Environmental protection, Air pollution control, Hazardous substances, Intergovernmental relations, Reporting and recordkeeping requirements.

Authority: This action is issued under the authority of sections 111 and 112 of the Clean Air Act, as amended, 42 U.S.C. 7411 and 7412.

Dated: March 9, 2004.

**Richard E. Greene,**

*Regional Administrator, Region 6.*

40 CFR parts 60, 61, and 63 are amended as follows:

PART 60—[AMENDED]

■ 1. The authority citation for part 60 continues to read as follows:

Authority: 42 U.S.C. 7401 *et seq.*

■ 2. Section 60.4 is amended by revising paragraph (b)(T), and adding paragraph (e)(2) to read as follows:

§ 60.4  Address.

\*  \*  \*  \*  \*

(b) * * *

(T) State of Louisiana: Louisiana Department of Environmental Quality, Office of Environmental Assessment, P.O. Box 4314, Baton Rouge, LA 70821–4314. For a list of delegated standards for Louisiana (excluding Indian country), see paragraph (e)(1) of this section.

\*  \*  \*  \*  \*

(e) * * *

(2) Louisiana. The Louisiana Department of Environmental Quality has been delegated all part 60 standards promulgated by EPA, except subpart AAA—Standards of Performance for New Residential Wood Heaters, as amended in the **Federal Register** through July 1, 2002.

PART 61—[AMENDED]

■ 1. The authority citation for part 61 continues to read as follows:

Authority: 42 U.S.C. 7401 *et seq.*

■ 2. Section 61.04 is amended by revising paragraph (b)(T), and adding paragraph (c)(6)(ii) to read as follows:

§ 61.04  Addresses.

\*  \*  \*  \*  \*

(b) * * *

(T) State of Louisiana: Louisiana Department of Environmental Quality, Office of Environmental Assessment, P.O. Box 4314, Baton Rouge, LA 70821–4314.

\*  \*  \*  \*  \*

(c) * * *

(6) * * *

(ii) Louisiana. The Louisiana Department of Environmental Quality (LDEQ) has been delegated the following part 61 standards promulgated by EPA, as amended in the **Federal Register** through July 1, 2002. The (X) symbol is used to indicate each subpart that has been delegated.

DELEGATION STATUS FOR PART 61 STANDARDS—STATE OF LOUISIANA[1]

| Subpart | | LDEQ[2,3] |
|---|---|---|
| A | General Provisions | X |
| C | Beryllium | X |
| D | Beryllium Rocket Motor Firing | X |
| E | Mercury | X |
| F | Vinyl Chloride | X |
| J | Equipment Leaks of Benzene | X |
| L | Benzene Emissions from Coke By-Product Recovery Plants | X |
| N | Inorganic Arsenic Emissions from Glass Manufacturing Plants | X |
| O | Inorganic Arsenic Emissions from Primary Copper Smelters | X |
| P | Inorganic Arsenic Emissions from Arsenic Trioxide and Metallic Arsenic Production Facilities | X |
| V | Equipment Leaks | X |
| Y | Benzene Emissions from Benzene Storage Vessels | X |
| BB | Benzene Emissions from Benzene Transfer Operations | X |
| FF | Benzene Emissions from Benzene Waste Operations | X |

[1] Program delegated to Louisiana Department of Environmental Quality (LDEQ).
[2] Authorities which may not be delegated include: § 61.04(b), Addresses of State and Local Implementing Agencies; § 61.12(d)(1), Compliance with Standards and Maintenance Requirements, Alternate Means of Emission Limitation; § 61.13(h), Major Change to an Emissions Test; § 61.14(g), Major Modifications to Monitoring Requirements; § 61.16, Availability of Information Procedures; § 61.53(c)(4), List of Approved Design, Maintenance, and Housekeeping Practices for Mercury Chlor-Alkali Plants; and all authorities identified within specific subparts (*e.g.*, under "Delegation of Authority") that cannot be delegated.
[3] Federal rules adopted unchanged as of July 1, 2002.

\*  \*  \*  \*  \*

PART 63—[AMENDED]

■ 1. The authority citation for part 63 continues to read as follows:

Authority: 42 U.S.C. 7401 *et seq.*

■ 2. Section 63.99 is amended by adding paragraph (a)(18) to read as follows:

§ 63.99  Delegated Federal authorities.

(a) * * *

(18) Louisiana.

(i) The following table lists the specific part 63 standards that have been delegated unchanged to the Louisiana Department of Environmental Quality for all sources. The "X" symbol is used to indicate each subpart that has been delegated. The delegations are subject to all of the conditions and limitations set forth in Federal law, regulations, policy, guidance, and determinations. Some authorities cannot be delegated and are retained by EPA. These include certain General Provisions authorities and specific parts of some standards. Any amendments made to these rules after this effective date are not delegated.

DELEGATION STATUS FOR PART 63 STANDARDS—STATE OF LOUISIANA [1]

| Subpart | Source category | LDEQ [2,3] |
|---|---|---|
| A | General Provisions [2] | X |
| D | Early Reductions | X |
| F | Hazardous Organic NESHAP (HON)—Synthetic Organic Chemical Manufacturing Industry (SOCMI) | X |
| G | HON—SOCMI Process Vents, Storage Vessels, Transfer Operations and Wastewater | X |
| H | HON—Equipment Leaks | X |
| I | HON—Certain Processes Negotiated Equipment Leak Regulation | X |
| J | Polyvinyl Chloride and Copolymers Production | X |
| K | (Reserved). | |
| L | Coke Oven Batteries | X |
| M | Perchloroethylene Dry Cleaning | X |
| N | Chromium Electroplating and Chromium Anodizing Tanks | X |
| O | Ethylene Oxide Sterilizers | X |
| P | (Reserved). | |
| Q | Industrial Process Cooling Towers | X |
| R | Gasoline Distribution | X |
| T | Halogenated Solvent Cleaning | X |
| U | Group I Polymers and Resins | X |
| V | (Reserved). | |
| W | Epoxy Resins Production and Non-Nylon Polyamides Production | X |
| X | Secondary Lead Smelting | X |
| Y | Marine Tank Vessel Loading | X |
| Z | (Reserved). | |
| AA | Phosphoric Acid Manufacturing Plants | X |
| BB | Phosphate Fertilizers Production Plants | X |
| CC | Petroleum Refineries | X |
| DD | Off-Site Waste and Recovery Operations | X |
| EE | Magnetic Tape Manufacturing | X |
| FF | (Reserved). | |
| GG | Aerospace Manufacturing and Rework Facilities | X |
| HH | Oil and Natural Gas Production Facilities | X |
| II | Shipbuilding and Ship Repair Facilities | X |
| JJ | Wood Furniture Manufacturing Operations | X |
| KK | Printing and Publishing Industry | X |
| LL | Primary Aluminum Reduction Plants | X |
| MM | Chemical Recovery Combustion Sources at Kraft, Soda, Sulfide, and Stand-Alone Semichemical Pulp Mills | X |
| NN | (Reserved). | |
| OO | Tanks—Level 1 | X |
| PP | Containers | X |
| QQ | Surface Impoundments | X |
| RR | Individual Drain Systems | X |
| SS | Closed Vent Systems, Control Devices, Recovery Devices and Routing to a Fuel Gas System or a Process | X |
| TT | Equipment Leaks—Control Level 1 | X |
| UU | Equipment Leaks—Control Level 2 Standards | X |
| VV | Oil-Water Separators and Organic-Water Separators | X |
| WW | Storage Vessels (Tanks)—Control Level 2 | X |
| XX | (Reserved). | |
| YY | Generic Maximum Achievable Control Technology Standards | X |
| ZZ–BBB | (Reserved). | |
| CCC | Steel Pickling—HCl Process Facilities and Hydrochloric Acid Regeneration | X |
| DDD | Mineral Wool Production | X |
| EEE | Hazardous Waste Combustors | X |
| FFF | (Reserved). | |
| GGG | Pharmaceuticals Production | X |
| HHH | Natural Gas Transmission and Storage Facilities | X |
| III | Flexible Polyurethane Foam Production | X |
| JJJ | Group IV Polymers and Resins | X |
| KKK | (Reserved). | |
| LLL | Portland Cement Manufacturing | X |
| MMM | Pesticide Active Ingredient Production | X |
| NNN | Wool Fiberglass Manufacturing | X |
| OOO | Amino/Phenolic Resins | X |
| PPP | Polyether Polyols Production | X |
| QQQ | Primary Copper Smelting | X |
| RRR | Secondary Aluminum Production | X |
| SSS | (Reserved). | |
| TTT | Primary Lead Smelting | X |
| UUU | Petroleum Refineries—Catalytic Cracking Units, Catalytic Reforming Units and Sulfur Recovery Plants | X |
| VVV | Publicly Owned Treatment Works (POTW) | X |
| WWW | (Reserved). | |
| XXX | Ferroalloys Production: Ferromanganese and Silicomanganese | X |
| AAAA | Municipal Solid Waste Landfills. | |
| CCCC | Nutritional Yeast Manufacturing | X |

DELEGATION STATUS FOR PART 63 STANDARDS—STATE OF LOUISIANA [1]—Continued

| Subpart | Source category | LDEQ [2,3] |
|---|---|---|
| GGGG | Solvent Extraction for Vegetable Oil Production | X |
| HHHH | Wet Formed Fiberglass Mat Production | X |
| JJJJ | Paper and other Web (Surface Coating). | |
| NNNN | Surface Coating of Large Appliances. | |
| OOOO | Fabric Printing Coating and Dyeing. | |
| QQQQ | Surface Coating of Wood Building Products. | |
| RRRR | Surface Coating of Metal Furniture. | |
| SSSS | Surface Coating for Metal Coil | X |
| TTTT | Leather Finishing Operations | X |
| UUUU | Cellulose Production Manufacture | X |
| VVVV | Boat Manufacturing | X |
| WWWW | Reinforced Plastic Composites Production. | |
| XXXX | Tire Manufacturing. | |
| BBBBB | Semiconductor Manufacturing. | |
| CCCCC | Coke Ovens: Pushing, Quenching and Battery Stacks | X |
| FFFFF | Integrated Iron and Steel. | |
| JJJJJ | Brick and Structural Clay Products Manufacturing. | |
| KKKKK | Clay Ceramics Manufacturing. | |
| LLLLL | Asphalt Roofing and Processing. | |
| MMMMM | Flexible Polyurethane Foam Fabrication Operation. | |
| NNNNN | Hydrochloric Acid Production, Fumed Silica Production. | |
| PPPPP | Engine Test Facilities. | |
| QQQQQ | Friction Products Manufacturing. | |
| SSSSS | Refractory Products Manufacture. | |

[1] Program delegated to Louisiana Department of Environmental Quality (LDEQ).
[2] Authorities which may not be delegated include: § 63.6(g), Approval of Alternative Non-Opacity Emission Standards; § 63.6(h)(9), Approval of Alternative Opacity Standards; § 63.7(e)(2)(ii) and (f), Approval of Major Alternatives to Test Methods; § 63.8(f), Approval of Major Alternatives to Monitoring; § 63.10(f), Approval of Major Alternatives to Recordkeeping and Reporting; and all authorities identified in the subparts (*e.g.*, under "Delegation of Authority") that cannot be delegated.
[3] Federal rules adopted unchanged as of July 1, 2002.

(ii) Affected sources within Louisiana shall comply with the Federal requirements of 40 CFR part 63—subpart S—Pulp and Paper Industry, adopted by reference by the Louisiana Department of Environmental Quality's (LDEQ), with the exception of the compliance date listed in § 63.440(d)(1). The LDEQ has adopted an earlier compliance date than the Federal requirement. The earlier compliance date is approved by EPA pursuant to § 63.92. Affected sources in Louisiana that are subject to the requirements of Subpart S shall meet the compliance date established at Louisiana Administrative Code, Title 33, part III, chapter 51, subchapter C., section 5122, C.2.

*    *    *    *    *

[FR Doc. 04–6299 Filed 3–25–04; 8:45 am]
BILLING CODE 6560–50–P

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

**Office of the Secretary**

**45 CFR Part 148**

[CMS–2179–F]

**RIN 0938–AM42**

**Grants to States for Operation of Qualified High Risk Pools**

**AGENCY:** Office of the Secretary, HHS.
**ACTION:** Final rule.

**SUMMARY:** This final rule implements a provision of the Trade Adjustment Assistance Reform Act of 2002 by providing $40 million in Federal fiscal year 2003 and $40 million in Federal fiscal year 2004 to States that have incurred losses in connection with the operation of qualified high risk pools that meet certain criteria. This final rule also addresses comments received in response to the interim final rule that was published on May 2, 2003. This grant program implements section 2745 of the Public Health Service Act, as added by the Trade Adjustment Assistance Reform Act of 2002.

**DATES:** Effective date. These regulations are effective on April 26, 2004
  *Deadline for States to submit an application for losses incurred in their fiscal year 2002:* States had to submit an application to us by no later than September 30, 2003. *Deadline for States to submit an application for losses incurred in their fiscal year 2003:* States must submit an application to us by no later than June 30, 2004. *Deadline for States to submit an application for losses incurred in their fiscal year 2004:* States must submit an application to us by no later than June 30, 2005.

**ADDRESSES:** *Where To Submit an Application.* All initial applications and supplemental applications must be submitted to: Centers for Medicare & Medicaid Services, Acquisition and Grants Group, Mail Stop C2–21–15, 7500 Security Boulevard, Baltimore, MD 21244–1850, Attn: Nicole Nicholson.

**FOR FURTHER INFORMATION CONTACT:** James Mayhew, (410) 786–9244.

**SUPPLEMENTARY INFORMATION:**

## I. Background

*A. General*

  Section 2745(b) of the Public Health Service Act (PHS Act), as added by section 201(b) of the Trade Adjustment Assistance Reform Act of 2002, authorizes the Secretary to make grants to States for up to 50 percent of the losses they incur in the operation of qualified high risk pools, and appropriates the necessary funds. In order to qualify for a grant, a State's risk