# **<u>EXHIBIT C</u>**

Rule 154   Stage 1 Episode Actions (Adopted 9/17/91)
Rule 155   Stage 2 Episode Actions (Adopted 9/17/91)
Rule 156   Stage 3 Episode Actions (Adopted 9/17/91)
Rule 158   Source Abatement Plans (Adopted 9/17/91)
Rule 159   Traffic Abatement Procedures (Adopted 9/17/91)

\*    \*    \*    \*    \*

[FR Doc. 95–22519 Filed 9–11–95; 8:45 am]
BILLING CODE 6050–50–P

## 40 CFR Part 70

[LA–001; FRL–5293–3]

### Clean Air Act Final Full Approval of Operating Permits Program; Louisiana Department of Environmental Quality

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Final full approval.

**SUMMARY:** The EPA is promulgating full approval of the Louisiana Operating Permits program submitted by the Governor of Louisiana for the Louisiana Department of Environmental Quality (LDEQ) for the purpose of complying with Federal requirements which mandate that States develop, and submit to EPA, programs for issuing operating permits to all major stationary sources, and to certain other sources.
**EFFECTIVE DATE:** This program will be effective October 12, 1995.
**ADDRESSES:** Copies of the State's submittal and other supporting information used in developing the final full approval are available for inspection during normal business hours at the following location:
Environmental Protection Agency, Region 6, Air Permits Section (6PD–R), 1445 Ross Avenue, Suite 700, Dallas, Texas 75202–2733.
Louisiana Department of Environmental Quality, Office of Air Quality, 7290 Bluebonnet Boulevard, P.O. Box 82135, Baton Rouge, Louisiana 70884–2135.
**FOR FURTHER INFORMATION CONTACT:**
Joyce P. Stanton, Multimedia Planning and Permitting Division, Environmental Protection Agency, Region 6, 1445 Ross Avenue, Suite 700, Dallas, Texas 75202–2733, telephone 214–665–7547.
**SUPPLEMENTARY INFORMATION:**

## I. Background and Purpose

### A. Introduction

Title V of the Clean Air Act ("the Act"), and implementing regulations at 40 Code of Federal Regulations (CFR) part 70 require that States develop and submit operating permits programs to the EPA by November 15, 1993, and that the EPA act to approve or disapprove each program within one year after receiving the submittal. The EPA's program review occurs pursuant to section 502 of the Act and the part 70 regulations, which together outline criteria for approval or disapproval. Where a program substantially, but not fully, meets the requirements of part 70, the EPA may grant the program interim approval for a period of up to two years. If the EPA has not fully approved a program by two years after the date of November 15, 1993, or by the end of an interim program, it must establish and implement a Federal program.

On August 25, 1994, the EPA proposed interim approval of the Operating Permits program submitted by the LDEQ on November 15, 1993, to meet the requirements of part 70 and title V of the Act. (See 59 FR 43797, August 25, 1994) (hereafter Interim Approval Notice). Many comments were received on the Interim Approval Notice. The LDEQ provided comments and revised their Operating Permits program to address the issues discussed in the Interim Approval Notice. These revisions were sent to the EPA on November 10, 1994. On April 7, 1995, the EPA rescinded the proposed interim approval, addressed all comments received on the Interim Approval Notice, and proposed full approval of the Operating Permits program for the LDEQ based on the revised Operating Permits program. (See 60 FR 17750, April 7, 1995) (hereafter Full Approval Notice). The EPA received public comment on the Full Approval Notice and compiled a technical support document which describes the Operating Permits program in greater detail.

A single commentor, the National Environmental Development Association-Clean Air Regulatory Project (NEDA-CARP), provided comments on the Full Approval Notice. NEDA-CARP was concerned that the EPA was requiring the LDEQ to revise its regulatory provision on research and development (R&D) facilities to prevent R&D facilities from being considered separately from sources with which they are co-located, in order to receive full approval. NEDA-CARP stated its belief that the EPA was not correct in its interpretation of 40 CFR part 70 and that it is likely that the part 70 rules will be revised in the near future to allow States the flexibility to consider co-located R&D facilities separately from the source. The EPA appreciates NEDA-CARP's concerns; however, the Louisiana Operating Permits program must be evaluated based on the part 70 rules and interpretations in place at the time of approval. In any case, the premise of NEDA-CARP's comment is incorrect. Apparently basing its comment on drafts of a proposed revision to part 70, NEDA-CARP claims that the proposal would allow an R&D facility to be treated separately for applicability purposes regardless of its Standard Industrial Classification (SIC) code or whether it functions as a support facility. While it is true that the proposed rule would create a separate industrial classification for R&D, the preamble to the proposed rule clarifies that this is a codification of the EPA's previous understanding of the SIC code test embodied in the current part 70, which would allow an R&D facility to be treated separately only if it belongs to a separate two digit SIC code. Moreover, the proposal expressly retains from the SIC code approach the duty to aggregate an R&D facility with other on-site sources for which it functions as a support facility. Therefore, the EPA continues to believe that these changes to Louisiana's Operating Permits program were necessary for full approval.

NEDA-CARP's other comments were supportive of the positions taken by the EPA in the Full Approval Notice such as the definitions of "title I modification" and "case-by-case" determinations, and the approval of the insignificant activities and criteria.

In this notice, the EPA is taking final action to promulgate full approval of the Operating Permits program for the LDEQ.

## II. Final Action and Implications

### A. Analysis of State Submission

On April 7, 1995, the EPA proposed full approval of the State of Louisiana's Title V Operating Permits program. (See 60 FR 17750). The program elements discussed in the proposed notice are unchanged from the analysis in the Full Approval Notice and continue to fully meet the requirements of 40 CFR part 70.

In the Interim Approval Notice, the following items were delineated as deficiencies in the Louisiana Operating permit program: State confidentiality provisions could be interpreted to protect the contents of the permit itself from disclosure; Louisiana Administrative Code (LAC) 33:III.501.B.7 allowed the permitting authority to consider a certain complex within a facility as a source separate from the facility with which it is co-located, provided that the complex is used solely for R & D of new processes

and/or products, and is not engaged in the manufacture of products for commercial sale; deadlines for submittal of Acid Rain permits were inconsistent; LAC 33.III.521.A.6 appeared to allow administrative amendments to permits to incorporate certain "off-permit" changes; it was unclear whether the State could lawfully require records to be retained for five years; LAC 33.III.527.A.3 allowed certain changes that rendered existing compliance terms irrelevant to be incorporated through minor modification procedures, yet was unclear whether the criteria in the State rule conformed to 40 CFR 70.4(b)(14); State provisions did not include a requirement that the permit specify the origin of and reference the authority for each term or condition, nor did they identify differences in form from the applicable requirements upon which the terms were based or contain various other elements required by 40 CFR 70.6; inadequate definition of "title I modification;" provisions to determine insignificant activities were not included with the State's original submittal. As discussed in the notice proposing full approval, Louisiana has addressed all of these items. For further discussion of these items, please see the proposed full approval and the Technical Support Document.

*B. Options for Approval/Disapproval*

The EPA is promulgating full approval of the Operating Permits program submitted to the EPA for the LDEQ on November 15, 1993, and revised on November 10, 1994. Among other things, the LDEQ has demonstrated that the program will be adequate to meet the minimum elements of a State operating permits program as specified in 40 CFR part 70.

Requirements for approval, specified in 40 CFR 70.4(b), encompass section 112(l)(5) requirements for approval of a program for delegation of section 112 standards as promulgated by the EPA as they apply to part 70 sources. Section 112(l)(5) requires that the State's program contain adequate authorities, adequate resources for implementation, and an expeditious compliance schedule, which are also requirements under part 70.

Therefore, the EPA is also promulgating full approval under section 112(l)(5) and 40 CFR 63.91 of the State's program for receiving delegation of section 112 standards that are unchanged from Federal standards as promulgated. This program for delegations only applies to sources covered by the part 70 program.

**III. Administrative Requirements**

*A. Docket*

Copies of the State's submittal and other information relied upon for the final full approval, including the public comments received and reviewed by the EPA on the proposal, are contained in the docket maintained at the EPA Regional Office. The docket is an organized and complete file of all the information submitted to, or otherwise considered by, the EPA in the development of this final full approval. The docket is available for public inspection at the location listed under the **ADDRESSES** section of this document.

*B. Executive Order 12866*

The Office of Management and Budget has exempted this action from Executive Order 12866 review.

*C. Regulatory Flexibility Act*

The EPA's actions under section 502 of the Act do not create any new requirements, but simply address operating permits programs submitted to satisfy the requirements of 40 CFR part 70. Because this action does not impose any new requirements, it does not have a significant impact on a substantial number of small entities.

*D. Unfunded Mandates*

Under Section 202 of the Unfunded Mandates Reform Act of 1995 ("Unfunded Mandates Act"), signed into law on March 22, 1995, the EPA must prepare a budgetary impact statement to accompany any proposed or final rule that includes a Federal mandate that may result in estimated costs to State, local, or tribal governments in the aggregate; or to the private sector, of $100 million or more. Under Section 205, the EPA must select the most cost-effective and least burdensome alternative that achieves the objectives of the rule and is consistent with statutory requirements. Section 203 of the Unfunded Mandates Act requires the EPA to establish a plan for informing and advising any small governments that may be significantly or uniquely impacted by the rule.

The EPA has determined that the approval action promulgated today does not include a Federal mandate that may result in estimated costs of $100 million or more to either State, local, or tribal governments in the aggregate, or to the private sector. This Federal action approves pre-existing requirements under State or local law, and imposes no new Federal requirements. Accordingly, no additional costs to State, local, or tribal governments, or to the private sector, result from this action.

**List of Subjects in 40 CFR Part 70**

Administrative practice and procedure, Air pollution control, Environmental protection, Intergovernmental relations, Operating permits, Reporting and recordkeeping requirements.

Dated: August 25, 1995.

**A. Stanley Meiburg,**

*Acting Regional Administrator (6RA).*

40 CFR Part 70 is amended as follows:

**PART 70—[AMENDED]**

1. The authority citation for part 70 continues to read as follows:

**Authority:** 42 U.S.C. 7401, *et seq.*

2. Appendix A is amended by adding an entry for "Louisiana" in alphabetical order to read as follows:

**Appendix A to Part 70—Approval Status of State and Local Operating Permits Programs**

\* \* \* \* \*

*Louisiana*

(a) The Louisiana Department of Environmental Quality, Air Quality Division submitted an Operating Permits program on November 15, 1993, which was revised November 10, 1994, and became effective on October 12, 1995.

(b) [Reserved]

\* \* \* \* \*

[FR Doc. 95–22330 Filed 9–11–95; 8:45 am]

**BILLING CODE 6560–50–P**

---

**40 CFR Part 81**

**[FRL–5279–6]**

**Designation of Areas for Air Quality Planning Purposes; Wyoming; Redesignation of Particulate Matter Attainment Areas**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Direct final rule.

**SUMMARY:** In this document, EPA is approving a December 19, 1994 request from the Governor of Wyoming to redesignate the Powder River Basin particulate matter attainment area in portions of Campbell and Converse Counties to exclude an area designated as the Kennecott/Puron Prevention of Significant Deterioration (PSD) Baseline area, pursuant to section 107 of the Clean Air Act (Act). EPA is designating the Kennecott/Puron PSD Baseline area as a separate particulate matter attainment area under section 107 of the Act. EPA is approving the State's