# **EXHIBIT D**

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Parts 60 and 63**

[EPA–HQ–OAR–2022–0730; FRL–9327–01–OAR]

**RIN 2060–AV71**

**New Source Performance Standards for the Synthetic Organic Chemical Manufacturing Industry and National Emission Standards for Hazardous Air Pollutants for the Synthetic Organic Chemical Manufacturing Industry and Group I & II Polymers and Resins Industry**

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Proposed rule.

**SUMMARY:** The U.S. Environmental Protection Agency (EPA) is proposing amendments to the New Source Performance Standards (NSPS) that apply to the Synthetic Organic Chemical Manufacturing Industry (SOCMI) and to the National Emission Standards for Hazardous Air Pollutants (NESHAP) that apply to the SOCMI (more commonly referred to as the Hazardous Organic NESHAP or HON) and Group I and II Polymers and Resins Industries (P&R I and P&R II). The EPA is proposing decisions resulting from the Agency's technology review of the HON, P&R I, and P&R II, and its eight-year review of the NSPS that apply to the SOCMI. The EPA is also proposing amendments to the NSPS for equipment leaks of volatile organic compounds (VOC) in SOCMI based on its reconsideration of certain issues raised in an administrative petition for reconsideration. Furthermore, the EPA is proposing to strengthen the emission standards for ethylene oxide (EtO) emissions and chloroprene emissions after considering the results of a risk assessment for the HON and Neoprene Production processes subject to P&R I. Lastly, the EPA is proposing to remove exemptions from standards for periods of startup, shutdown, and malfunction (SSM), to add work practice standards for such periods where appropriate, and to add provisions for electronic reporting. We estimate that the proposed amendments to the NESHAP would reduce hazardous air pollutants (HAP) emissions (excluding EtO and chloroprene) from the SOCMI, P&R I, and P&R II sources by approximately 1,123 tons per year (tpy), reduce EtO emissions from HON processes by approximately 58 tpy, and reduce chloroprene emissions from Neoprene Production processes in P&R I by approximately 14 tpy. We also estimate that these proposed amendments to the NESHAP will reduce excess emissions of HAP from flares in the SOCMI and P&R I source categories by an additional 4,858 tpy. Lastly, we estimate that the proposed amendments to the NSPS would reduce VOC emissions from the SOCMI source category by approximately 1,609 tpy.

**DATES:**

*Comments.* Comments must be received on or before June 26, 2023. Under the Paperwork Reduction Act (PRA), comments on the information collection provisions are best assured of consideration if the Office of Management and Budget (OMB) receives a copy of your comments on or before May 25, 2023.

*Public hearing:* The EPA will hold a virtual public hearing on May 16, 2023. See **SUPPLEMENTARY INFORMATION** for information on the public hearing.

**ADDRESSES:** You may send comments, identified by Docket ID No. EPA–HQ–OAR–2022–0730, by any of the following methods:

• *Federal eRulemaking Portal:* https://www.regulations.gov/ (our preferred method). Follow the online instructions for submitting comments.

• *Email:* a-and-r-docket@epa.gov. Include Docket ID No. EPA–HQ–OAR–2022–0730 in the subject line of the message.

• *Fax:* (202) 566–9744. Attention Docket ID No. EPA–HQ–OAR–2022–0730.

• *Mail:* U.S. Environmental Protection Agency, EPA Docket Center, Docket ID No. EPA–HQ–OAR–2022–0730, Mail Code 28221T, 1200 Pennsylvania Avenue NW, Washington, DC 20460.

• *Hand/Courier Delivery:* EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m.–4:30 p.m., Monday–Friday (except Federal Holidays).

*Instructions:* All submissions received must include the Docket ID No. for this rulemaking. Comments received may be posted without change to *https://www.regulations.gov/,* including any personal information provided. For detailed instructions on sending comments and additional information on the rulemaking process, see the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** Mr. Andrew Bouchard, Sector Policies and Programs Division (E143–01), Office of Air Quality Planning and Standards, U.S. Environmental Protection Agency, Research Triangle Park, North Carolina 27711; telephone number: (919) 541–4036; and email address: *bouchard.andrew@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

*Participation in virtual public hearing.* The public hearing will be held via virtual platform on May 16, 2023. The hearing will convene at 11:00 a.m. Eastern Time (ET) and will conclude at 7:00 p.m. ET. The EPA may close a session 15 minutes after the last pre-registered speaker has testified if there are not additional speakers. The EPA will announce further details on the virtual public hearing website at *https://www.epa.gov/stationary-sources-air-pollution/synthetic-organic-chemical-manufacturing-industry-organic-national, https://www.epa.gov/stationary-sources-air-pollution/group-i-polymers-and-resins-national-emission-standards-hazardous,* and *https://www.epa.gov/stationary-sources-air-pollution/epoxy-resins-production-and-non-nylon-polyamides-national-emission.* If the EPA receives a high volume of registrations for the public hearing, we may continue the public hearing on May 17, 2023.

The EPA will begin pre-registering speakers for the hearing no later than 1 business day following the publication of this document in the **Federal Register**. The EPA will accept registrations on an individual basis. To register to speak at the virtual hearing, please use the online registration form available at any of the following websites: *https://www.epa.gov/stationary-sources-air-pollution/synthetic-organic-chemical-manufacturing-industry-organic-national, https://www.epa.gov/stationary-sources-air-pollution/group-i-polymers-and-resins-national-emission-standards-hazardous,* or *https://www.epa.gov/stationary-sources-air-pollution/epoxy-resins-production-and-non-nylon-polyamides-national-emission;* or contact the public hearing team at (888) 372–8699 or by email at *SPPDpublichearing@epa.gov.* The last day to pre-register to speak at the hearing will be May 10, 2023. Prior to the hearing, the EPA will post a general agenda that will list pre-registered speakers in approximate order at: *https://www.epa.gov/stationary-sources-air-pollution/synthetic-organic-chemical-manufacturing-industry-organic-national, https://www.epa.gov/stationary-sources-air-pollution/group-i-polymers-and-resins-national-emission-standards-hazardous,* and *https://www.epa.gov/stationary-sources-air-pollution/epoxy-resins-production-and-*

operator training. Therefore, we are proposing that all existing affected sources, and all new affected sources under the current rules that commenced construction or reconstruction after December 31, 1992 (for HON) or after June 12, 1995 (for P&R I), and on or before April 25, 2023, must comply with the new process vent requirements no later than 3 years from the publication date of the final rule (or upon startup, whichever is later). For all new affected sources that commence construction or reconstruction after April 25, 2023, we are proposing owners or operators comply with the new process vent requirements within 60 days after the publication date of the final rule (or upon startup, whichever is later).

Compliance dates for the fenceline monitoring provisions proposed under CAA section 112 (d)(6) consider the amount of time that it will take owners and operators to develop their siting plans and secure the capabilities to conduct the monitoring and analyze the results. For fenceline monitoring, the compliance timeline also must consider the timeline for controls to be installed and operational before root cause analysis and application of corrective measures can take place. However, the actual monitoring can and must begin at least a year before to develop the annual average concentration baseline. Therefore, we are proposing that owners and operators of all existing sources and all new affected sources under the current rules that commenced construction or reconstruction after December 31, 1992 (for HON) or after June 12, 1995 (for P&R I), and on or before April 25, 2023 must begin fenceline monitoring one year after the publication date of the final rule and must perform root cause analysis and apply corrective action requirements upon exceedance of an annual average concentration action level starting 3 years after the publication date of the final rule (*i.e.,* such that by after two years after the publication date of this rule, facilities will have installed controls to reduce EtO and chloroprene (as discussed in section III.F.1.c of this preamble) and be able to compare 1 year of data to the annual average concentration action level by year 3). For all new affected sources that commence construction or reconstruction after April 25, 2023, we are proposing owners or operators begin fenceline monitoring within 60 days after the publication date of the final rule (or upon startup, whichever is later). We are also proposing to require quarterly reporting of fenceline results beginning 1 year after monitoring begins.

c. Rationale for Proposed Compliance Dates of Proposed CAA Section 112(f) Amendments

As previously mentioned in this preamble, we are proposing under CAA section 112(f), new provisions considering results of the risk assessments to address emissions of EtO from equipment leaks, flares, heat exchange systems, maintenance vents, process vents, storage vessels, and wastewater at HON processes; and emissions of chloroprene from continuous front-end process vents, batch front-end process vents, maintenance vents, storage vessels, and wastewater associated with neoprene production processes subject to P&R I. The proposed provisions will require additional time to plan, purchase, and install equipment for EtO or chloroprene control. For example, for HON process vents in EtO service, if the affected source cannot demonstrate 99.9 percent control of EtO emissions, or reduce EtO emissions to less than 1 ppmv (from each process vent) or 5 pounds per year (for all combined process vents), then a new control system will need to be installed. Therefore, we are proposing a compliance date of 2 years after the publication date of the final rule, or upon startup, whichever is later for all existing affected sources, and all new affected sources under the current rules that commenced construction or reconstruction after December 31, 1992 (for HON) or after June 12, 1995 (for P&R I), and on or before April 25, 2023 to comply with the proposed EtO and chloroprene requirements. For all new affected sources that commence construction or reconstruction after April 25, 2023, we are proposing owners or operators comply with the EtO and chloroprene requirements within 60 days after the publication date of the final rule (or upon startup, whichever is later).

d. Rationale for Proposed Compliance Dates of Other Proposed Amendments

We are proposing to change the HON, P&R I, and P&R II requirements for SSM by removing the exemption from the requirements to meet the standard during SSM periods, proposing alternative standards where needed, and by removing the requirement to develop and implement an SSM plan. In addition, we are proposing to remove all of the regulatory affirmative defense provisions from P&R I. We are also proposing electronic reporting requirements for the HON, P&R I, and P&R II. For details on these proposed amendments, see section III.E of this preamble. Except for the removal of the affirmative defense provisions in P&R I, we are positing that facilities would need some time to successfully accomplish these revisions, including time to read and understand the amended rule requirements, to evaluate their operations to ensure that they can meet the standards during periods of startup and shutdown, as defined in the rule, and make any necessary adjustments, including making adjustments to standard operating procedures, and to convert reporting mechanisms to install necessary hardware and software. As previously mentioned, the EPA recognizes the confusion that multiple different compliance dates for individual requirements would create and the additional burden such an assortment of dates would impose. From our assessment of the timeframe needed for compliance with the entirety of the proposed revisions to SSM requirements as well as the new proposed electronic reporting requirements for flare management plans, compliance reports, and performance evaluation reports, the EPA considers a period of 3 years after the publication date of the final rule to be the most expeditious compliance period practicable and, thus, is proposing that all affected sources be in compliance with these revised requirements upon initial startup or within 3 years of the publication date of the final rule, whichever is later. However, we are proposing to provide 60 days after the publication date of the final rule (or upon startup, whichever is later) for owners or operators of all affected sources to comply with the requirement to report electronically. We are also proposing to provide 60 days after the publication date of the final rule (or upon startup, whichever is later) for owners or operators of P&R I affected sources to comply with the removal of the affirmative defense provisions.

2. NSPS Subparts VVb, IIIa, NNNa, RRRa

We are proposing that all sources of equipment leaks in the SOCMI (regulated under 40 CFR part 60, subpart VVb) and all SOCMI air oxidation unit processes, distillation operations, and reactor processes (regulated under 40 CFR part 60, subparts IIIa, NNNa, and RRRa, respectively), that commenced construction, reconstruction, or modification on or after April 25, 2023, would need to meet the requirements of the new NSPS upon startup of the new, reconstructed or modified facility or 60