# **EXHIBIT L**

(2) *Alternative inspection method.* An inspection of a property will be valid for purposes of this paragraph if:

(i) The inspection was conducted pursuant to the requirements of a Federal, State, or local housing program (including, but not limited to, the Home investment partnership program under title II of the Cranston-Gonzalez National Affordable Housing Act or the low-income housing tax credit program under section 42 of the Internal Revenue Code of 1986);

(ii) If the inspection was not conducted pursuant to the requirements of a Federal housing program, the public housing agency has certified to the Secretary that such standard or requirement provides the same (or greater) protection to occupants of inspected dwelling units;

(iii) Pursuant to the inspection, the property was determined to meet the requirements regarding housing quality or safety applicable to properties assisted under such program; and

(iv) The inspection was conducted within the past 2 years.

(g) *Continuum of Care coordinated assessment.* Grantees must participate in the development, implementation, and ongoing operations of their local Continuum of Care's coordinated assessment system, or equivalent, as described in the McKinney-Vento Act, as amended by the HEARTH Act (42 U.S.C. 11302).

\* \* \* \* \*

(The Office of Management and Budget has approved the information collection provisions in this section under control number 2900–0757.)

■ 11. Add § 62.38 to read as follows:

### § 62.38  Ineligible activities.

Notwithstanding any other section in this part, grantees are not authorized to use supportive services grant funds to pay for the following:

(a) Mortgage costs or costs needed by homeowners to assist with any fees, taxes, or other costs of refinancing.

(b) Construction or rehabilitation of buildings.

(c) Home care and home health aides typically used to provide care in support of daily living activities. This includes care that is focused on treatment for an injury or illness, rehabilitation, or other assistance generally required to assist those with handicaps or other physical limitations.

(d) Credit card bills or other consumer debt.

(e) Medical or dental care and medicines.

(f) Direct cash assistance to participants.

(g) Court-ordered judgments or fines, except for those supported under § 62.34(a)(1).

(h) Pet care.

(i) Entertainment activities.

(Authority: 38 U.S.C. 501, 2044)

■ 12. Amend § 62.60 by adding a parenthetical at the end of the section to read as follows:

### § 62.60  Program or budget changes and corrective action plans.

\* \* \* \* \*

(The Office of Management and Budget has approved the information collection provisions in this section under control number 2900–0757.)

[FR Doc. 2015–03753 Filed 2–23–15; 8:45 am]

**BILLING CODE 8320–01–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Parts 60, 61, and 63

[EPA–R06–OAR–2010–1054; FRL–9923–11–Region 6]

### New Source Performance Standards and National Emission Standards for Hazardous Air Pollutants; Delegation of Authority to Louisiana

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Direct final rule; delegation of authority.

**SUMMARY:** The Louisiana Department of Environmental Quality (LDEQ) has submitted updated regulations for receiving delegation of Environmental Protection Agency (EPA) authority for implementation and enforcement of New Source Performance Standards (NSPS) and National Emission Standards for Hazardous Air Pollutants (NESHAPs) for all sources (both part 70 and non-part 70 sources). The delegation of authority under this action does not apply to sources located in Indian Country. EPA is providing notice that it is updating the delegation of certain NSPS to LDEQ, and taking direct final action to approve the delegation of certain NESHAPs to LDEQ.

**DATES:** This rule is effective on April 27, 2015 without further notice, unless EPA receives relevant adverse comment by March 26, 2015. If EPA receives such comment, EPA will publish a timely withdrawal in the **Federal Register** informing the public that the updated NESHAPs delegation will not take effect; however, the NSPS delegation will not be affected by such action.

**ADDRESSES:** Submit your comments, identified by Docket ID No. EPA–R06–OAR–2007–0488, by one of the following methods:

• *www.regulations.gov.* Follow the on-line instructions.

• *Email:* Mr. Rick Barrett at *barrett.richard@epa.gov.* Please also send a copy by email to the person listed in the **FOR FURTHER INFORMATION CONTACT** section below.

• *Mail or delivery:* Mr. Rick Barrett, Air Permits Section (6PD–R), Environmental Protection Agency, 1445 Ross Avenue, Suite 1200, Dallas, Texas 75202–2733.

*Instructions:* Direct your comments to Docket No. EPA–R06–OAR–2007–0488. EPA's policy is that all comments received will be included in the public docket without change and may be made available online at *http://www.regulations.gov,* including any personal information provided, unless the comment includes information claimed to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Do not submit information through *http://www.regulations.gov* or email, if you believe that it is CBI or otherwise protected from disclosure. The *http://www.regulations.gov* Web site is an "anonymous access" system, which means EPA will not know your identity or contact information unless you provide it in the body of your comment. If you send an email comment directly to EPA without going through *http://www.regulations.gov,* your email address will be automatically captured and included as part of the comment that is placed in the public docket and made available on the Internet. If you submit an electronic comment, EPA recommends that you include your name and other contact information in the body of your comment along with any disk or CD–ROM submitted. If EPA cannot read your comment due to technical difficulties and cannot contact you for clarification, EPA may not be able to consider your comment. Electronic files should avoid the use of special characters and any form of encryption and be free of any defects or viruses. For additional information about EPA's public docket, visit the EPA Docket Center homepage at *http://www.epa.gov/epahome/dockets.htm.*

*Docket:* The index to the docket for this action is available electronically at *www.regulations.gov* and in hard copy at EPA Region 6, 1445 Ross Avenue, Suite 700, Dallas, Texas. While all documents in the docket are listed in the index, some information may be publicly available only at the hard copy location (*e.g.,* copyrighted material), and some may not be publicly available at either location (*e.g.,* CBI).

**FOR FURTHER INFORMATION CONTACT:** Mr. Rick Barrett, (214) 665–7227, *barrett.richard@epa.gov.* To inspect the hard copy materials, please schedule an appointment with Mr. Barrett or Mr. Bill Deese at (214) 665–7253.

**SUPPLEMENTARY INFORMATION:**
Throughout this document "we," "us," or "our" refers to EPA.

**Table of Contents**

I. What does this action do?
II. What is the authority for delegation?
III. What criteria must Louisiana's programs meet to be approved?
IV. How did LDEQ meet the approval criteria?
V. What is being delegated?
VI. What is not being delegated?
VII. How will applicability determinations be made?
VIII. What authority does EPA have?
IX. What information must LDEQ provide to EPA?
X. What is EPA's oversight role?
XI. Should sources submit notices to EPA or LDEQ?
XII. How will unchanged authorities be delegated to LDEQ in the future?
XIII. Final Action
XIV. Statutory and Executive Order Reviews

**I. What does this action do?**

EPA is providing notice that it is delegating authority for implementation and enforcement of certain NSPS to LDEQ. EPA is also taking direct final action to approve the delegation of certain NESHAPs to LDEQ. With this delegation, LDEQ has the primary responsibility to implement and enforce the delegated standards.

**II. What is the authority for delegation?**

Section 111(c)(1) of the Clean Air Act (CAA) authorizes EPA to delegate authority to any state agency which submits adequate regulatory procedures for implementation and enforcement of the NSPS program. The NSPS standards are codified at 40 CFR part 60.

Section 112(l) of the CAA and 40 CFR part 63, subpart E, authorizes EPA to delegate authority to any state or local agency which submits an adequate regulatory program for implementation and enforcement of emission standards for hazardous air pollutants. The hazardous air pollutant standards are codified at 40 CFR parts 61 and 63.

**III. What criteria must Louisiana's programs meet to be approved?**

In order to receive delegation of NSPS, a state must develop and submit to the EPA a procedure for implementing and enforcing the NSPS in the state, and their regulations and resources must be adequate for the implementation and enforcement of the NSPS. EPA initially approved Louisiana's program for the delegation of NSPS on February 22, 1982 (47 FR 07665). EPA reviewed the laws of the State and the rules and regulations of the Louisiana Department of Natural Resources (now the LDEQ) and determined the State's procedures, regulations and resources adequate for the implementation and enforcement of the NSPS program. This action notifies the public that EPA is updating LDEQ's delegation to implement and enforce certain additional NSPS.

As to the NESHAP standards in 40 CFR parts 61 and 63, section 112(l)(5) of the CAA enables EPA to approve state air toxics programs or rules to operate in place of the Federal air toxics program or rules. 40 CFR part 63, subpart E governs EPA's approval of State programs or rules under section 112(l).

EPA will approve the State's submittal of a program for implementation and enforcement of the NESHAPs if we find that:

(1) The State program is "no less stringent" than the corresponding Federal program or rule;
(2) The State has adequate authority and resources to implement the program;
(3) The schedule for implementation and compliance is sufficiently expeditious; and
(4) The program otherwise complies with Federal guidance.

In order to obtain approval of its program to implement and enforce Federal section 112 rules as promulgated without changes (straight delegation), a State must demonstrate that it meets the approval criteria of 40 CFR 63.91(d). 40 CFR 63.91(d)(3) provides that interim or final Title V program approval will satisfy the criteria of 40 CFR 63.91(d) for part 70 sources (sources required to obtain operating permits pursuant to Title V of the Clean Air Act).

**IV. How did LDEQ meet the approval criteria?**

As to the NSPS standards in 40 CFR part 60, LDEQ adopted the Federal standards via incorporation by reference. The LDEQ regulations are, therefore, at least as stringent as EPA's rules. See 40 CFR 60.10(a). Also, in the EPA initial approval of NSPS delegation, we determined that the State developed procedures for implementing and enforcing the NSPS in the State, and that the State's regulations and resources are adequate for the implementation and enforcement of the NSPS program. See 47 FR 07665 (February 22, 1982).

As to the NESHAP standards in 40 CFR parts 61 and 63, as part of its Title V submission LDEQ stated that it intended to use the mechanism of incorporation by reference to adopt unchanged Federal section 112 standards into its regulations. This commitment applied to both existing and future standards as they applied to part 70 sources. EPA's final interim approval of Louisiana's Title V operating permits program delegated the authority to implement certain NESHAPs to the State. See 60 FR 17750 (April 7, 1995). EPA promulgated final full approval of the State's operating permits program on September 12, 1995. See 60 FR 42296. These interim and final title V program approvals satisfy the upfront approval criteria of 40 CFR 63.91(d). Under 40 CFR 63.91(d)(2), once a state has satisfied the up-front approval criteria, it needs only to reference the previous demonstration and reaffirm that it still meets the criteria for any subsequent submittals for delegation of the section 112 standards. LDEQ has affirmed that it still meets the up-front approval criteria.

**V. What is being delegated?**

By letter dated November 30, 2010, EPA received a request from Louisiana to update LDEQ's NSPS delegation and NESHAPs delegation. With certain exceptions noted in section VI below, LDEQ's request included NSPS in 40 CFR part 60, and NESHAPs in 40 CFR part 61 and 63, as amended between July 2, 2008 and July 1, 2009.

By letter dated May 28, 2013, EPA received a second request from Louisiana to update LDEQ's NSPS delegation. Louisiana's request only included NSPS in 40 CFR part 60, subpart OOOO, Standards of Performance for Crude Oil and Natural Gas Production, Transmission and Distribution, as promulgated by EPA on August 16, 2012 (77 FR 49490).

By letter dated June 21, 2013, EPA received a third request from Louisiana to update LDEQ's NSPS delegation and NESHAPs delegation. With certain exceptions noted in section VI below, Louisiana's request included NSPS in 40 CFR part 60, and NESHAPs in 40 CFR parts 61 and 63, as amended between July 2, 2009 and July 1, 2012.

By letter dated August 28, 2014, EPA received a fourth request from Louisiana to update LDEQ's NSPS delegation and NESHAPs delegation. With certain exceptions noted in section VI below, Louisiana's request included NSPS in 40 CFR part 60, and NESHAPs in 40 CFR part 61 and 63, as amended between July 2, 2012 and July 1, 2013.

## VI. What is not being delegated?

The following part 60, 61 and 63 authorities listed below are not delegated. All of the inquiries and requests concerning implementation and enforcement of the excluded standards in the State of Louisiana should be directed to the EPA Region 6 Office.

- 40 CFR part 60, subpart AAA (Standards of Performance for New Residential Wood Heaters);
- 40 CFR part 61, subpart B (National Emission Standards for Radon Emissions from Underground Uranium Mines);
- 40 CFR part 61, subpart H (National Emission Standards for Emissions of Radionuclides Other Than Radon From Department of Energy Facilities);
- 40 CFR part 61, subpart I (National Emission Standards for Radionuclide Emissions from Federal Facilities Other Than Nuclear Regulatory Commission Licensees and Not Covered by Subpart H);
- 40 CFR part 61, subpart K (National Emission Standards for Radionuclide Emissions from Elemental Phosphorus Plants);
- 40 CFR part 61, subpart Q (National Emission Standards for Radon Emissions from Department of Energy facilities);
- 40 CFR part 61, subpart R (National Emission Standards for Radon Emissions from Phosphogypsum Stacks);
- 40 CFR part 61, subpart T (National Emission Standards for Radon Emissions from the Disposal of Uranium Mill Tailings); and
- 40 CFR part 61, subpart W (National Emission Standards for Radon Emissions from Operating Mill Tailings).

In addition, EPA cannot delegate to a State any of the Category II Subpart A authorities set forth in 40 CFR 63.91(g)(2). These include the following provisions: § 63.6(g), Approval of Alternative Non-Opacity Standards; § 63.6(h)(9), Approval of Alternative Opacity Standards; § 63.7(e)(2)(ii) and (f), Approval of Major Alternatives to Test Methods; § 63.8(f), Approval of Major Alternatives to Monitoring; and § 63.10(f), Approval of Major Alternatives to Recordkeeping and Reporting. Also, some Part 63 standards have certain provisions that cannot be delegated to the States. Therefore, any Part 63 standard that EPA is delegating to LDEQ that provides that certain authorities cannot be delegated are retained by EPA and not delegated. Furthermore, no authorities are delegated that require rulemaking in the Federal Register to implement, or where Federal overview is the only way to ensure national consistency in the application of the standards or requirements of CAA section 112. Finally, section 112(r), the accidental release program authority, is not being delegated by this approval.

In addition, this delegation to LDEQ to implement and enforce certain NSPS and NESHAPs does not extend to sources or activities located in Indian country, as defined in 18 U.S.C. 1151. Under this definition, EPA treats as reservations, trust lands validly set aside for the use of a Tribe even if the trust lands have not been formally designated as a reservation. Consistent with previous federal program approvals or delegations, EPA will continue to implement the NSPS and NESHAPs in Indian country because LDEQ has not submitted information to demonstrate authority over sources and activities located within the exterior boundaries of Indian reservations and other areas in Indian country.

## VII. How will applicability determinations be made?

In approving the NSPS delegation, LDEQ will obtain concurrence from EPA on any matter involving the interpretation of section 111 of the CAA or 40 CFR part 60 to the extent that application, implementation, administration, or enforcement of these provisions have not been covered by prior EPA determinations or guidance. See 47 FR 07665 (February 22, 1982).

In approving the NESHAPs delegation, LDEQ will obtain concurrence from EPA on any matter involving the interpretation of section 112 of the CAA or 40 CFR parts 61 and 63 to the extent that application, implementation, administration, or enforcement of these provisions have not been covered by prior EPA determinations or guidance.

## VIII. What authority does EPA have?

We retain the right, as provided by CAA section 111(c)(2), to enforce any applicable emission standard or requirement under section 111.

We retain the right, as provided by CAA section 112(l)(7), to enforce any applicable emission standard or requirement under section 112. EPA also has the authority to make certain decisions under the General Provisions (subpart A) of part 63. We are granting LDEQ some of these authorities, and retaining others, as explained in sections V and VI above. In addition, EPA may review and disapprove State determinations and subsequently require corrections. (See 40 CFR 63.91(g) and 65 FR 55810, 55823, September 14, 2000, as amended at 70 FR 59887, October 13, 2005; 72 FR 27443, May 16, 2007.)

Furthermore, we retain any authority in an individual emission standard that may not be delegated according to provisions of the standard. Also, listed in the footnotes of the part 63 delegation table at the end of this rule are the authorities that cannot be delegated to any State or local agency which we therefore retain.

Finally, we retain the authorities stated in the original delegation agreement. See 47 FR 07665 (February 22, 1982).

## IX. What information must LDEQ provide to EPA?

Under 40 CFR 60.4(b), all notifications under NSPS must be sent to both EPA and to LDEQ. Please send notifications and reports to Chief, Air/Toxics Inspection and Coordination Branch at the EPA Region 6 office.

LDEQ must provide any additional compliance related information to EPA, Region 6, Office of Enforcement and Compliance Assurance, within 45 days of a request under 40 CFR 63.96(a). In receiving delegation for specific General Provisions authorities, LDEQ must submit to EPA Region 6, on a semi-annual basis, copies of determinations issued under these authorities. For 40 CFR parts 61 and 63 standards, these determinations include: Section 63.1, Applicability Determinations; Section 63.6(e), Operation and Maintenance Requirements—Responsibility for Determining Compliance; Section 63.6(f), Compliance with Non-Opacity Standards—Responsibility for Determining Compliance; Section 63.6(h), Compliance with Opacity and Visible Emissions Standards—Responsibility for Determining Compliance; Sections 63.7(c)(2)(i) and (d), Approval of Site-Specific Test Plans; Section 63.7(e)(2)(i), Approval of Minor Alternatives to Test Methods; Section 63.7(e)(2)(ii) and (f), Approval of Intermediate Alternatives to Test Methods; Section 63.7(e)(iii), Approval of Shorter Sampling Times and Volumes When Necessitated by Process Variables or Other Factors; Sections 63.7(e)(2)(iv), (h)(2), and (h)(3), Waiver of Performance Testing; Sections 63.8(c)(1) and (e)(1), Approval of Site-Specific Performance Evaluation (Monitoring) Test Plans; Section 63.8(f), Approval of Minor Alternatives to Monitoring; Section 63.8(f), Approval of Intermediate Alternatives to Monitoring; Section 63.9 and 63.10, Approval of Adjustments to Time Periods for Submitting Reports; Section 63.10(f), Approval of Minor

Alternatives to Recordkeeping and Reporting; Section 63.7(a)(4), Extension of Performance Test Deadline.

### X. What is EPA's oversight role?

EPA must oversee LDEQ's decisions to ensure the delegated authorities are being adequately implemented and enforced. We will integrate oversight of the delegated authorities into the existing mechanisms and resources for oversight currently in place. If, during oversight, we determine that LDEQ made decisions that decreased the stringency of the delegated standards, then LDEQ shall be required to take corrective actions and the source(s) affected by the decisions will be notified, as required by 40 CFR 63.91(g)(1)(ii). We will initiate withdrawal of the program or rule if the corrective actions taken are insufficient. Also see 47 FR 07665 (February 22, 1982).

### XI. Should sources submit notices to EPA or LDEQ?

All of the information required pursuant to the Federal NSPS and NESHAPs (40 CFR parts 60, 61 and 63) should be submitted by sources located outside of Indian country directly to the LDEQ at the following address: Louisiana Department of Environmental Quality, PO Box 4301, Baton Rouge, Louisiana 70821–4301. The LDEQ is the primary point of contact with respect to delegated NSPS and NESHAPs. Sources do not need to send a copy to EPA. EPA Region 6 waives the requirement that notifications and reports for delegated standards be submitted to EPA in addition to LDEQ, in accordance with 40 CFR 63.9(a)(4)(ii) and 63.10(a)(4)(ii). Also, see 51 FR 20648 (June 6, 1986). For those standards that are not delegated, sources must continue to submit all appropriate information to EPA.

### XII. How will unchanged authorities be delegated to LDEQ in the future?

In the future, LDEQ will only need to send a letter of request to update their delegation to EPA, Region 6, for those NSPS which they have adopted by reference. EPA will amend the relevant portions of the Code of Federal Regulations showing which NSPS standards have been delegated to LDEQ. Also, in the future, LDEQ will only need to send a letter of request for approval to EPA, Region 6, for those NESHAPs regulations that LDEQ has adopted by reference. The letter must reference the previous up-front approval demonstration and reaffirm that it still meets the up-front approval criteria. We will respond in writing to the request stating that the request for delegation is either granted or denied. A **Federal Register** action will be published to inform the public and affected sources of the delegation, indicate where source notifications and reports should be sent, and to amend the relevant portions of the Code of Federal Regulations showing which NESHAP standards have been delegated to LDEQ.

### XIII. Final Action

The public was provided the opportunity to comment on the proposed approval of the program and mechanism for delegation of section 112 standards, as they apply to part 70 sources, on August 24, 1994, for the proposed interim approval of LDEQ's Title V operating permits program; and on April 7, 1995, for the proposed final approval of LDEQ's Title V operating permits program. In EPA's final full approval of Louisiana's Operating Permits Program (60 FR 47296), the EPA discussed the public comments on the proposed final delegation of the Title V operating permits program. In today's action, the public is given the opportunity to comment on the approval of LDEQ's request for delegation of authority to implement and enforce certain section 112 standards for all sources (both part 70 and non-part 70 sources) which have been adopted by reference into Louisiana's state regulations. However, the Agency views the approval of these requests as a noncontroversial action and anticipates no adverse comments. Therefore, EPA is publishing this rule without prior proposal. However, in the ''Proposed Rules'' section of today's **Federal Register** publication, EPA is publishing a separate document that will serve as the proposal to approve the program and NESHAPs delegation of authority described in this action if adverse comments are received. This action will be effective April 27, 2015 without further notice unless the Agency receives relevant adverse comments by March 26, 2015.

If EPA receives relevant adverse comments, we will publish a timely withdrawal in the **Federal Register** informing the public the rule will not take effect with respect to the updated NESHAPs delegation. We will address all public comments in a subsequent final rule based on the proposed rule. The EPA will not institute a second comment period on this action. Any parties interested in commenting must do so at this time. Please note that if we receive relevant adverse comment on an amendment, paragraph, or section of this rule and if that provision may be severed from the remainder of the rule, we may adopt as final those provisions of the rule that are not the subject of a relevant adverse comment.

### XIV. Statutory and Executive Order Reviews

Under Executive Order 12866 (58 FR 51735, October 4, 1993), this action is not a ''significant regulatory action'' and therefore is not subject to review by the Office of Management and Budget. For this reason, this action is also not subject to Executive Order 13211, ''Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use'' (66 FR 28355, May 22, 2001). This action merely approves state law as meeting Federal requirements and imposes no additional requirements beyond those imposed by state law. Accordingly, the Administrator certifies that this rule will not have a significant economic impact on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 *et seq.*). Because this rule approves pre-existing requirements under state law and does not impose any additional enforceable duty beyond that required by state law, it does not contain any unfunded mandate or significantly or uniquely affect small governments, as described in the Unfunded Mandates Reform Act of 1995 (Pub. L. 104–4).

In addition, this rule does not have tribal implications as specified by Executive Order 13175 (65 FR 67249, November 9, 2000), because the delegation is not approved to apply in Indian country located in the State, and the EPA notes that it will not impose substantial direct costs on tribal governments or preempt tribal law. This action also does not have Federalism implications because it does not have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government, as specified in Executive Order 13132 (64 FR 43255, August 10, 1999). This action merely approves a state request to receive delegation of certain Federal standards, and does not alter the relationship or the distribution of power and responsibilities established in the Clean Air Act. This rule also is not subject to Executive Order 13045 ''Protection of Children from Environmental Health Risks and Safety Risks'' (62 FR 19885, April 23, 1997), because it is not economically significant.

In reviewing delegation submissions, EPA's role is to approve submissions, provided that they meet the criteria of the Clean Air Act. In this context, in the

absence of a prior existing requirement for the State to use voluntary consensus standards (VCS), EPA has no authority to disapprove a delegation submission for failure to use VCS. It would thus be inconsistent with applicable law for EPA to use VCS in place of a delegation submission that otherwise satisfies the provisions of the Clean Air Act. Thus, the requirements of section 12(d) of the National Technology Transfer and Advancement Act of 1995 (15 U.S.C. 272 note) do not apply. This rule does not impose an information collection burden under the provisions of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*).

The Congressional Review Act, 5 U.S.C. 801 *et seq.,* as added by the Small Business Regulatory Enforcement Fairness Act of 1996, generally provides that before a rule may take effect, the agency promulgating the rule must submit a rule report, which includes a copy of the rule, to each House of the Congress and to the Comptroller General of the United States. EPA will submit a report containing this rule and other required information to the U.S. Senate, the U.S. House of Representatives, and the Comptroller General of the United States prior to publication of the rule in the **Federal Register**. A major rule cannot take effect until 60 days after it is published in the **Federal Register**. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the Clean Air Act, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by *April 27, 2015*. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this rule for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See section 307(b)(2)).

## List of Subjects

### 40 CFR Part 60

Environmental protection, Administrative practice and procedure, Air pollution control, Intergovernmental relations, Reporting and recordkeeping requirements.

### 40 CFR Part 61

Environmental protection, Administrative practice and procedure, Air pollution control, Arsenic, Benzene, Beryllium, Hazardous substances, Mercury, Intergovernmental relations, Reporting and recordkeeping requirements, Vinyl chloride.

### 40 CFR Part 63

Environmental protection, Administrative practice and procedure, Air pollution control, Hazardous substances, Intergovernmental relations, Reporting and recordkeeping requirements.

Dated: January 28, 2015.

**Samuel Coleman,**

*Acting Regional Administrator, Region 6.*

For the reasons stated in the preamble, 40 CFR parts 60, 61, and 63 are amended as follows:

## PART 60—STANDARDS OF PERFORMANCE FOR NEW STATIONARY SOURCES

■ 1. The authority citation for part 60 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

### Subpart A—General Provisions

■ 2. Section 60.4 is amended by revising paragraphs (b)(T) and (e)(2) to read as follows:

### § 60.4  Address.

\*   \*   \*   \*   \*

(b) * * *

(T) State of Louisiana: Louisiana Department of Environmental Quality, P.O. Box 4301, Baton Rouge, Louisiana 70821–4301.

Note: For a list of delegated standards for Louisiana (excluding Indian country), see paragraph (e)(2) of this section.

\*   \*   \*   \*   \*

(e) * * *

(2) *Louisiana.* The Louisiana Department of Environmental Quality has been delegated all part 60 standards promulgated by EPA, except subpart AAA—Standards of Performance for New Residential Wood Heaters, as amended in the **Federal Register** through July 1, 2013.

### DELEGATION STATUS FOR PART 60 STANDARDS—STATE OF LOUISIANA
[Excluding Indian Country]

| Subpart | Source category | LDEQ [1] |
|---|---|---|
| A | General Provisions | Yes |
| Ce | Emission Guidelines and Compliance Times for Hospital/Medical/Infectious Waste Incinerators | Yes |
| D | Fossil Fueled Steam Generators (>250 MM BTU/hr) | Yes |
| Da | Electric Utility Steam Generating Units (>250 MM BTU/hr) | Yes |
| Db | Industrial-Commercial-Institutional Steam Generating Units (100 to 250 MM BTU/hr) | Yes |
| Dc | Industrial-Commercial-Institutional Small Steam Generating Units (10 to 100 MM BTU/hr) | Yes |
| E | Incinerators (>50 tons per day) | Yes |
| Ea | Municipal Waste Combustors | Yes |
| Eb | Large Municipal Waste Combustors | Yes |
| Ec | Hospital/Medical/Infectious Waste Incinerators | Yes |
| F | Portland Cement Plants | Yes |
| G | Nitric Acid Plants | Yes |
| Ga | Nitric Acid Plants (after October 14, 2011) | Yes |
| H | Sulfuric Acid Plants | Yes |
| I | Hot Mix Asphalt Facilities | Yes |
| J | Petroleum Refineries | Yes |
| Ja | Petroleum Refineries (After May 14, 2007) | Yes |
| K | Storage Vessels for Petroleum Liquids (After 6/11/73 & Before 5/19/78) | Yes |
| Ka | Storage Vessels for Petroleum Liquids (After 6/11/73 & Before 5/19/78) | Yes |
| Kb | Volatile Organic Liquid Storage Vessels (Including Petroleum Liquid Stg/Vessels) After 7/23/84 | Yes |
| L | Secondary Lead Smelters Yes | Yes |
| M | Secondary Brass and Bronze Production Plants | Yes |
| N | Primary Emissions from Basic Oxygen Process Furnaces (Construction Commenced After June 11, 1973) | Yes |

DELEGATION STATUS FOR PART 60 STANDARDS—STATE OF LOUISIANA—Continued

[Excluding Indian Country]

| Subpart | Source category | LDEQ[1] |
|---|---|---|
| Na | Secondary Emissions from Basic Oxygen Process Steelmaking Facilities Construction is Commenced After January 20, 1983. | Yes |
| O | Sewage Treatment Plants | Yes |
| P | Primary Copper Smelters | Yes |
| Q | Primary Zinc Smelters | Yes |
| R | Primary Lead Smelters | Yes |
| S | Primary Aluminum Reduction Plants | Yes |
| T | Phosphate Fertilizer Industry: Wet Process Phosphoric Plants | Yes |
| U | Phosphate Fertilizer Industry: Superphosphoric Acid Plants | Yes |
| V | Phosphate Fertilizer Industry: Diammonium Phosphate Plants | Yes |
| W | Phosphate Fertilizer Industry: Triple Superphosphate Plants | Yes |
| X | Phosphate Fertilizer Industry: Granular Triple Superphosphate Storage Facilities | Yes |
| Y | Coal Preparation Plants | Yes |
| Z | Ferroalloy Production Facilities | Yes |
| AA | Steel Plants: Electric Arc Furnaces After 10/21/74 & On or Before 8/17/83 | Yes |
| AAa | Steel Plants: Electric Arc Furnaces & Argon-Oxygen Decarburization Vessels After 8/07/83 | Yes |
| BB | Kraft Pulp Mills | Yes |
| CC | Glass Manufacturing Plants | Yes |
| DD | Grain Elevators | Yes |
| EE | Surface Coating of Metal Furniture | Yes |
| GG | Stationary Gas Turbines | Yes |
| HH | Lime Manufacturing Plants | Yes |
| KK | Lead-Acid Battery Manufacturing Plants | Yes |
| LL | Metallic Mineral Processing Plants | Yes |
| MM | Automobile & Light Duty Truck Surface Coating Operations | Yes |
| NN | Phosphate Manufacturing Plants | Yes |
| PP | Ammonium Sulfate Manufacture | Yes |
| QQ | Graphic Arts Industry: Publication Rotogravure Printing | Yes |
| RR | Pressure Sensitive Tape and Label Surface Coating Operations | Yes |
| SS | Industrial Surface Coating: Large Appliances | Yes |
| TT | Metal Coil Surface Coating | Yes |
| UU | Asphalt Processing and Asphalt Roofing Manufacture | Yes |
| VV | VOC Equipment Leaks in the SOCMI Industry | Yes |
| VVa | VOC Equipment Leaks in the SOCMI Industry (After November 7, 2006) | Yes |
| XX | Bulk Gasoline Terminals | Yes |
| AAA | New Residential Wood Heaters | No |
| BBB | Rubber Tire Manufacturing Industry | Yes |
| DDD | Volatile Organic Compound (VOC) Emissions from the Polymer Manufacturing Industry | Yes |
| FFF | Flexible Vinyl and Urethane Coating and Printing | Yes |
| GGG | VOC Equipment Leaks in Petroleum Refineries | Yes |
| HHH | Synthetic Fiber Production | Yes |
| III | VOC Emissions from the SOCMI Air Oxidation Unit Processes | Yes |
| JJJ | Petroleum Dry Cleaners | Yes |
| KKK | VOC Equipment Leaks From Onshore Natural Gas Processing Plants | Yes |
| LLL | Onshore Natural Gas Processing: $SO_2$ Emissions | Yes |
| NNN | VOC Emissions from SOCMI Distillation Operations | Yes |
| OOO | Nonmetallic Mineral Processing Plants | Yes |
| PPP | Wool Fiberglass Insulation Manufacturing Plants | Yes |
| QQQ | VOC Emissions From Petroleum Refinery Wastewater Systems | Yes |
| RRR | VOC Emissions from SOCMI Reactor Processes | Yes |
| SSS | Magnetic Tape Coating Operations | Yes |
| TTT | Industrial Surface Coating: Plastic Parts for Business Machines | Yes |
| UUU | Calciners and Dryers in Mineral Industries | Yes |
| VVV | Polymeric Coating of Supporting Substrates Facilities | Yes |
| WWW | Municipal Solid Waste Landfills | Yes |
| AAAA | Small Municipal Waste Combustion Units (Construction is Commenced After 8/30/99 or Modification/Reconstruction is Commenced After 6/06/2001). | Yes |
| CCCC | Commercial & Industrial Solid Waste Incineration Units (Construction is Commenced After 11/30/1999 or Modification/Reconstruction is Commenced on or After 6/01/2001). | Yes |
| DDDD | Emission Guidelines & Compliance Times for Commercial & Industrial Solid Waste Incineration Units (Commenced Construction On or Before 11/30/1999). | Yes |
| EEEE | Other Solid Waste Incineration Units (Constructed after 12/09/2004 or Modification/Reconstruction is commenced on or after 06/16/2004). | Yes |
| IIII | Stationary Compression Ignition Internal Combustion Engines | Yes |
| JJJJ | Stationary Spark Ignition Internal Combustion Engines | Yes |
| KKKK | Stationary Combustion Turbines (Construction Commenced After 02/18/2005) | Yes |
| LLLL | New Sewage Sludge Incineration Units | Yes |
| MMMM | Emission Guidelines and Compliance Times for Existing Sewage Sludge Incineration Units | Yes |
| OOOO | Crude Oil and Natural Gas Production, Transmission and Distribution | Yes |

[1] The Louisiana Department of Environmental Quality (LDEQ) has been delegated all Part 60 standards promulgated by EPA, except subpart AAA—Standards of Performance for New Residential Wood Heaters—as amended in the **Federal Register** through July 1, 2013.

* * * * *

## PART 61—NATIONAL EMISSION STANDARDS FOR HAZARDOUS AIR POLLUTANTS

■ 3. The authority citation for part 61 continues to read as follows:

**Authority:** 42 U.S.C. 7401 et seq.

### Subpart A—General Provisions

■ 4. Section 61.04 is amended by revising paragraph (c)(6)(ii) to read as follows:

**§ 61.04   Address.**

* * * * *

(c) * * *

(6) * * *

(ii) *Louisiana.* The Louisiana Department of Environmental Quality (LDEQ) has been delegated the following part 61 standards promulgated by EPA, as amended in the **Federal Register** through July 1, 2013. The (X) symbol is used to indicate each subpart that has been delegated.

DELEGATION STATUS FOR PART 61 STANDARDS—STATE OF LOUISIANA

[Excluding Indian Country]

| Subpart | Source category | LDEQ [1] |
|---|---|---|
| A | General Provisions | X |
| B | Radon Emissions From Underground Uranium Mines | |
| C | Beryllium | X |
| D | Beryllium Rocket Motor Firing | X |
| E | Mercury | X |
| F | Vinyl Chloride | X |
| G | (Reserved) | |
| H | Emissions of Radionuclides Other Than Radon From Department of Energy Facilities | |
| I | Radionuclide Emissions From Federal Facilities Other Than Nuclear Regulatory Commission Licensees and Not Covered by Subpart H. | |
| J | Equipment Leaks (Fugitive Emission Sources) of Benzene | X |
| K | Radionuclide Emissions From Elemental Phosphorus Plants | |
| L | Benzene Emissions From Coke By-Product Recovery Plants | X |
| M | Asbestos | X |
| N | Inorganic Arsenic Emissions From Glass Manufacturing Plants | X |
| O | Inorganic Arsenic Emissions From Primary Copper Smelters | X |
| P | Inorganic Arsenic Emissions From Arsenic Trioxide and Metallic Arsenic Production Facilities | X |
| Q | Radon Emissions From Department of Energy Facilities | |
| R | Radon Emissions From Phosphogypsum Stacks | |
| S | (Reserved) | |
| T | Radon Emissions From the Disposal of Uranium Mill Tailings | |
| U | (Reserved) | |
| V | Equipment Leaks (Fugitives Emission Sources) | X |
| W | Radon Emissions From Operating Mill Tailings | |
| X | (Reserved) | |
| Y | Benzene Emissions From Benzene Storage Vessels | X |
| Z–AA | (Reserved) | |
| BB | Benzene Emissions From Benzene Transfer Operations | X |
| CC–EE | (Reserved) | |
| FF | Benzene Waste Operations | X |

[1] Program delegated to Louisiana Department of Environmental Quality (LDEQ).

* * * * *

## PART 63—NATIONAL EMISSION STANDARDS FOR HAZARDOUS AIR POLLUTANTS FOR SOURCE CATEGORIES

■ 5. The authority citation for part 63 continues to read as follows:

**Authority:** 42 U.S.C. 7401 et seq.

### Subpart E—Approval of State Programs and Delegation of Federal Authorities

■ 6. Section 63.99 is amended by revising paragraph (a)(19)(i) to read as follows:

**§ 63.99   Delegated Federal authorities.**

(a) * * *

(19) * * *

(i) The following table lists the specific part 63 standards that have been delegated unchanged to the Louisiana Department of Environmental Quality for all sources. The "X" symbol is used to indicate each subpart that has been delegated. The delegations are subject to all of the conditions and limitations set forth in Federal law, regulations, policy, guidance, and determinations. Some authorities cannot be delegated and are retained by EPA. These include certain General Provisions authorities and specific parts of some standards. Any amendments made to these rules after July 1, 2013, are not delegated.

DELEGATION STATUS FOR PART 63 STANDARDS—STATE OF LOUISIANA

[Excluding Indian Country]

| Subpart | Source category | LDEQ [1][2] |
|---|---|---|
| A | General Provisions | X |
| D | Early Reductions | X |
| F | Hazardous Organic NESHAP (HON)—Synthetic Organic Chemical Manufacturing Industry (SOCMI) | X |
| G | HON—SOCMI Process Vents, Storage Vessels, Transfer Operations and Wastewater | X |

DELEGATION STATUS FOR PART 63 STANDARDS—STATE OF LOUISIANA—Continued
[Excluding Indian Country]

| Subpart | Source category | LDEQ [1] [2] |
|---|---|---|
| H | HON—Equipment Leaks | X |
| I | HON—Certain Processes Negotiated Equipment Leak Regulation | X |
| J | Polyvinyl Chloride and Copolymers Production | ([3]) |
| K | (Reserved) | |
| L | Coke Oven Batteries | X |
| M | Perchloroethylene Dry Cleaning | X |
| N | Chromium Electroplating and Chromium Anodizing Tanks | X |
| O | Ethylene Oxide Sterilizers | X |
| P | (Reserved) | |
| Q | Industrial Process Cooling Towers | X |
| R | Gasoline Distribution | X |
| S | Pulp and Paper Industry | X |
| T | Halogenated Solvent Cleaning | X |
| U | Group I Polymers and Resins | X |
| V | (Reserved) | |
| W | Epoxy Resins Production and Non-Nylon Polyamides Production | X |
| X | Secondary Lead Smelting | X |
| Y | Marine Tank Vessel Loading | X |
| Z | (Reserved) | |
| AA | Phosphoric Acid Manufacturing Plants | X |
| BB | Phosphate Fertilizers Production Plants | X |
| CC | Petroleum Refineries | X |
| DD | Off-Site Waste and Recovery Operations | X |
| EE | Magnetic Tape Manufacturing | X |
| FF | (Reserved) | |
| GG | Aerospace Manufacturing and Rework Facilities | X |
| HH | Oil and Natural Gas Production Facilities | X |
| II | Shipbuilding and Ship Repair Facilities | X |
| JJ | Wood Furniture Manufacturing Operations | X |
| KK | Printing and Publishing Industry | X |
| LL | Primary Aluminum Reduction Plants | X |
| MM | Chemical Recovery Combustion Sources at Kraft, Soda, Sulfide, and Stand-Alone Semichemical Pulp Mills. | X |
| NN | (Reserved) | |
| OO | Tanks-Level 1 | X |
| PP | Containers | X |
| QQ | Surface Impoundments | X |
| RR | Individual Drain Systems | X |
| SS | Closed Vent Systems, Control Devices, Recovery Devices and Routing to a Fuel Gas System or a Process. | X |
| TT | Equipment Leaks—Control Level 1 | X |
| UU | Equipment Leaks—Control Level 2 Standards | X |
| VV | Oil—Water Separators and Organic—Water Separators | X |
| WW | Storage Vessels (Tanks)—Control Level 2 | X |
| XX | Ethylene Manufacturing Process Units Heat Exchange Systems and Waste Operations | X |
| YY | Generic Maximum Achievable Control Technology Standards | X |
| ZZ–BBB | (Reserved) | |
| CCC | Steel Pickling—HCI Process Facilities and Hydrochloric Acid Regeneration | X |
| DDD | Mineral Wool Production | X |
| EEE | Hazardous Waste Combustors | X |
| FFF | (Reserved) | |
| GGG | Pharmaceuticals Production | X |
| HHH | Natural Gas Transmission and Storage Facilities | X |
| III | Flexible Polyurethane Foam Production | X |
| JJJ | Group IV Polymers and Resins | X |
| KKK | (Reserved) | |
| LLL | Portland Cement Manufacturing | X |
| MMM | Pesticide Active Ingredient Production | X |
| NNN | Wool Fiberglass Manufacturing | X |
| OOO | Amino/Phenolic Resins | X |
| PPP | Polyether Polyols Production | X |
| QQQ | Primary Copper Smelting | X |
| RRR | Secondary Aluminum Production | X |
| SSS | (Reserved) | |
| TTT | Primary Lead Smelting | X |
| UUU | Petroleum Refineries—Catalytic Cracking Units, Catalytic Reforming Units and Sulfur Recovery Plants | X |
| VVV | Publicly Owned Treatment Works (POTW) | X |
| WWW | (Reserved) | |
| XXX | Ferroalloys Production: Ferromanganese and Silicomanganese | X |
| AAAA | Municipal Solid Waste Landfills | X |
| CCCC | Nutritional Yeast Manufacturing | X |

DELEGATION STATUS FOR PART 63 STANDARDS—STATE OF LOUISIANA—Continued
[Excluding Indian Country]

| Subpart | Source category | LDEQ [1][2] |
|---|---|---|
| DDDD | Plywood and Composite Wood Products | [4] X |
| EEEE | °Organic Liquids Distribution | X |
| FFFF | Misc. Organic Chemical Production and Processes (MON) | X |
| GGGG | Solvent Extraction for Vegetable Oil Production | X |
| HHHH | Wet Formed Fiberglass Mat Production | X |
| IIII | Auto & Light Duty Truck (Surface Coating) | X |
| JJJJ | Paper and other Web (Surface Coating) | X |
| KKKK | Metal Can (Surface Coating) | X |
| MMMM | Misc. Metal Parts and Products (Surface Coating) | X |
| NNNN | Surface Coating of Large Appliances | X |
| OOOO | Fabric Printing Coating and Dyeing | X |
| PPPP | Plastic Parts (Surface Coating) | X |
| QQQQ | Surface Coating of Wood Building Products | X |
| RRRR | Surface Coating of Metal Furniture | X |
| SSSS | Surface Coating for Metal Coil | X |
| TTTT | Leather Finishing Operations | X |
| UUUU | Cellulose Production Manufacture | X |
| VVVV | Boat Manufacturing | X |
| WWWW | Reinforced Plastic Composites Production | X |
| XXXX | Rubber Tire Manufacturing | X |
| YYYY | Combustion Turbines | X |
| ZZZZ | Reciprocating Internal Combustion Engines (RICE) | X |
| AAAAA | Lime Manufacturing Plants | X |
| BBBBB | Semiconductor Manufacturing | X |
| CCCCC | Coke Ovens: Pushing, Quenching and Battery Stacks | X |
| DDDDD | Industrial/Commercial/Institutional Boilers and Process Heaters | [5] X |
| EEEEE | Iron Foundries | X |
| FFFFF | Integrated Iron and Steel | X |
| GGGGG | Site Remediation | X |
| HHHHH | Miscellaneous Coating Manufacturing | X |
| IIIII | Mercury Cell Chlor-Alkali Plants | X |
| JJJJJ | Brick and Structural Clay Products Manufacturing | ([6]) |
| KKKKK | Clay Ceramics Manufacturing | ([6]) |
| LLLLL | Asphalt Roofing and Processing | X |
| MMMMM | Flexible Polyurethane Foam Fabrication Operation | X |
| NNNNN | Hydrochloric Acid Production, Fumed Silica Production | X |
| OOOOO | (Reserved) | |
| PPPPP | Engine Test Facilities | X |
| QQQQQ | Friction Products Manufacturing | X |
| RRRRR | Taconite Iron Ore Processing | X |
| SSSSS | Refractory Products Manufacture | X |
| TTTTT | Primary Magnesium Refining | X |
| UUUUU | Coal and Oil-Fired Electric Utility Steam Generating Units | [7] X |
| VVVVV | (Reserved) | |
| WWWWW | Hospital Ethylene Oxide Sterilizers | X |
| XXXXX | (Reserved) | |
| YYYYY | Electric Arc Furnace Steelmaking Area Sources | X |
| ZZZZZ | Iron and Steel Foundries Area Sources | X |
| AAAAAA | (Reserved) | |
| BBBBBB | Gasoline Distribution Bulk Terminals, Bulk Plants, and Pipeline Facilities | X |
| CCCCCC | Gasoline Dispensing Facilities | X |
| DDDDDD | Polyvinyl Chloride and Copolymers Production Area Sources | X |
| EEEEEE | Primary Copper Smelting Area Sources | X |
| FFFFFF | Secondary Copper Smelting Area Sources | X |
| GGGGGG | Primary Nonferrous Metals Area Source: Zinc, Cadmium, and Beryllium | X |
| HHHHHH | Paint Stripping and Miscellaneous Surface Coating Operations at Area Sources | X |
| IIIIII | (Reserved) | |
| JJJJJJ | Industrial, Commercial, and Institutional Boilers Area Sources | X |
| KKKKKK | (Reserved) | |
| LLLLLL | Acrylic and Modacrylic Fibers Production Area Sources | X |
| MMMMMM | Carbon Black Production Area Sources | X |
| NNNNNN | Chemical Manufacturing Area Sources: Chromium Compounds | X |
| OOOOOO | Flexible Polyurethane Foam Production and Fabrication Area Sources | X |
| PPPPPP | Lead Acid Battery Manufacturing Area Sources | X |
| QQQQQQ | Wood Preserving Area Sources | X |
| RRRRRR | Clay Ceramics Manufacturing Area Sources | X |
| SSSSSS | Glass Manufacturing Area Sources | X |
| TTTTTT | Secondary Nonferrous Metals Processing Area Sources | X |
| UUUUUU | (Reserved) | |
| VVVVVV | Chemical Manufacturing Area Sources | X |
| WWWWWW | Plating and Polishing Operations Area Sources | X |

DELEGATION STATUS FOR PART 63 STANDARDS—STATE OF LOUISIANA—Continued
[Excluding Indian Country]

| Subpart | Source category | LDEQ [1] [2] |
|---|---|---|
| XXXXXX | Metal Fabrication and Finishing Area Sources | X |
| YYYYYY | Ferroalloys Production Facilities Area Sources | X |
| ZZZZZZ | Aluminum, Copper, and Other Nonferrous Foundries Area Sources | X |
| AAAAAAA | Asphalt Processing and Asphalt Roofing Manufacturing Area Sources | X |
| BBBBBBB | Chemical Preparation Industry Area Sources | X |
| CCCCCCC | Paints and Allied Products Manufacturing Area Sources | X |
| DDDDDDD | Prepared Feeds Areas Sources | X |
| EEEEEEE | Gold Mine Ore Processing and Production Area Sources | X |
| FFFFFFF–GGGGGGG | (Reserved) | |
| HHHHHHH | Polyvinyl Chloride and Copolymers Production Major Sources | X |

[1] Authorities which may not be delegated include: §63.6(g), Approval of Alternative Non-Opacity Emission Standards; §63.6(h)(9), Approval of Alternative Opacity Standards; §63.7(e)(2)(ii) and (f), Approval of Major Alternatives to Test Methods; §63.8(f), Approval of Major Alternatives to Monitoring; §63.10(f), Approval of Major Alternatives to Recordkeeping and Reporting; and all authorities identified in the subparts (*e.g.,* under "Delegation of Authority") that cannot be delegated.

[2] Program delegated to Louisiana Department of Environmental Quality (LDEQ) for standards promulgated by EPA, as amended in the **Federal Register** through July 1, 2013.

[3] The LDEQ was previously delegated this subpart on March 26, 2004 (69 FR 15687). The LDEQ has adopted the subpart unchanged and applied for delegation of the standard. The subpart was vacated and remanded to EPA by the United States Court of Appeals for the District of Columbia Circuit. See, *Mossville Environmental Action Network* v. *EPA*, 370 F. 3d 1232 (D.C. Cir. 2004). Because of the D.C. Court's holding this subpart is not delegated to LDEQ at this time.

[4] This subpart was issued a partial vacatur on October 29, 2007 (72 FR 61060) by the United States Court of Appeals for the District of Columbia Circuit.

[5] Final rule. See 78 FR 7138 (January 31, 2013).

[6] This subpart was vacated and remanded to EPA by the United States Court of Appeals for the District of Columbia Circuit on March 13, 2007. See, *Sierra Club* v. *EPA*, 479 F. 3d 875 (D.C. Cir. 2007). Because of the D.C. Court's holding this subpart is not delegated to LDEQ at this time.

[7] Initial Final Rule on February 16, 2012 (77 FR 9304). Final on reconsideration of certain new source issues on April 24, 2013 (78 FR 24073). Portions of this subpart are in proposed reconsideration pending final action on June 25, 2013 (78 FR 38001).

\* \* \* \* \*

[FR Doc. 2015–03730 Filed 2–23–15; 8:45 am]
BILLING CODE 6560–50–P

---

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Parts 61 and 63**

[EPA–R06–OAR–2008–0063; FRL–9923–22–Region 6]

**National Emission Standards for Hazardous Air Pollutants; Delegation of Authority to Oklahoma**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Direct final rule; delegation of authority.

**SUMMARY:** The Oklahoma Department of Environmental Quality (ODEQ) has submitted updated regulations for receiving delegation of Environmental Protection Agency (EPA) authority for implementation and enforcement of National Emission Standards for Hazardous Air Pollutants (NESHAPs) for all sources (both part 70 and non-part 70 sources). The delegation of authority under this action does not apply to sources located in Indian Country. EPA is taking direct final action to approve the delegation of certain NESHAPs to ODEQ.

**DATES:** This rule is effective on April 27, 2015 without further notice, unless EPA receives relevant adverse comment by March 26, 2015. If EPA receives such comment, EPA will publish a timely withdrawal in the **Federal Register** informing the public that the updated NESHAPs delegation will not take effect.

**ADDRESSES:** Submit your comments, identified by Docket ID No. EPA–R06–OAR–2008–0063, by one of the following methods:

• *www.regulations.gov.* Follow the on-line instructions.

• Email: Mr. Rick Barrett at *barrett.richard@epa.gov.* Please also send a copy by email to the person listed in the **FOR FURTHER INFORMATION CONTACT** section below.

• Mail or delivery: Mr. Rick Barrett, Air Permits Section (6PD–R), Environmental Protection Agency, 1445 Ross Avenue, Suite 1200, Dallas, Texas 75202–2733.

*Instructions:* Direct your comments to Docket No. EPA–R06–OAR–2008–0063. EPA's policy is that all comments received will be included in the public docket without change and may be made available online at *http://www.regulations.gov,* including any personal information provided, unless the comment includes information claimed to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Do not submit information through *http://www.regulations.gov* or email, if you believe that it is CBI or otherwise protected from disclosure. The *http://www.regulations.gov* Web site is an "anonymous access" system, which means EPA will not know your identity or contact information unless you provide it in the body of your comment. If you send an email comment directly to EPA without going through *http://www.regulations.gov,* your email address will be automatically captured and included as part of the comment that is placed in the public docket and made available on the Internet. If you submit an electronic comment, EPA recommends that you include your name and other contact information in the body of your comment along with any disk or CD–ROM submitted. If EPA cannot read your comment due to technical difficulties and cannot contact you for clarification, EPA may not be able to consider your comment. Electronic files should avoid the use of special characters and any form of encryption and be free of any defects or viruses. For additional information about EPA's public docket, visit the EPA Docket Center homepage at *http://www.epa.gov/epahome/dockets.htm.*

*Docket:* The index to the docket for this action is available electronically at *www.regulations.gov* and in hard copy