No. 24-60351

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

DENKA PERFORMANCE ELASTOMER LLC,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al.,

*Respondents*.

## MOTION OF CONCERNED CITIZENS OF ST. JOHN AND RISE ST. JAMES LOUISIANA FOR LEAVE TO INTERVENE IN SUPPORT OF RESPONDENTS

*/s/ Deena Tumeh*
Deena Tumeh
Kathleen Riley
Earthjustice
1001 G Street, NW
Suite 1000
Washington, DC 20001
(202) 793-6482
(202) 745-5227
dtumeh@earthjustice.org
kriley@earthjustice.org

*Counsel for Concerned Citizens of St. John
and RISE St. James Louisiana*

No. 24-60351

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

DENKA PERFORMANCE ELASTOMER LLC,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al.,

*Respondents*.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1

have an interest in the outcome of this case. These representations are made in

order that the judges of this court may evaluate possible disqualification or recusal.

1. <u>Petitioner</u>: Denka Performance Elastomer LLC.

2. <u>Counsel for Petitioner</u>: David A. Super, Jason B. Hutt, Jeffrey R. Holmstead, Britt Cass Steckman, Kevin M. Voelkel, and Jeffrey L. Oldham with Bracewell LLP; James C. Percy, Robert E. Holden, and Brett S. Venn with Jones Walker LLP.

3. <u>Respondents</u>: United States Environmental Protection Agency; and Michael S. Regan, Administrator, U.S. Environmental Protection Agency.

4. <u>Counsel for Respondents</u>: Merrick Garland, Attorney General; Todd Kim, Assistant Attorney General; Alexander M. Purpuro; and Brandon N. Adkins, all with the United States Department of Justice.

5. <u>Intervenors</u>: State of Louisiana and Louisiana Department of Environmental Quality.

6. <u>Counsel for Intervenors</u>: Jorge Benjamin Aguinaga and Kelsey LeeAnn Smith.

7. <u>Proposed Intervenors</u>: Concerned Citizens of St. John and RISE St. James Louisiana are non-profit organizations consisting of individual members. Concerned Citizens of St. John and RISE St. James Louisiana have no parent companies, and no publicly held company owns a ten percent or greater interest in either organization.

8. <u>Counsel for Proposed Intervenors</u>: Deena Tumeh and Kathleen Riley with Earthjustice.

Respectfully submitted,

*/s/ Deena Tumeh*
Deena Tumeh

**MOTION OF CONCERNED CITIZENS OF ST. JOHN AND RISE ST. JAMES LOUISIANA FOR LEAVE TO INTERVENE IN SUPPORT OF RESPONDENTS**

Pursuant to Federal Rule of Appellate Procedure 15(d) and Fifth Circuit Rule 15.5, Concerned Citizens of St. John ("CCSJ") and RISE St. James Louisiana (collectively, "Movants") hereby move for leave to intervene in support of Respondents U.S. Environmental Protection Agency ("EPA") and Administrator Michael Regan in the above-captioned challenge related to EPA's "New Source Performance Standards for the Synthetic Organic Chemical Manufacturing Industry and National Emission Standards for Hazardous Air Pollutants for the Synthetic Organic Chemical Manufacturing Industry and Group I & II Polymers and Resins Industry," 89 Fed. Reg. 42,932 (May 16, 2024) (the "Rule"). Petitioner Denka Performance Elastomer LLC ("Denka") opposes this motion and intends to file an opposition. Intervenors Louisiana Department of Environmental Quality ("LDEQ") and Louisiana oppose this motion but do not intend to file a response. Respondents reserve their position and right to file a response until seeing the motion.

## INTRODUCTION

Synthetic organic chemical manufacturing facilities and polymers and resins facilities release large amounts of toxic air pollution that harm human and environmental health. One such facility in Louisiana is the neoprene production

1

facility, Denka Performance Elastomer, which emits chloroprene and other harmful pollutants and has created one of the worst cancer risk hotspots in the nation.

EPA's Clean Air Act Rule sets limits on emissions of certain pollutants, like chloroprene, from Denka and other facilities. Once complied with, the Rule will reduce air pollution, improve air quality, and protect the health and welfare of communities near regulated facilities. The Rule requires Denka to comply by the Act's default compliance deadline of ninety days, and EPA retained its exclusive authority to grant or deny requests for extensions of that deadline. Denka, however, requested a deadline extension from the Louisiana Department of Environmental Quality, which purportedly granted the extension and allowed Denka up to two years to comply. In this case, Denka challenges statements by EPA that it claims constitute a final agency determination that LDEQ's extension is invalid. Denka seeks a declaration from this Court that LDEQ's extension is valid and an injunction prohibiting EPA from denying the extension's validity.

Movants seek to intervene in this action to protect their substantial interests—including the health and welfare of their members—that may be impaired by the disposition of this case. Movants' members, who live, work, and recreate near Denka, are exposed to the facility's pollution, which endangers their health and welfare. Any court order delaying Denka's compliance with the Rule would prolong Movants' members' exposure to this pollution and resulting harms

to their health and welfare. Movants also have protectable organizational interests in Denka's timely compliance with the Rule. Movants have worked for years to ensure the Act is lawfully and fully implemented and to reduce Denka's chloroprene emissions.

No other party to this litigation adequately represents Movants' interests, including specifically EPA. Movants sued EPA to compel its issuance of this long-overdue Rule and are currently challenging parts of the Rule that provide inadequate protection. More fundamentally, EPA has failed to reliably represent Movants' interests—including their interests in their members' health and welfare—in its approach to Denka's chloroprene emissions. Although EPA concluded that chloroprene was likely carcinogenic in 2010, it has started and stopped multiple efforts to reduce Denka's chloroprene emissions, ultimately leaving the community with insufficient protection for nearly fifteen years. Additionally, EPA has historically reversed or otherwise weakened its position under pressure of litigation. With these significant disagreements and EPA's demonstrated inconsistency, the agency "might" not adequately represent Movants' interests, "which is all that the rule requires." *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014).

Because Movants' filing is timely and no other party adequately represents its interests, the Court should grant the motion for intervention.

3

# BACKGROUND

### I.  Denka's chloroprene emissions harm public health.

Denka, a neoprene production facility, has emitted chloroprene in St. John the Baptist Parish, Louisiana since 1969. Inhaling chloroprene can cause severe short- and long-term health issues, including damage to the nervous, cardiovascular, gastrointestinal, renal, hematological, and immune systems.[1] In 2010, EPA concluded that chloroprene is "likely to be carcinogenic to humans."[2] Cancer risk from chloroprene is cumulative, and there is no safe level of exposure.[3] In 2018, EPA determined that St. John residents experienced the highest cancer risk from toxic air pollution in the country and that Denka's chloroprene emissions were responsible for 85 percent of that cancer risk.[4]

---

[1] *See* EPA, *Toxicological Review of Chloroprene* 44, 92, 96, 97, EPA-HQ-OAR-2022-0730-0078 (Sept. 2010).

[2] *Id.* at 96.

[3] *See* EPA, *Guidelines for Carcinogen Risk Assessment* 3-26 (Mar. 2005), https://www.epa.gov/sites/default/files/2013-09/documents/cancer_guidelines_final_3-25-05.pdf; NIOSH, *Current Intelligence Bulletin 68: NIOSH Chemical Carcinogen Policy* 20 (July 2017), https://www.cdc.gov/niosh/docs/2017-100/default.html ("[F]or most carcinogens"—i.e., those with a linear dose response, like chloroprene—"there is no known safe level of exposure.").

[4] EPA, *2014 Nat'l Air Toxics Assessment* (Aug. 22, 2018), https://gispub.epa.gov/NATA/.

## II.    The Clean Air Act establishes a comprehensive approach to addressing Denka's hazardous emissions.

The Clean Air Act's purpose is "to protect and enhance" air quality. 42 U.S.C. § 7401(b)(1). To that end, the Act requires EPA to set and periodically update standards regulating emissions of harmful air pollutants, like chloroprene, from certain types of industrial facilities, called source categories. *Id.* § 7412(d). For each source category, EPA must first issue emission standards. *Id.* At least every eight years, EPA must review and, as necessary, revise standards, "taking into account developments in practices, processes, and control technologies." *Id.* § 7412(d)(6).

Within eight years of issuing standards under section 7412(d), EPA must also "review any residual health risks that [have] not been eliminated by the initial technology-based standards." *Nat. Res. Def. Council v. EPA*, 529 F.3d 1077, 1080 (D.C. Cir. 2008). EPA must issue standards if necessary "to provide an ample margin of safety to protect public health." 42 U.S.C. § 7412(f)(2)(A). According to EPA, a rule provides an ample margin of safety "if as many people as possible face[] excess lifetime cancer risks no greater than one-in-one million, and … no person face[s] a risk greater than 100-in-one million (one-in-ten-thousand)." *Nat. Res. Def. Council*, 529 F.3d at 1082. These standards are often "described as 'risk-based' or 'health-based' because [section 7412(f)] requires EPA to set a standard

5

based on a medical assessment of a given pollutant's health risks … rather than the current state of control technology." *Id.* at 1080.

For health risk-based standards, Congress prescribed a default ninety-day compliance deadline for existing sources. 42 U.S.C. § 7412(f)(4)(A); *see Ass'n of Battery Recyclers v. EPA*, 716 F.3d 667, 672 (D.C. Cir. 2013) (concluding that section 7412(f)(4) "provide[s] the governing framework for emissions standards promulgated under section [74]12(f)"). EPA, however, may grant a waiver permitting a facility "up to 2 years after the effective date" to comply—if the agency makes two findings. 42 U.S.C. § 7412(f)(4)(B). First, EPA must "find[] that such additional period is necessary for the installation of controls." *Id*. Second, EPA must find "that steps will be taken during the period of the waiver to assure that the health of persons will be protected from imminent endangerment." *Id.* Facilities applying for a compliance deadline extension must follow specific requirements. *See* 40 C.F.R. § 63.6(i)(4)(ii).

### III.   Movants sued EPA to issue the long-overdue Rule.

EPA failed to meet its statutory deadlines to review and, if necessary, revise emission standards for two source categories that apply to Denka—Group I Polymers and Resins Industry and Synthetic Organic Chemical Manufacturing Industry. 42 U.S.C. § 7412(d)(6), (f)(2). In 2020 and 2021, Movants sued EPA over those failures, among others, and in 2022, entered into consent decrees requiring

EPA to review and, as necessary, revise standards for both source categories.

Compl. (Doc. 1) and Consent Decree (Doc. 26), *Tex. Env't Just. Advoc. Servs. et al. v. EPA*, No. 20-cv-3733 (D.D.C. Dec. 18, 2020); First Am. Compl. (Doc. 18), *Concerned Citizens of St. John et al. v. EPA*, No. 21-cv-3063 (D.D.C. Mar. 30, 2022); Order (Doc. 39), *Env't Integrity Project et al. v. EPA*, No. 20-cv-3119 (D.D.C. Aug. 24, 2022).

## IV.     The Rule gave Denka the statutory default compliance deadline of ninety days.

Pursuant to the Consent Decree, in May 2024, EPA finalized new technology-based and health risk-based standards for polymers and resins source categories, including Neoprene Production. For the health risk-based standards, EPA set the default ninety-day compliance deadline prescribed by Congress. 42 U.S.C. § 7412(f)(4)(A). EPA also retained its sole authority to grant or deny requests for extensions of the compliance date under 40 C.F.R. sections 63.6(i)(4)(ii) and 63.507(c)(6) and "[did] not delegate[e] that authority to states." 89 Fed. Reg. at 42,955 n.33.

## V.     Denka sought to circumvent the compliance deadline.

Before the Rule was even published in the Federal Register, Denka requested an extension of the compliance deadline from LDEQ. Denka then challenged the Rule in the D.C. Circuit. *See* Pet. (Doc. 2054934), *Denka Performance Elastomer LLC v. EPA*, No. 24-1135 (D.C. Cir. May 16, 2024). Other

industry groups and some states subsequently challenged the Rule. Nos. 24-1128, -1246, -1249, -1250, and -1252 (D.C. Cir.). Movants, among others, also challenged the Rule for insufficiently protecting public health, No. 24-1251 (D.C. Cir.), and were granted leave to intervene as respondents in the other petitioners' challenges, Order (Doc. 2059495), *Denka v. EPA*, No. 24-1135 (D.C. Cir. June 12, 2024).

Denka moved the D.C. Circuit for a stay of the Rule pending review. Motion (Doc. 2056561), *id.* (D.C. Cir. May 28, 2024). Movants intervened and opposed Denka's motion to stay. In EPA's opposition to Denka's motion to stay, the agency noted that an attempt by LDEQ to grant Denka an extension would be "ineffectual" based on the text of the Rule. EPA Opp. at 7-8, n.2 (Doc. 2059123). The D.C. Circuit denied Denka's motion. Order (Doc. 2061788). Denka sought rehearing, which the D.C. Circuit denied. Order (Doc. 2065218). The next day, LDEQ granted Denka's illegitimate extension request.

Denka then brought the present challenge. Specifically, Denka challenges statements by EPA, which Denka purports constitute a final agency determination that LDEQ's extension is invalid. Denka filed (Doc. 6-1), and this Court granted (Doc. 57-2), a motion to stay preserving the validity of LDEQ's extension of Denka's compliance deadline.

Since filing this case, Denka requested an extension of the compliance deadline with EPA.

**VI.    Movants have long fought to reduce toxic air pollution in Louisiana, including Denka's chloroprene emissions, but EPA has taken an inconsistent approach.**

For years, Movants have fought to reduce hazardous air pollution from Denka and other facilities in Louisiana, including by suing EPA to issue the long overdue Rule at issue here. During the comment period, Movants advocated for the Rule to include stronger protections. Comments, EPA-HQ-OAR-2022-0730-0175 (July 7, 2023). And, Movants themselves have challenged some insufficiently protective provisions of the Rule. Pet. (Doc. 2064883), *Concerned Citizens of St. John v. EPA*, No. 24-1251 (D.C. Cir. July 15, 2024).

Additionally, in 2022, Movant CCSJ filed a complaint with EPA alleging that LDEQ and the Louisiana Department of Health violated Title VI of the Civil Rights Act by failing to protect St. John's primarily Black residents from disproportionate toxic air pollution, including Denka's chloroprene emissions. EPA investigated the complaints and issued a letter "present[ing] significant evidence suggesting that the Departments' actions or inactions have resulted and continue to result in disparate adverse impacts on Black residents of St. John the Baptist Parish, St. James Parish, and the Industrial Corridor."[5] After months-long

---

[5] EPA, Letter of Concern to LDEQ and La. Dep't of Health (Oct. 12, 2022), https://www.epa.gov/system/files/documents/2022-10/2022%2010%2012%20Final%20Letter%20LDEQ%20LDH%2001R-22-R6%2C%2002R-22-R6%2C%2004R-22-R6.pdf.

negotiations  with the Louisiana agencies, EPA abruptly closed the investigation, leaving the communities with no relief under Title VI.

Movant CCSJ also petitioned EPA to use its Clean Air Act emergency powers to require Denka to reduce its chloroprene emissions. *See* 42 U.S.C. § 7603. In 2023, at EPA's request, the United States brought an enforcement action against Denka under its Clean Air Act emergency powers—powers it has rarely invoked—to address the "imminent and substantial endangerment" Denka's chloroprene emissions imposed on the community. *Id.*; Compl. (Doc. 1), *United States v. Denka Elastomer LLC and Dupont Specialty Products USA LLC*, No. 23-cv-735 (E.D. La. Feb. 28, 2023). The United States seeks injunctive relief requiring Denka to "immediately take all necessary measures to eliminate the imminent and substantial endangerment posed by chloroprene emissions from the Facility." Compl. at 20 (Doc. 1); *see* Mot. for Prelim. Inj. (Doc. 9) (seeking immediate and longer-term pollution controls). The district court advised that it intends to reschedule the bench trial for March or April 2025. Nov. 21, 2024 Min. Order.

## ARGUMENT

Movants respectfully request leave to intervene in this action. As organizations that advocate for clean air, water, and soil in St. John and neighboring parishes, Movants have significant interests in ensuring Denka's timely compliance with the Rule. These interests include shielding Movants'

members from the substantial health, economic, and environmental harms from

Denka's hazardous emissions, including chloroprene. Movants satisfy the standard

for intervention. In the alternative, they should be granted permissive intervention.

## I.     Movants Satisfy The Standard For Intervention.

Under Federal Rule of Appellate Procedure 15(d) and Fifth Circuit Local

Rule 15.5, a motion intervene need only be filed "promptly … but not later than 14

days prior to the due date of the brief of the party supported by the intervenor" and

provide "a concise statement of the interest of the moving party and the grounds

for intervention." Fed. R. App. P. 15(d); 5th Cir. R. 15.5. In determining what

constitutes appropriate grounds for intervention, this Circuit has identified "the

policies underlying intervention in the trial courts pursuant to Fed. R. Civ. P. 24"

as relevant. *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985).

Under Federal Rule of Civil Procedure 24(a)(2), a movant is entitled to

intervention as-of-right whenever (1) its motion is "timely;" (2) the movant claims

an "interest relating to the … subject of the action;" (3) disposition of the action

"may as a practical matter impair or impede the movant's ability to protect its

interest;" and (4) the existing parties may not "adequately represent" the movant's

interest. Fed. R. Civ. P. 24(a)(2). Movants satisfy these standards. Indeed, the D.C.

Circuit has already granted Movants intervention in Denka's and aligned

industries' and states' challenges to the Rule. *See* Order, *Denka Performance Elastomer LLC v. EPA*, No. 24-1135 (D.C. Cir. June 12, 2024).

### A.    Movants timely filed this motion.

This motion is timely. In the Fifth Circuit, motions to intervene are due "not later than 14 days prior to the due date of the brief of the party supported by the intervenor." 5th Cir. R. 15.5. Movants seek to support Respondents, and Respondents' brief is due December 20. Movants thus timely filed this motion. Movants' participation will not delay the proceedings or prejudice any party because Movants will file their brief no later than one week after Respondents' brief, per this Court's rules. 5th Cir. R. 31.2.

### B.    Movants and their members have significant interests in prompt compliance with the Rule.

As reflected in the attached declarations, Movants and their members have "direct, substantial, and legally protectable" interests in the Rule and Denka's prompt compliance with it. *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 552 (5th Cir. 1985). Movants work to protect their members' health and welfare against harm caused by Denka's emissions of chloroprene and other hazardous air pollutants. The Rule, when complied with, will benefit Movants' members' health and welfare because it requires Denka and other facilities to reduce their toxic emissions and install certain pollution controls.

12

Movants' members live, work, worship, and recreate near Denka, among other facilities covered by the Rule, and Denka's emissions of chloroprene and other hazardous air pollutants harm their health and welfare. *See* Decls. Movants' members and their families have health issues, like asthma, that are exacerbated by air pollution. *See id.* Movants' members have lost family and neighbors to cancer, and they have been separated from living family who have had to move away for their health. *See* Robert Taylor Decl. at ¶¶11-13; Letitia Taylor Decl. at ¶5; Sharon Lavigne Decl. at ¶19. To protect their health, they avoid engaging in outdoor activities they enjoy, like taking walks and gardening. *See* Robert Taylor Decl. at ¶18; Letitia Taylor Decl. at ¶14. Their property values have also suffered due to their proximity to Denka. Robert Taylor Decl. at ¶27.

If successful, Denka's challenge would also undermine the years of work Movants have invested in advocating for protective air toxics rules and for prompt compliance with this specific Rule. As described above, Movants have commented on and litigated over air toxics rules for years. *See supra* Background VI pp. 9-10. Additionally, Movant CCSJ has repeatedly petitioned EPA to investigate and remedy the health crisis in St. John the Baptist Parish resulting from Denka's chloroprene emissions. *See id.*

These interests satisfy Federal Rule of Civil Procedure 24(a)(2)'s requirement that a movant claims an "interest relating to the … subject of the

action." *See Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (holding that "breathing and smelling polluted air" suffices to demonstrate injury-in-fact); *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 317-18 (D.C. Cir. 2015) (finding a protectable interest supporting intervention where a party would benefit from agency action); *Brumfield*, 749 F.3d at 344 ("The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group.").

### C.     Movants' interests may be harmed by a ruling that would delay compliance with the Rule.

Unless Movants are permitted to intervene, this case "*may* as a practical matter impair or impede [their] ability to protect [their] interest[s]." Fed. R. Civ. P. 24(a)(2) (emphasis added). "[A] would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Brumfield*, 749 F.3d at 344 n.2 (citation omitted); *id.* at 345 (The "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions.") Movants satisfy this minimal requirement.

An order delaying compliance with the Rule would harm both types of interests described in the previous section. First, Movants' members' health and welfare would be harmed if Denka succeeds in its efforts to delay compliance with

14

the Rule. If Denka succeeds in its challenge, then the facility's compliance with the

Rule's required pollution reductions and controls may be further delayed—and

without sufficient interim steps to assure that the health of persons will be

protected from imminent endangerment. Second, a successful challenge would

undermine the years of work Movants have invested in advocating for protections

from Denka's and like-facilities' emissions of chloroprene and other hazardous air

pollutants. Thus, the disposition of this case "may as a practical matter impair or

impede" Movants' ability to protect their interests. Fed. R. Civ. P. 24(a)(2).

> **D.    Movants' interests may not be adequately represented by EPA, which has long resisted its obligation to require timely emissions reductions from facilities regulated under the Rule, including Denka.**

Finally, Movants' interests may not be adequately represented by EPA.

Under Rule 24, a "movant need not show that the representation by existing parties

will be, for certain, inadequate." *Brumfield*, 749 F.3d at 345. Rather, "[b]ecause

intervention necessarily occurs before the litigation has been resolved, [a movant]

need only show that 'the representation *may* be inadequate.'" *Wal-Mart Stores Inc.*

*v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (quoting *Texas*

*v. United States*, 805 F. 3d 653, 662 (5th Cir. 2015)). The required showing is

"minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10

(1972); *accord John Doe #1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001).

Under this Circuit's caselaw, courts presume that a party adequately represents a

prospective intervenor's interests when they share the "same ultimate objective," but this presumption may be overcome by showing "adversity of interest, collusion, or nonfeasance." *Texas v. United States*, 805 F.3d at 662; *see La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308 n.6 (5th Cir. 2022) (noting that adversity of interest, collusion, or nonfeasance "is not an exclusive list of ways to rebut the presumption").[6] Even where a would-be intervenor has the same "ultimate objective" as an existing party, the prospective intervenor can establish that representation may be inadequate by demonstrating that its "interests diverge from the putative representative's interests in a manner germane to the case." *Texas v. United States*, 805 F.3d at 662. Movants satisfy this standard.

The presumption of adequate representation does not apply here because it is not clear whether Movants and Respondents share the same ultimate objective in

---

[6] Although this Court has also presumed that representation is adequate when the existing party "is a governmental body or officer charged by law with representing the interests of the intervenor," *Texas v. United States*, 805 F.3d at 661, this presumption is inapplicable here because it "is restricted … to those suits involving matters of sovereign interest" and, "because EPA is a governmental agency and not a sovereign interest, a stronger showing of inadequacy is not required," *Entergy Gulf States La. v. EPA*, 817 F.3d 198, 203 n.2 (5th Cir. 2016).

Moreover, even if this presumption did apply, Movants overcome it for the reasons explained in the main text. A prospective intervenor may overcome this presumption by showing "that its interest is in fact different from that of the governmental entity and that the interest will not be represented by it." *Texas v. United States*, 805 F.3d at 662. In practice, this showing is identical to the showing required to establish adversity of interest. *See id.*

the case. Movants' ultimate objective is to ensure timely compliance with the standards and, if an extension is granted, to ensure that "steps will be taken during the period of the waiver to assure the health of persons will be protected from imminent endangerment." 42 U.S.C. § 7412(f)(4)(B). In contrast, EPA's ultimate objective may be more squarely focused on preserving its exclusive authority over extensions. Thus, it is uncertain whether Movants and Respondents share the same ultimate objective. Accordingly, no presumption of adequate representation applies here.

Even if such a presumption did apply, Movants and Respondents have adverse interests, which rebut the presumption. Because Movants' "interests diverge from the putative representative's interests in a manner germane to the case," Movants' interests are adverse to Respondents'. *Texas v. United States*, 805 F.3d at 662.

First, Movants have a demonstrated interest in timely compliance with the Rule and, if any extension is granted, in sufficient "steps" to protect community health. 42 U.S.C. § 7412(f)(4)(B). In contrast, EPA has argued that it has the authority to grant extensions without making the statutorily obligated finding that "steps will be taken" during the extension "to assure the health of persons will be protected from imminent endangerment." *Id.*; *see* Sterilizer Rule, 89 Fed. Reg 24,090, 24,102 (Apr. 5, 2024); Sterilizer Rule Response to Comments at 341,

EPA-HQ-OAR-2019-0178-1595 (Feb. 2024). As this Court has explained, diverging interests like these mean EPA may "limit[] the range of arguments" it makes, whereas Movants have different goals in this case and are not so limited. *Wal-Mart*, 834 F.3d at 569; *accord La Union*, 29 F.4th at 308 (presumption is rebutted where potential intervenor's and existing party's different interests might cause them to have different views on "how to carry out the ultimate objective").

Second, EPA represents the "broad public interest," while Movants have more narrow interests. *John Doe #1*, 256 F.3d at 381; *see Wal-Mart Stores*, 834 F.3d at 569 & n.9. In representing the broad public interest, EPA necessarily balances the impacts of its regulations on other members of the public, including regulated industries, while also protecting its own institutional interests. *See, e.g.*, *La Union*, 29 F.4th at 309 (government actors' interest in "maintaining … its relationship with … the courts that routinely hear" relevant challenges differs from movant-intervenors') (quoting *Brumfield*, 749 F.3d at 346). By contrast, Movants promote environmental and public health protections and represent the interests of their members in avoiding harm from the air pollution regulated by the Rule, including Denka's emissions. In similar situations, this Court has repeatedly recognized that a government entity's broader interests support the conclusion that it may not adequately represent a private group's interests. *See John Doe #1*, 256 F.3d at 381 ("The USDA is a governmental agency that must represent the broad

public interest, not just the [animal welfare organization]'s concerns."); *Brumfield*, 749 F.3d at 346 ("We cannot say for sure that the state's more extensive interests will in fact result in inadequate representation, but surely they might, which is all the rule requires.").

Third, as described above, Movants had to sue EPA to compel it to issue this long-overdue Rule. *See supra* Background III pp. 6-7. Multiple circuits have found that an agency does not adequately represent a proposed intervenor's interests when that intervenor had previously sued the agency to compel it to take the action under review. *See, e.g.*, *Coal. Of Ariz./N.M. Counties. For Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995).

Fourth, EPA's interests may prove even more adverse to Movants' as this case moves forward. Other circuits caution that "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts." *Utah Ass'n of Counties v. Clinton*, 255, F.3d 1246, 1256 (10th Cir. 2001) (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998)); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009) (noting that "government policy may shift" in analyzing adequacy of representation). Here, Denka has an outstanding waiver request with EPA. Although EPA has not yet acted on the request, the agency may later grant Denka

an extension without finding that sufficient steps will be taken to protect persons'
health. If EPA grants the extension, it would potentially moot the question at issue
in this litigation about the legitimacy of LDEQ's extension.

Indeed, such switches are hardly unprecedented. In *Environmental Defense
v. Duke Energy Corporation*, the United States declined to seek certiorari from an
adverse court of appeals decision, but environmental intervenors petitioned for
certiorari and eventually prevailed on the merits, despite the government switching
sides to align itself with Duke Energy at the certiorari stage. 549 U.S. 561, 582
(2007). In another case, EPA changed positions after briefing but before oral
argument, only to change positions back again later. *Env't Comm. Of the Fla. Elec.
Power Coordinating Grp. v. EPA*, 94 F.4th 77, 87-88 (D.C. Cir. 2024).

In fact, the government's policy as to Denka has repeatedly shifted, further
prolonging Movants' exposure to Denka's toxic emissions. After EPA created an
Action Plan in 2016 to address Denka's chloroprene emissions, it did not execute
any part of that Plan until Movant CCSJ petitioned EPA to do so in 2021.[7] When
Movant CCSJ filed a complaint under Title VI of the Civil Rights Act related to

---

[7] EPA, *Action Plan* (June 2016), https://www.epa.gov/sites/production/files/2016-
06/documents/epa-laplace-action-plan.pdf; Emergency Action Pet. (May 6, 2021),
https://earthjustice.org/wp-
content/uploads/ccsj_petition_for_emergency_action_petition_for_rulemaking_05-
06-2021_1.pdf.

Denka's chloroprene emissions, EPA opened an investigation and publicly stated that the evidence suggested violations of Title VI—but later administratively closed the case without providing any relief to the community. After Movant CCSJ petitioned EPA to use its Clean Air Act emergency powers to reduce Denka's chloroprene emissions, the United States brought an enforcement action against Denka under those powers. Compl. (Doc. 1), *United States v. Denka Elastomer LLC and Dupont Specialty Products USA LLC*, No. 23-cv-735 (E.D. La. Feb. 28, 2023). But then EPA filed, and the district court granted, a motion to continue the trial until the agency issued this Rule. Order (Doc. 169) (E.D. La. Feb. 16, 2024). And, EPA originally proposed to give Denka two years to comply with the Rule before imposing the statutorily mandated ninety-day default compliance deadline.

Given both the disagreements between EPA and Movants on Clean Air Act compliance deadline requirements and EPA's history of switching positions, Movants cannot reasonably rely on EPA to adequately represent their interests throughout this matter. *See Crossroads*, 788 F.3d at 314 ("[D]oubtful friends may provide dubious representation."). Even if the Court "cannot say for sure that [EPA's] more extensive interests will *in fact* result in inadequate representation, … surely they might, which is all that the rule requires." *Brumfield*, 749 F.3d at 345-46.

## II.   Alternatively, The Court Should Grant Permissive Intervention.

In the alternative, the Court should allow Movants to intervene permissively because their arguments "share[]" common questions of law and fact with the main action, and the motion is timely and will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B)(3); *see Texas v. U.S. Dep't of Energy*, 754 F.2d at 553 (considering policies underlying Federal Rule of Civil Procedure 24(b) when considering motions to intervene under Federal Rule of Appellate Procedure 15(d)).

Movants qualify for permissive intervention under this standard. To establish a common claim or defense, it is sufficient that "movants seek to defend" the agency's decision. *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 14, (D.D.C. 2019) ("That they share this defense in common with the Department is sufficient under Rule 24(b)(1)(B).") (citing *Nuesse v. Camp*, 385 F.2d 694, 704-05 (D.C. Cir. 1967)). Here, Movants intend to offer defensive arguments, all of which will necessarily share questions of law and fact with the underlying challenge and be grounded in the statutory provisions under which EPA acted and in the administrative record for the Rule.

Moreover, as detailed above, Movants have a long history of advocacy on similar rules and, because of their focus on their members' health and environmental interests, offer a perspective distinct from EPA's. The Court will

benefit from their participation. *Cf. Humane Soc'y of United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985) (granting permissive intervention because the proposed intervenor "will contribute a perspective which may not otherwise be represented in this matter").

In addition, as discussed above, Movants' filing is timely, and their intervention will not delay the proceedings or prejudice any party's rights.

## CONCLUSION

This Court should grant leave for Movants to intervene in support of EPA in this case.

Dated: December 6, 2024

Respectfully submitted,

*/s/ Deena Tumeh*
Deena Tumeh
Kathleen Riley
Earthjustice
1001 G Street, NW
Suite 1000
Washington, DC 20001
(202) 793-6482
(202) 745-5227
dtumeh@earthjustice.org
kriley@earthjustice.org

*Counsel for Concerned Citizens of St. John and RISE St. James Louisiana*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Counsel hereby certifies, in accordance with Federal Rule of Appellate Procedure 32(g)(1), that the foregoing motion contains 5,052 words, as counted by counsel's word processing system, and thus complies with the 5,200 word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because this document has been prepared in a proportionally spaced typeface using **Microsoft Word for Microsoft 365** using **size 14 Times New Roman** font.

Dated: December 6, 2024                    */s/ Deena Tumeh*
                                           Deena Tumeh

## CERTIFICATIONS UNDER ECF FILING STANDARDS

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: December 6, 2024                    */s/ Deena Tumeh*
                                           Deena Tumeh