**NOT YET SCHEDULED FOR ORAL ARGUMENT**

Case No. 24-60351

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

DENKA PERFORMANCE ELASTOMER, L.L.C.,

*Petitioner,*

STATE OF LOUISIANA AND LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY,

*Intervenors,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND
MICHAEL REGAN, ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

---

ON PETITION FOR REVIEW FROM THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY

---

**BRIEF FOR RESPONDENTS**

---

*Of Counsel:*
MICHAEL THRIFT
HALI KERR
    Office of the General Counsel
    U.S. Environmental Protection
    Agency
    Washington, DC

TODD KIM
  *Assistant Attorney General*

ALEXANDER M. PURPURO
BRANDON N. ADKINS
  *Attorneys, Environmental Defense
  Section*
  Environment and Natural Resources
  Division
  U.S. Department of Justice
  P.O. Box 7611
  Washington, D.C. 20044

Alexander.Purpuro@usdoj.gov
Brandon.Adkins@usdoj.gov

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

| | |
|---|---|
| DENKA PERFORMANCE ELASTOMER, LLC,<br><br>     *Petitioner*,<br><br>STATE OF LOUISIANA and LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,<br><br>     *Intervenors*,<br><br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator of the U.S. Environmental Protection Agency,<br><br>     *Respondents*. | Case No. 24-60351 |

**CERTIFICATE OF INTERESTED PERSONS**

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Respondents, as governmental parties, need not furnish a certificate of interested persons.

Date: December 20, 2024

*/s/  Alexander M. Purpuro*
Alexander M. Purpuro
Brandon N. Adkins
U.S. Department of Justice
Environment & Natural Resources
Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
*Counsel for Respondents*

i

## STATEMENT REGARDING ORAL ARGUMENT

Respondents United States Environmental Protection Agency and its Administrator, Michael S. Regan (collectively, "EPA"), believe the petition for review would benefit from oral argument. Oral argument in this case would be useful to explain the regulatory context for, and the unprecedented nature of, this litigation.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................v

INTRODUCTION ...............................................................................1

STATEMENT OF JURISDICTION.......................................................2

STATEMENT OF THE ISSUES............................................................3

STATEMENT OF THE CASE................................................................3

      A.      Statutory and Regulatory Background ...................................3

             1.      Emissions Standards for Hazardous Air Pollutants ...................3

             2.      The Scope of Louisiana's Authority to Implement Clean Air Act Standards........................................................6

      B.      The 2024 Rule ....................................................................8

      C.      Denka's and Louisiana's Petitions for Review of the 2024 Rule .......12

      D.      Denka's Collateral Attack in this Circuit ............................15

SUMMARY OF THE ARGUMENT .....................................................16

STANDARD OF REVIEW ..................................................................18

ARGUMENT ......................................................................................19

I.      The Court Lacks Jurisdiction Over Denka's Petition Because Denka Fails to Challenge Final Agency Action. .......................................19

      A.      The D.C. Circuit Brief is the Sole "Action" for Which Denka Petitioned for Review.........................................................20

      B.      Denka Fails to Identify Agency Action to Review. ............................23

      C.      No Legal Consequences Flow from the Identified Statements...........27

      D.      Denka Puts Form Over Substance.....................................32

E.      The Clean Air Act Does Not Authorize Direct Appellate Review of Prospective Litigation Positions. ........................................33

II.      Louisiana Lacked Authority to Extend Denka's Deadline............................37

     A.      Louisiana's Delegated Authority Explicitly Excludes Authority to Extend the Compliance Deadline for Section 7412(f) Chloroprene Standards. ........................................................38

     B.      Denka and Louisiana Fail to Identify a Source of Authority for the Louisiana Extension. ....................................................44

         1.      EPA's Delegation of the General Provisions did Not Authorize Louisiana to Extend the Compliance Deadline. ......44

         2.      Louisiana Does Not Possess "Automatic" Regulatory Authority to Implement Section 7412(f) Emission Standards. ................................................49

     C.      That Louisiana Lacks Delegated Authority to Extend the Section 7412(f) Chloroprene Standards Deadlines Does Not Violate the Clean Air Act's Cooperative Federalism Framework...............................................................53

III.      The Court Should Deny the Overbroad Relief Denka Seeks. .......................54

CONCLUSION ...............................................................56

# TABLE OF AUTHORITIES

## Cases

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967) ...................................................................34

*Alaska Dep't of Env't Conservation v. EPA*,
  540 U.S. 461 (2004) ..................................................................18

*Barrick Goldstrike Mines Inc. v. Browner*,
  215 F.3d 45 (D.C. Cir. 2000)......................................................24

*BCCA Appeal Grp. v. EPA*,
  355 F.3d 817 (5th Cir. 2003) ......................................................18

*Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*,
  72 F.4th 284 (D.C. Cir. 2023) .....................................................54

*Bennet v. Spear*,
  520 U.S. 154 (1997) .............................................................. 28, 29

*Ciba-Geigy Corp. v. EPA*,
  801 F.2d 430 (D.C. Cir. 1986)................................................ 24, 35

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) .............................................................. 18, 19

*Clarke v. CFTC*,
  74 F.4th 627 (5th Cir. 2023)................................................... 24, 31

*Elldakli v. Garland*,
  64 F.4th 666 (5th Cir. 2023)........................................................19

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ...................................................................35

*Her Majesty the Queen in Right of Ontario v. EPA*,
  912 F.2d 1525 (D.C. Cir. 1990)...................................................33

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ...................................................................18

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024) .......................................................................19

*Luminant Generation Co. v. EPA*,
    757 F.3d 439 (5th Cir. 2014) .........................................................30

*Monsanto v. EPA*,
    19 F.3d 1201 (7th Cir. 1994) .........................................................36

*Nat'l Ass'n of Home Builders v. Norton*,
    415 F.3d 8 (D.C. Cir. 2005) ...........................................................30

*Nat'l Pork Prod. Council v. EPA*,
    635 F.3d 738 (5th Cir. 2011) ................................................ 29, 30, 32

*Newby v. Enron Corp.*,
    443 F.3d 416 (5th Cir. 2006) .........................................................22

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2005) ................................................................. 22, 23

*NRDC v. EPA*,
    529 F.3d 1077 (D.C. Cir. 2008) .......................................................4

*NRDC v. EPA*,
    643 F.3d 311 (D.C. Cir. 2011) .......................................................20

*Querim v. EEOC*,
    111 F. Supp. 2d 259 (S.D.N.Y. 2000) .............................................26

*Sackett v. EPA*,
    566 U.S. 120 (2012) ............................................................... 24, 34

*Texas v. Becerra*,
    89 F.4th 529 (5th Cir. 2024) .................................................... 29, 34

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) .........................................................18

*Walmart Inc. v. U.S. Dep't of Just.*,
    21 F.4th 300 (5th Cir. 2021) .........................................................26

*Watts v. SEC,*
  482 F.3d 501 (D.C. Cir. 2007)................................................ 25, 26, 27

*Whitman v. Am. Trucking Ass'ns,*
  531 U.S. 457 (2001) ....................................................................23

**Statutes**

5 U.S.C. § 706(2) .............................................................................18

5 U.S.C. § 706(2)(A).........................................................................19

28 U.S.C. § 2201(a) .................................................................... 1, 19

28 U.S.C. § 2401(a) .........................................................................21

42 U.S.C. § 7412(c) ...........................................................................3

42 U.S.C. § 7412(d) ...........................................................................4

42 U.S.C. § 7412(d)(6)........................................................................4

42 U.S.C. § 7412(f)(2) .........................................................................4

42 U.S.C. § 7412(f)(2)(A)-(B).............................................................4

42 U.S.C. § 7412(f)(4) .................................................................. 51, 53

42 U.S.C. § 7412(f)(4)(A)..................................................................4, 5

42 U.S.C. § 7412(f)(4)(B)............................................ 5, 10, 29, 49, 50

42 U.S.C. § 7412(i)(1) ................................................................. 38, 51

42 U.S.C. § 7412(i)(3) ................................................................. 38, 51

42 U.S.C. § 7412(i)(3)(A)....................................................................5

42 U.S.C. § 7412(i)(3)(B) ...................................................... 5, 50, 51

42 U.S.C. § 7412(*l*)(1) ........................................................................6

42 U.S.C. § 7412(*l*)(5) ........................................................................6

42 U.S.C. § 7602(a) ................................................................5

42 U.S.C. § 7605(a) ..............................................................24

42 U.S.C. § 7607(b)(1)................................................... passim

42 U.S.C. § 7607(d)(9)................................................... 18, 54

**Code of Federal Regulations**

40 C.F.R. Part 63, Subpart U, Table 1 ............................. 6, 7, 40, 41, 42

40 C.F.R. § 63.1(a)(4)(i) .............................. 5, 40, 41, 44, 45, 46

40 C.F.R. § 63.1(c)(1) ...................................................... 41, 44

40 C.F.R. § 63.2 ....................................................................50

40 C.F.R. § 63.481(f) ........................................................ 6, 45

40 C.F.R. § 63.481(o) ................................................... 9, 10, 45

40 C.F.R. § 63.481(p)(2).......................................................9

40 C.F.R. § 63.507(c)(6) ....................................................42

40 C.F.R. § 63.6(*i*) ......................................................... 5, 50

40 C.F.R. § 63.6(*i*)(4)(ii)................................................. passim

40 C.F.R. § 63.6(*i*)(8).........................................................47

40 C.F.R. § 63.6(*i*)(9).........................................................47

40 C.F.R. § 63.6(*i*)(12).......................................................52

40 C.F.R. § 63.6(i)(13).......................................................52

40 C.F.R. § 63.90 ...................................................................6

40 C.F.R. § 63.91 .................................................................38

40 C.F.R. § 63.91(a)(1) ..................................................... 6, 39

40 C.F.R. § 63.92 .......................................................... 6, 38, 39

40 C.F.R. § 63.93 ................................................................ 6, 38, 39

40 C.F.R. § 63.99(a)(19)(i) ................................................. 8, 38, 40, 42

40 C.F.R. §§ 63.91–63.93 .................................................... 38, 39

**Federal Register**

54 Fed. Reg. 38044 (Sept. 14, 1989) .........................................4

59 Fed. Reg. 12408 (Mar. 16, 1994)........................................ 5, 40, 46

60 Fed. Reg. 17750 (Apr. 7, 1995) ........................................ 7, 39

60 Fed. Reg. 47296 (Sept. 12, 1995) ...................................... 7, 39

66 Fed. Reg. 16318 (Mar. 23, 2001)..........................................46

67 Fed. Reg. 16582 (Apr. 5, 2002) ..........................................46

69 Fed. Reg. 15687 (Mar. 26, 2004)........................................ 7, 8, 39, 45

80 Fed. Reg. 9613 (Feb. 24, 2015) ........................................ 8, 39, 40

89 Fed. Reg. 42932 (May 16, 2024) ........................................ passim

**Rules**

Fed. R. App. P. 15(a)(2)(C) ..................................................21

5th Cir. R. 15.1(b) ...........................................................20

## INTRODUCTION

When Congress gave this Court original jurisdiction over Clean Air Act suits filed against the U.S. Environmental Protection Agency, it chose not to extend that jurisdiction to Article III's limits. Instead, Congress confined this Court's statutory subject-matter jurisdiction to suits challenging "final action of the Administrator." 42 U.S.C. § 7607(b)(1). Accordingly, the jurisdictional flaw in Denka Performance Elastomers' petition is not that it fails to raise "an actual controversy between EPA and [Denka]," Denka Br. 19, or that declaratory relief would be inappropriate "[i]n a case of actual controversy *within* [the Court's] jurisdiction," 28 U.S.C. § 2201(a) (emphasis added); *see* Denka Br. 30–31. The flaw is that the controversy presented by Denka's petition falls *outside* this Court's statutory subject-matter jurisdiction because the petition does not challenge any final action of EPA.

An agency's "action" is its exercise of administrative power, not the legal positions that may underlie the exercise of that power. Agencies and members of the public disagree on legal questions all the time, but this Court plays a role only when the disagreements manifest as "actions"—specifically, *final* actions that fix rights or duties, or from which legal consequences flow. Denka first petitioned for review of a legal position encapsulated in the text of a footnote. Now, in its brief, Denka points to subsequent "statements" that, Denka says, show EPA made a "final determination" that the Louisiana extension is invalid. Denka Br. 21–22. In

any event, the legal position is just that—not an exercise of administrative power. And even if there were an agency action to review, it would not be final because no legal consequences independently flow from statements of the government's legal position. Rather, that position reiterates what was established in separate and indisputably final agency action that Denka is separately challenging in the D.C. Circuit, where that case undisputedly belongs. With no final action to review here, this Court should dismiss Denka's petition for lack of jurisdiction.

Alternatively, the petition should be denied because EPA's legal position is correct: any waiver of the statutory compliance deadline by a State (as opposed to by EPA) would be ineffectual. Denka requested and (after the D.C. Circuit denied its motion) received such an extension from Louisiana and seeks a declaration that the extension is legally valid. While EPA has delegated to Louisiana certain authorities under the cooperative-federalism principles underlying the Clean Air Act, Louisiana never received delegated authority to waive the compliance date for the standards at issue. Denka's argument that EPA improperly withdrew that authority fails because the authority was never delegated in the first place.

## STATEMENT OF JURISDICTION

This Court lacks statutory subject-matter jurisdiction because the petition for review does not challenge "final action of the [EPA] Administrator," 42 U.S.C.

§ 7607(b)(1), and there is no independent basis for this Court to exercise

original jurisdiction.

## STATEMENT OF THE ISSUES

1.    Whether EPA's legal position, whether stated to a court or *in vacuo*, is

a "final action," 42 U.S.C. § 7607(b)(1), that this Court has Clean Air Act

jurisdiction to review.

2.    Whether Louisiana has been delegated authority to extend Denka's

deadline to comply with EPA's 2024 amendments to 40 C.F.R. Part 63,

Subpart U—National Emission Standards for Hazardous Air Pollutants: Group I

Polymers and Resins.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

#### 1.    Emissions Standards for Hazardous Air Pollutants

The Clean Air Act establishes a comprehensive program for controlling and

improving the Nation's air quality. Congress created a process for regulating

emissions of hazardous air pollutants from stationary sources in 42 U.S.C. § 7412.

The Act requires EPA to identify types of facilities (called source categories) that

emit hazardous air pollutants and then establish emission standards for each

category. *Id.* § 7412(c).

Section 7412 sets forth a two-stage process for regulating these hazardous emissions sources. First, for each category of regulated sources, EPA sets technology-based emission standards. *Id.* § 7412(d). Later, EPA reviews the standards to determine: (1) whether to update them given developments in practices, processes, and control technologies (known as the technology review), *id.* § 7412(d)(6); and (2) whether more measures are needed to address any remaining health risks or adverse environmental effects (known as the residual-risk review), *id.* § 7412(f)(2).

The residual-risk review under section 7412(f) considers, among other things, the maximum lifetime individual cancer risk from exposure to the source category's emissions. That risk is generally presumed to be acceptable if it is no higher than 1 in 10,000 (or 100 in 1 million). *See* 54 Fed. Reg. 38044, 38044–45 (Sept. 14, 1989) (setting forth EPA's approach to risk); 42 U.S.C. § 7412(f)(2)(A)–(B); *NRDC v. EPA*, 529 F.3d 1077, 1080 (D.C. Cir. 2008).

By default, existing sources must comply with section 7412(f) residual-risk standards within 90 days after their effective date. 42 U.S.C. § 7412(f)(4)(A). Congress authorized EPA to grant, via a waiver, an extension of the compliance deadline up to two years after the effective date of section 7412(f) standards upon a finding that: (1) it is necessary for the installation of controls; *and* (2) steps will be taken during the extension period to ensure that people's health will be protected

from imminent endangerment. *Id.* § 7412(f)(4)(B). Section 7412(f) provides that

"the Administrator [of the EPA] may grant a waiver."[1] *Id.*; *see id.* § 7602(a) ("The

term 'Administrator' means the Administrator of the Environmental Protection

Agency."). The statutory text does not state that any other party can grant such

a waiver.

EPA's regulations implementing section 7412 contain "General Provisions,"

under 40 C.F.R. Part 63, Subpart A, which are a procedural framework for

implementing the source-category-specific standards set forth in the subsequent

Subparts to Part 63. *See* 59 Fed. Reg. 12408, 12408 (Mar. 16, 1994). Among other

things, the General Provisions contain regulations that govern the process of

requesting and receiving extensions of section 7412 standards. *See* 40 C.F.R.

§ 63.6(*i*). Each emission standard under EPA's regulations must explicitly state

whether or not a General Provision applies to a particular standard. 40 C.F.R.

§ 63.1(a)(4)(i).

The section 7412 standards that apply to Denka's source category are set

forth in EPA's regulations under 40 C.F.R. Part 63, Subpart U. Those regulations

contain "Table 1," which states which General Provisions do and do not apply. *See*

---

[1]     In contrast, the Clean Air Act provides that for section 7412(d) technology-based standards, either EPA or a state with an EPA-approved operating permit program under Title V of the Act can grant a compliance extension for those standards, as specified in the Act. 42 U.S.C. § 7412(i)(3)(A)–(B).

40 C.F.R. Part 63, Subpart U, Table 1; *id.* § 63.481(f). Until July 15, 2024, Table 1 specified that section 63.6(*i*)(4)(ii), the General Provision that provides that EPA may grant extensions of compliance deadlines for section 7412(f) emissions standards, did not apply to the Subpart U standards—meaning that there was no regulatory basis to grant an extension of any compliance deadline for section 7412(f) standards in that subpart. *See* 40 C.F.R. Part 63, Subpart U, Table 1 (2004).

### 2. The Scope of Louisiana's Authority to Implement Clean Air Act Standards

The Clean Air Act also provides an avenue by which EPA may delegate certain responsibilities for implementing and enforcing section 7412 emission standards. *See* 42 U.S.C. § 7412(*l*)(1), (5). The procedures for that delegation are set forth in 40 C.F.R. Part 63, Subpart E. *See* 40 C.F.R. § 63.90. Relevant here, states may request a "straight delegation" of authority to implement and enforce unchanged section 7412 standards, meaning that a State will implement and enforce such standards unchanged from those that EPA promulgated.[2] 40 C.F.R. § 63.91(a)(1).

---

[2]     Alternatively, states may seek from EPA approval of state requirements that adjust section 7412 standards, 40 C.F.R. § 63.92, or that substitute for section 7412 standards, *id.* § 63.93.

In 1995, EPA approved the Louisiana Title V Operating Permits Program. 60 Fed. Reg. 47296 (Sept. 12, 1995). As part of Louisiana's request for approval of its operating permits program, Louisiana also requested "approval of a program for delegation of unchanged section [7412] standards under the authority of section [7412(*l*)]." 60 Fed. Reg. 17750, 17755 (Apr. 7, 1995). This approval allowed Louisiana to take delegation of authority to implement and enforce section 7412 standards by making a request to EPA after incorporating those standards by reference into its own legal code. *See id.*

In 2004, EPA approved Louisiana's initial requests for delegation of authority for the Clean Air Act section 7412 standards under 40 C.F.R. Part 63, which covered the standards as amended in the Federal Register through July 1, 2002. 69 Fed. Reg. 15687, 15689 (Mar. 26, 2004). This delegation included standards under 40 C.F.R. Part 63, Subpart U (the standards that apply to Denka) as amended through July 1, 2002. *See id.* EPA explained that to receive delegation of new future regulations, Louisiana would need to send a letter to EPA Region 6 identifying which regulations Louisiana had adopted by reference and requesting delegation of authority to implement those regulations. *Id.* at 15691. Upon receipt of such a letter, EPA said it would respond in writing stating that the request was granted or denied and, where a request was granted, would publish a Federal

Register notice to advise the public of the delegation and to amend the Code of
Federal Regulations. *Id.*

The last time that EPA acted on a request for delegation submitted by
Louisiana was in 2015. *See* 80 Fed. Reg. 9613 (Feb. 24, 2015). This "straight
delegation" covered multiple requests for delegation of various amendments to
EPA's emissions standards through July 1, 2013, which included revisions to
Subpart U that EPA promulgated in 2008 and 2011. *Id.* at 9614. Accordingly,
EPA's regulations outlining the scope of delegated authorities to Louisiana
expressly state that "[a]ny amendments made to these rules after July 1, 2013 are
not delegated." 40 C.F.R. § 63.99(a)(19)(i). And as discussed, *supra* at 5, each
version of Subpart U delegated to Louisiana, both in 2004 and most recently in
2015, expressly stated in Table 1 that the General Provision for extending section
7412(f) compliance dates did not apply to Subpart U. Indeed, Subpart U did not
even include any section 7412(f) standards at that time.

### B.     The 2024 Rule

In May 2024, EPA promulgated new and revised emission standards under
Clean Air Act sections 7411 and 7412 entitled, "New Source Performance
Standards for the Synthetic Organic Chemical Manufacturing Industry and
National Emission Standards for Hazardous Air Pollutants for the Synthetic
Organic Chemical Manufacturing Industry and Group I & II Polymers and Resins

Industry." 89 Fed. Reg. 42932 (May 16, 2024) ("the 2024 Rule"). The 2024 Rule took effect on July 15, 2024. *Id.* at 42932. The 2024 Rule amended emission standards that apply to several source categories under sections 7411 and 7412. Relevant here, the 2024 Rule for the first time promulgated section 7412(f) standards in Subpart U for chloroprene emissions from neoprene production sources in the Group I Polymers and Resins source category. Denka makes and uses chloroprene to produce neoprene, an oil-resistant substitute for natural rubber. *See* Pet. & Compl ¶ 12. Denka is the only affected neoprene producer currently operating in the United States. 89 Fed. Reg. at 42955. Its production facility is adjacent to Fifth Ward Elementary School in St. John the Baptist Parish. *See id.* at 42964. Children are especially susceptible to chloroprene's harmful effects because it can damage DNA. *Id.* at 43058.

For existing sources producing neoprene—presently only Denka—EPA finalized the statutory default 90-day period set forth in section 7412(f)(4)(A) for compliance with the chloroprene standards, which ended on October 15, 2024. 40 C.F.R. § 63.481(o), (p)(2). EPA also provided that those sources may request up to a two-year extension under the statute and implementing regulations. 89 Fed. Reg. at 42955. EPA thus outlined precisely what an applicant needs to show—that the extension is "necessary for the installation of controls" and steps will be taken to

protect the public from imminent endangerment—to get an extension. *Id.* (citing 42 U.S.C. § 7412(f)(4)(B); 40 C.F.R. § 63.6(*i*)(4)(ii)).

EPA also amended its regulations to permit such extension requests, effective July 15, 2024, and simultaneously specified that it was not delegating authority to states to grant waivers in response to those requests.[3] *See* 89 Fed. Reg. at 42955 n.33, 43261, 43263.

To effectuate these changes, the 2024 Rule amended the regulatory text in two specific ways. First, the 2024 Rule amended Table 1 to Subpart U— identifying which General Provisions apply to the Subpart U standards—to newly provide and make applicable a regulatory mechanism for EPA to receive and grant extensions for section 7412(f) standards that apply to neoprene producers pursuant to 40 C.F.R. § 63.6(*i*)(4)(ii). *See* 89 Fed. Reg. at 43264. And second, the 2024 Rule specified that, in making these revisions, EPA was "retaining authority to grant or deny requests for extensions of the compliance date under 40 CFR 63.6(i)(4)(ii) at 40 CFR 63.507(c)(6), and is not delegating that authority to states." *Id.* at 42955 n.33. The amendments to the regulatory text governing compliance extensions

---

[3]     As EPA explains later in this brief, the 2024 Rule altered the legal landscape by creating a regulatory avenue for Denka to seek and EPA to act on section 7412(f) compliance extension requests. Prior to the 2024 Rule, Louisiana did not have the authority to extend section 7412(f) compliance extensions for Denka's source category, and the Rule declined to extend such authority to states.

appear in the Federal Register notice for the 2024 Rule, alongside the regulatory text prescribing the substantive standards. *Id.* at 43067–296. As of the date of this filing, Louisiana has neither requested nor received delegation to implement and enforce this new version of Subpart U, which contains the new section 7412(f) standards and now provides that EPA alone may grant extensions with respect to the compliance date for those standards.

Denka complains in its brief that EPA treated it differently because other sources subject to other section 7412(f) standards for different air toxics obtained a two-year waiver in the 2024 Rule itself. Denka Br. 5 & n.4. As explained below, Denka and Louisiana are challenging the 90-day compliance deadline in their petitions for review of the 2024 Rule in the D.C. Circuit. And although not relevant to resolving this case, EPA required this procedural step because of EPA's "finding that chloroprene emissions from the only such source"—meaning Denka—"pose an imminent and substantial endangerment under Clean Air Act section 303, 42 U.S.C. 7603." 89 Fed. Reg. at 42955 (citing *United States v. Denka Performance Elastomer, LLC*, E.D. La. Case No. 23-cv-00735).

Specifically, in February 2023, the United States, at EPA's request, filed a complaint alleging that carcinogenic chloroprene emissions from Denka's neoprene manufacturing operations in Louisiana present an imminent and substantial endangerment to public health and welfare. Compl. ¶ 1 (copy attached

11

as Ex. B to ECF No. 42). The United States seeks injunctive relief that would require Denka to immediately reduce its chloroprene emissions to levels that no longer cause or contribute to unacceptably high cancer risks within neighboring communities, including at the adjacent elementary school. *Id.* The endangerment action predates and does not allege violations of the rule.

EPA thus required only Denka to submit an extension request, because only Denka is a defendant in a suit brought by EPA alleging imminent and substantial endangerment to public health from the emissions that are the subject of the Rule.

### C.    Denka's and Louisiana's Petitions for Review of the 2024 Rule

Denka petitioned the D.C. Circuit to review the 2024 Rule. *Denka Performance Elastomer LLC v. EPA*, No. 24-1135. Denka then filed an emergency motion to stay the 2024 Rule's 90-day compliance deadline for the section 7412(f) chloroprene emission standards. ROA.5 (ECF No. 70).

Therein, Denka stated that on April 19, 2024 (after the Final Rule's text was publicly released but before its publication in the Federal Register), Denka had requested an extension of the compliance deadline from the Louisiana. *Id.* at 26. Denka also asserted that "the Rule purports to revoke [Louisiana's] long-standing authority to extend compliance dates for rules such as this one." *Id.*

On June 11, 2024, in the opposition to the stay motion, the Department of Justice, on EPA's behalf, observed in a footnote:

> Denka states that it has requested a compliance extension from a
> Louisiana state agency and suggests it lacked notice that EPA was not
> delegating authority to states to grant or deny extension requests under
> 40 C.F.R. § 63.6(*i*)(4)(ii). Mot. 8; *see* 89 Fed. Reg. at 42,955 n.33.
> Denka offers no argument why EPA's delegation decision is unlawful.
> Any purported compliance extension granted by a state agency to
> Denka would be ineffectual.

*Id.* at 55–56.

On June 26, a D.C. Circuit motions panel denied Denka's request for a stay.

Doc. #2061788 (D.C. Cir. Case No. 24-1135). The next day, Louisiana purported

to grant Denka's request and extend the 90-day compliance deadline set by statute.

Denka Br. 14–15.[4] Louisiana then petitioned for review of the 2024 Rule,

including the compliance-extension provisions, in the D.C. Circuit. Doc. #2062495

(D.C. Cir. Case No. 24-1228). The D.C. Circuit consolidated Louisiana's petition

and several others with Denka's petition. Doc. #2064929 (D.C. Cir. Case

No. 24-1135).

Denka subsequently sought panel and en banc rehearing of the D.C.

Circuit's stay denial, citing the stay opposition footnote and stating that "while

[Denka] disputes EPA's position on the validity of the [Louisiana] extension

request, that extension has no bearing on the need for a stay from [the D.C.

---

[4]     The parties dispute whether the certified administrative record should be
supplemented or completed to include Louisiana's grant of Denka's request, which
postdated the "action" of which Denka petitioned for review in this case. *See*
Opp'n to Mot. to Suppl. 10–11 (ECF No. 79).

Circuit].” Doc. #2063169, at 3 n.2 (D.C. Cir. Case No. 24-1135). The motions panel denied rehearing, reasoning that, “[i]n neither the motion for a stay nor the petition for reconsideration has petitioner established that it will be irreparably harmed absent a stay given that it could but has not requested from [EPA] an extension of the deadline to comply with the rule under review.” Doc. #2065218 (D.C. Cir. Case No. 24-1135).

Denka and Louisiana both plan to raise issues with the 2024 Rule’s 90-day compliance deadline in the D.C. Circuit litigation. Denka’s non-binding statement of issues provides:

> 1. Whether [EPA’s] imposition of a 90-day compliance deadline on DPE, when the Agency has given all other facilities subject to the Rule (including facilities that, according to EPA’s own analysis, pose a higher risk to public health than DPE’s facility) at least two years to come into compliance, is arbitrary and capricious, an abuse of discretion, or contrary to law?

Doc. #2059921 (D.C. Cir. Case No. 24-1135). And Louisiana’s non-binding statement of issues similarly raises a nearly identical issue (and only this issue):

> 1) Whether [EPA’s] imposition of a 90-day compliance deadline for affected sources producing Neoprene via the Final Rule is arbitrary and capricious, an abuse of discretion, or contrary to law, when the April 2023 Draft Rule proposed a two-year compliance period.

Doc. #2067655 (D.C. Cir. Case No. 24-1228).

A briefing schedule is in place, with opening briefs due on January 17, 2025.

Doc. #2087332 (D.C. Cir. Case No. 24-1135).

14

**D.     Denka's Collateral Attack in this Circuit**

Having failed to obtain preliminary injunctive relief from the D.C. Circuit, Denka commenced an original action against EPA in this Court by filing a "Petition for Review and Complaint for Declaratory and Injunctive Relief." ECF No. 1. Denka invokes this Court's original jurisdiction under the provision of the Clean Air Act that allows for review of "final action of the Administrator," 42 U.S.C. § 7607(b)(1). *See* Pet. & Compl. ¶ 15. That action, Denka says, is EPA's "position" embodied in a footnote in the brief opposing Denka's motion for stay in the D.C. Circuit that Louisiana's waiver (which was granted after the filing of the brief) is ineffectual. *Id.* ¶ 6 (identifying footnote text as the "definitive[] . . . statement of EPA's final position"). Claiming it now has "no adequate remedy at law," *id.* ¶ 60, Denka's pleading seeks from this Court both "a declaratory judgment that the [Louisiana] Extension is valid and enforceable," *id.* ¶ 56, and "injunctive relief preventing EPA from denying the validity of the [Louisiana] Extension," *id.* ¶ 63.

Having failed to secure preliminary relief in the D.C. Circuit, Denka mounted a second attempt to delay compliance with the chloroprene standards in the 2024 Rule in this forum. Specifically, Denka requested a stay "to preserve the status quo, meaning EPA would be precluded from taking action in contravention of the validity of the [Louisiana] Extension pending resolution of this Petition."

Denka Stay Mot. 23, ECF No. 6. The Court granted Denka's motion for stay

pending appeal in an unpublished Order, without explanation. ECF No. 57.

In opposing the stay, EPA moved to dismiss the petition for lack of

jurisdiction. The Court denied that motion in the same unpublished and

unexplained Order, which noted that Judge Graves would have granted the motion

to dismiss.

## SUMMARY OF THE ARGUMENT

Denka identifies no action of EPA under the Clean Air Act to review. The

sole action identified in the petition that could conceivably be subject to review is

footnote text in EPA's opposition to Denka's motion for stay in the D.C. Circuit.

Now in its brief, Denka refers to subsequent statements by counsel (including a

lack of response by EPA to a letter from Denka) as evidencing a legal

determination that EPA made at some undefined time that the Louisiana extension

is invalid. Whether construed as a challenge to the footnote text or a legal position

*in vacuo*, Denka fails to identify agency action to review. And even if the Court

were to accept that either is action of EPA, the action is not final because no legal

consequences independently flow from it. Rather, the alleged action restates what

the 2024 Rule established—that extensions of the statutory deadline for the newly

finalized section 7412(f) chloroprene standards can be granted only by EPA, not

any State. Challenges to the compliance deadlines and other provisions of the 2024

16

Rule can be brought only in the D.C. Circuit. Indeed, Denka and Louisiana have already petitioned for review of the 2024 Rule there. The Court should dismiss this petition for lack of jurisdiction.

If the Court ultimately determines it has jurisdiction, it should deny the petition. Denka's purely legal challenge relies on the premise that Louisiana had the authority to act on its request for an extension of the compliance deadline for the newly promulgated section 7412(f) chloroprene standards. But Louisiana has never been delegated authority to extend the deadline for those standards. The prior delegation of standards expressly excluded such authority. And the 2024 Rule did not confer such authority. Denka's and Louisiana's interpretive arguments are not consistent with the plain regulatory text, and neither EPA's 2004 delegation action, nor its 1995 final action approving Louisiana's Title V operating permit program— the only sources of authority that Denka and Louisiana identify in support of their arguments—gave Louisiana the authority to extend the section 7412(f) standards established by the 2024 Rule.

Finally, Denka's requests for relief are incommensurate with the suit it filed. Denka invoked this Court's jurisdiction to review certain "final action[s] of the [EPA] Administrator," 42 U.S.C. § 7607(b)(1), not actions of Louisiana. Questions regarding the underlying merits of Louisiana's action are not properly before this

17

Court, and the Court should not issue declaratory relief respecting non-EPA

actions that are not under review here.

## STANDARD OF REVIEW

A petitioner bears the burden of demonstrating that jurisdiction exists. *See*

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The Clean Air Act

only authorizes the review of a "final action" taken by EPA. *See* 42 U.S.C.

§ 7607(b)(1). This "finality" requirement is jurisdictional. *Texas v. EPA*, 829 F.3d

405, 418 (5th Cir. 2016).

If the Court determines it has jurisdiction, the Administrative Procedure Act

("APA") standard of review applies here because Denka challenges a purported

EPA final action pursuant to 42 U.S.C. § 7607(b)(1).[5] *BCCA Appeal Grp. v. EPA*,

355 F.3d 817, 824 (5th Cir. 2003) (citing 5 U.S.C. § 706), *as amended on denial of*

*reh'g and reh'g en banc* (Jan. 8, 2004). This standard of review is "narrow."

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated*

*on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). A final agency

---

[5]　　The standard of review set forth at 42 U.S.C. § 7607(d)(9) applies only to
review of specified actions, none of which Denka contends is at issue here. *See*
*Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 496 & n.18 (2004)
(noting that the Act's standard of review applies to only certain actions, and
otherwise the default APA standard of review applies). Regardless, the standards
of review under the Act and the APA track each other in the respects relevant here.
*Compare* 42 U.S.C. § 7607(d)(9) *with* 5 U.S.C. § 706(2).

action must be upheld so long as it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (quoting 5 U.S.C. § 706(2)(A)). When reviewing agency action under the APA, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). To resolve the meaning of disputed statutory language, a court shall adopt the interpretation that the court, "after applying all relevant interpretive tools, concludes is best." *Id.* at 2266.

## ARGUMENT

### I.    The Court Lacks Jurisdiction Over Denka's Petition Because Denka Fails to Challenge Final Agency Action.

Denka invokes this Court's jurisdiction under 42 U.S.C. § 7607(b)(1) because, in Denka's view, "this action challenges a final action of the EPA Administrator under the [Clean Air Act]." Denka Br. 21. Denka also asserts this Court should grant relief pursuant to the Declaratory Judgment Act. The Declaratory Judgment Act "is not an independent basis for subject matter jurisdiction." *Elldakli v. Garland*, 64 F.4th 666, 670 (5th Cir. 2023); 28 U.S.C. § 2201(a) ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."). Thus, if the Court has jurisdiction to review EPA's position regarding the Louisiana extension of Clean Air Act standards at all,

it must be pursuant to section 7607. That provision is the exclusive avenue for challenging Clean Air Act final actions. *NRDC v. EPA*, 643 F.3d 311, 317 (D.C. Cir. 2011).

The only possible action to review identified in the petition is a footnote containing the government's legal position in a brief filed in a different case. In its merits brief, Denka contends that subsequent "statements" reflect "public" manifestations of EPA's "determination" that the Louisiana extension is invalid. Denka Br. 21-22. Neither the footnote, subsequent "statements," or even the government's legal position *in vacuo* is agency action. And even if any is, it is not final. The Court should dismiss the petition.

## A.    The D.C. Circuit Brief is the Sole "Action" for Which Denka Petitioned for Review.

The petition for review challenges only a footnote in a legal brief filed in the D.C. Circuit on behalf of EPA by the Department of Justice. By rule of this Court, a petition for review of agency action must "[a]ttach a copy of the order or orders to be reviewed" to avoid any confusion as to the action challenged. 5th Cir. R. 15.1(b). Of the fourteen exhibits attached to Denka's petition, nine are documents created by the federal government: eight documents authored by EPA, and one D.C. Circuit brief filed by the Department of Justice. Pet. & Compl. vii–viii (exhibit list). Of those nine documents, just three—the D.C. Circuit brief, a rule proposed by EPA in April 2023, and the rule EPA subsequently published in May

2024—had issued within any potentially applicable limitations period and thus conceivably could have been the subject of a Clean Air Act petition. *See* 28 U.S.C. § 2401(a) (six-year limitations period); 42 U.S.C. § 7607(b)(1) (60-day limitations period). The proposed rule is definitionally not final agency action. And, in the body of its petition, Denka repeatedly and unambiguously ruled out one of the other two documents: EPA's May 2024 rule is "before the D.C. Circuit and not challenged in this action." Pet. & Compl. ¶ 9; *accord id.* ¶¶ 45, 54.

That leaves only one possible subject of judicial review in this Court: the legal brief that the Justice Department filed on EPA's behalf in the D.C. Circuit on June 11, 2024. Indeed, the petition identifies that brief as declaring for the first time "EPA's final position" on the legal question that Denka wants reviewed, *id.* ¶ 6, and Denka quotes that brief as encapsulating "a real, concrete, and substantial dispute between the parties," *id.* ¶ 42. Thus, while Denka failed in its obligation to "specify the order or part thereof to be reviewed" in the body of its petition, Fed. R. App. P. 15(a)(2)(C), it is evident from context that the petition treats the D.C. Circuit brief as the challenged "final action." Denka's petition admits of no other plausible construction.

Now, having fended off EPA's motion to dismiss (through a summary order by a divided motions panel), Denka turns the tables.[6] What the petition described as the "definitive[] . . . statement of EPA's final position," Pet. & Compl. ¶ 6, Denka's brief recasts as the first of "a series of consistent statements" of position, Denka Br. 23. Those other "statements" are "EPA's refusal to substantively respond" to a demand letter from Denka, a representation by EPA counsel at a status conference in the endangerment action pending in the Eastern District of Louisiana, and "EPA's definitive statements" that the Louisiana extension in not valid in the opposition to Denka's motion for stay in this Court. Denka Br. 22–23.

None of the additional statements is the "final action" of which Denka claims to seek judicial review. Nor could they be. After all, EPA's non-response to Denka's letter is not challengeable as a "failure to act" because no law required EPA to respond. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2005). And counsel's statements at the district court status conference and representations made in briefing in this case cannot be the action challenged in Denka's petition, not least because those statements postdate the petition. Rather, the additional "statements" Denka identifies in its brief are outward manifestations of some

---

[6]    The oral argument panel is not bound by the motions panel's denial of the motion to dismiss. *See Newby v. Enron Corp.*, 443 F.3d 416, 419 (5th Cir. 2006).

22

internal "determination" of law that EPA reached at some undefined point in time. Denka Br. 21.

### B.    Denka Fails to Identify Agency Action to Review.

Whether Denka's challenge is to the footnote text or the government's legal position *in vacuo*, neither is action of EPA. The Clean Air Act's "final action" requirement, like its Administrative Procedure Act analogue, does more than ensure that "EPA has rendered its last word on the matter in question" before judicial review starts; it also anchors judicial review to EPA's "exercise [of] power," rather than the legal determinations that underlie its exercise. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (quotation marks and citation omitted). An agency's view on a legal question—no matter how definitive, or how important—is not a "circumscribed, discrete agency action[]" eligible for judicial review. *Norton*, 542 U.S. at 62. Congress has directed that EPA's views on Clean Air Act issues must be reduced to "final action" before courts can intercede. 42 U.S.C. § 7607(b)(1).

The linchpin of Denka's jurisdictional theory—and the premise the Court must accept to decide this case on the merits—is that the footnote text or the government's legal position *in vacuo* constitutes an "invalidation of the [Louisiana] Extension" and is thus separate, reviewable agency action. Denka

Br. 25 (citing *Clarke v. CFTC*, 74 F.4th 627, 637 (5th Cir. 2023)). Neither is an action (final or otherwise) of "the Administrator" of EPA. 42 U.S.C. § 7607(b)(1).

Although it was filed on EPA's behalf, the opposition brief was nonetheless filed pursuant to the authority of the Attorney General, not the Administrator. *See* 42 U.S.C. § 7605(a). To be sure, a lawyer speaks for his or her client, and courts rely on representations and interpretations advanced by the Department of Justice on behalf of the United States. *See* Denka Br. 24–25. But we are aware of no case where a Department of Justice lawyer's representation to a court in litigation independently constituted agency action of the client agency subject to judicial review. And in the cases on which Denka relies, the representations of counsel pertained to an underlying agency action that was being challenged. *Id.*; *see, e.g.*, *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 47–48 (D.C. Cir. 2000) (crediting counsel's admission that EPA's statements in rulemaking preambles and guidance documents were final); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 437 (D.C. Cir. 1986) (explaining that EPA counsel's representations about whether or not pesticides registrants are entitled to a cancellation hearing before labeling changes are required supported finality of EPA decision to deny hearing); *Sackett v. EPA*, 566 U.S. 120, 126 (2012) (relying on the government's litigation position regarding the legal effectiveness of the underlying order being challenged). The caselaw does not support the proposition that the representations themselves can

24

constitute final agency action, as Denka's position would require the Court to accept.

*Watts v. SEC* is a useful analogue for how the Court can approach this issue. 482 F.3d 501 (D.C. Cir. 2007). There, a former executive subpoenaed U.S. Securities and Exchange Commission ("SEC") employees in a civil action over securities fraud. The SEC decided not to authorize its employees to testify. The executive sought direct review of the SEC's litigation decision in the D.C. Circuit—much like Denka seeks direct review here of the footnote text in EPA's opposition to Denka's stay motion in a different case. In an opinion by then-Circuit Judge Kavanaugh, the court determined that the SEC's decision did not constitute an "order" that would be subject to direct review in the D.C. Circuit. *Id.* at 506. The government's decision was "simply an ordinary litigation decision, not an agency's final disposition of the kind referenced in the APA." *Id.* (cleaned up). The agency's response did not finally dispose of the subpoena or the agency's responsibilities regarding it. *Id.*

Here, the government's legal position, whether encapsulated in the footnote text or *in vacuo*, is a summary of the law that is best characterized as a litigation position, not reviewable final agency action. To be sure, *Watts* did not involve allegations that the SEC's response to the subpoena determined a party's rights or obligations or exposed the party to enforcement action. But the case remains

instructive because neither the footnote text nor any of the subsequent statements by litigation counsel that Denka identifies in its brief has any legal effect on the validity of the Louisiana extension, much like the SEC's position did not finally dispose of the subpoena.

The court in *Watts* was also concerned that permitting direct review of the SEC's litigation decision "would generate a variety of odd analytical and practical consequences," which confirmed the decision is not reviewable agency action. *Id.* Those concerns include that "every agency filing in ongoing district court litigation [could be] simultaneously subject to review in the court of appeals." *Id.*; *see also Querim v. EEOC*, 111 F. Supp. 2d 259, 269-70 (S.D.N.Y. 2000) ("The EEOC wrote its brief in the role of [an] advocate . . . . It cannot be construed as a regulation or as 'final agency action' of any kind."), *aff'd* 9 F. App'x 35 (2d Cir. 2001); *cf. Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307–11 (5th Cir. 2021). ("[T]the negotiating positions taken by DOJ are mere legal theories that would succeed or fail in court based on their own merits. We thus agree with the parties that those positions are not substantive rules."). All manner of statements of litigation position could be subjected to review by all manner of petitioners.

Denka's view gives rise to similar concerns. For example, what administrative process led to the footnote text? (None, because the filing of the opposition brief was neither a rulemaking nor an adjudication.) Did that process

comport with the requirements of the CAA for administrative actions? (It could not possibly have, because it was not conducted under such procedures or signed by a delegated agency official.) What is the administrative record for a statement in a footnote? (There is none, because no public administrative docket was opened for it.) And if Denka prevails and the Court grants the standard remedy of remand, what is EPA supposed to reconsider on remand? (The D.C. Circuit already ruled on the motion for stay that the brief containing EPA's purported action opposed.) The same questions could be asked of the government's legal position *in vacuo*.

Suppose EPA had not included the footnote Denka contends is final agency action but rather took the position that the Louisiana extension is ineffectual for the first time in response to a motion to dismiss by Denka in a subsequent enforcement action in district court. By Denka's logic, it could immediately file a separate and contemporaneous petition for review in the court of appeals challenging EPA's litigation position as final agency action. This absurd result further illustrates why Denka's theory should be rejected. *See Watts*, 482 F.3d at 506.

## C. No Legal Consequences Flow from the Identified Statements.

Even if the footnote text or the government's legal position *in vacuo* constitute an agency "action," the action is not final. To be so, the action must "mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal

27

consequences will flow." *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). No legal consequences independently flow from the statements.

EPA engaged in no administrative process that resulted in the purported "invalidation" of Louisiana's purported waiver. Denka Br. 25. In fact, Louisiana had not even granted the waiver when EPA filed the brief containing the footnote that Denka contends encapsulates the "definitive[] . . . statement of EPA's final position." Pet. & Compl. ¶ 6. Rather, the footnote reflected what was then true under existing regulations and what would remain true upon the effectiveness of the 2024 Rule—that no State has authority to grant a compliance extension for the section 7412(f) chloroprene standards in the 2024 Rule. Denka and Louisiana are already challenging the compliance deadline in the D.C. Circuit.

Indeed, the 2024 Rule is the only possible action establishing legal consequences that Denka can presently take issue with. That action established the section 7412(f) chloroprene standards that Denka seeks to delay compliance with. 89 Fed. Reg. at 42955. The rule marks the consummation of EPA's decisionmaking process. And it sets forth the rights or obligations from which any legal consequences may flow.

Upon finalizing the compliance deadline in the 2024 Rule for existing neoprene producers—of which Denka is the only one—it provided that those sources may request a two-year extension under the statute and implementing

regulations. 89 Fed. Reg. at 42955. EPA thus outlined precisely what an applicant needs to show—that the extension is "necessary for the installation of controls" and steps will be taken to protect the public from imminent endangerment—to get an extension. *Id.* (citing 42 U.S.C. § 7412(f)(4)(B); 40 C.F.R. § 63.6(*i*)(4)(ii)).

EPA also amended its regulations to permit such requests, effective July 15, 2024, and simultaneously specified that it was not delegating authority to states to grant waivers in response to those requests. *See* 89 Fed. Reg. at 42955 n.33, 43261, 43263.

Denka appropriately disclaims any attempt to challenge the 2024 Rule in this case. Indeed, Denka already petitioned for review of the 2024 Rule in the only venue that Congress allowed such a petition to be filed—the D.C. Circuit. *See* 42 U.S.C. § 7607(b)(1).

The footnote text, subsequent statements of litigation counsel that Denka says support the finality of the alleged action, and the government's legal position *in vacuo* "merely reiterate what has already been established" in the 2024 Rule and EPA's existing regulations outlining delegation of authority to Louisiana. *Nat'l Pork Prod. Council v. EPA*, 635 F.3d 738, 756 (5th Cir. 2011); *see Texas v. Becerra*, 89 F.4th 529, 540 (5th Cir. 2024) ("[A]gency action is not final if it merely restates a statutory requirement or merely reiterates what has already been established." (cleaned up)). In other words, the government's reiteration of what is

established in the 2024 Rule and existing regulations does not constitute a "new" final action that Denka can now challenge here.

In *National Pork Producers*, guidance letters reiterating the Clean Water Act's prohibition on the discharge of pollutants from certain sources were not final agency actions because they did not create new legal consequences for those sources.[7] 635 F.3d at 756. Likewise, the footnote's restatement of the 2024 Rule's regulatory provisions in response to an assertion made by Denka does not create new legal consequences for Denka. It is the 2024 Rule's section 7412(f) chloroprene standards and related statutes that create those new legal consequences. Without the footnote, Louisiana would still lack authority to extend Denka's compliance deadline. And the regulatory amendments in the 2024 Rule declining to delegate extension-granting authority to states in this context would have the same force. *See Luminant Generation Co. v. EPA*, 757 F.3d 439, 441-42 (5th Cir. 2014); *see also Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15 (D.C. Cir. 2005) ("[I]f the practical effect of the agency action is not a certain

---

[7]     Whether the 2024 Rule's requirements are "voluntary" or "recommended" has no bearing on whether EPA's reiteration of those requirements is final. The letters in *National Pork Producers* unequivocally stated that the Clean Water Act prohibited certain discharges but were not final because they did not create new legal consequences for the challengers. *Nat'l Pork Prod.*, 635 F.3d at 756.

change in the legal obligations of a party, the action is non-final for the purpose of judicial review.").

Nor is the footnote a "withdrawal" of the waiver Louisiana purported to grant. Denka Br. 25 (quoting *Clarke*, 74 F.4th at 637). Not only did the footnote precede Louisiana's grant of the waiver, the text of the footnote does not purport to withdraw anything. *Clarke* does not help Denka. There, the Commodities Futures Trading Commission rescinded a so-called no-action letter that had allowed an online marketplace to operate without registering under federal law. The no-action letter had withheld some of the CFTC's enforcement discretion, and regulations stated that the beneficiary "may rely" on it. 74 F.4th at 638. Rescinding the letter constituted final agency action. *Id.* at 639. The Court reasoned that doing so altered the legal regime by withdrawing the agency's previously withheld discretion and forced participants in the marketplace either to alter their conduct or expose themselves to potential liability. *Id.* at 638–39.

By contrast, EPA did not withdraw Louisiana's purported extension here, either by the footnote or the formulation of a legal position *in vacuo*. Nor has EPA somehow changed course by withdrawing some previously withheld discretion. The status quo prior to the 2024 Rule was that Louisiana lacked authority to extend compliance deadlines for non-existent section 7412(f) standards for Denka's source category. *See infra* Part II. The 2024 Rule, in establishing section 7412(f)

standards for the first time for Denka's source category, declined to delegate such authority to states. A brief articulating the state of the law with respect to any State's authority to extend the section 7412(f) standards in the 2024 Rule did not alter any party's rights or obligations.

### D.    Denka Puts Form Over Substance.

Denka's argument that EPA is "focused" on the purported final action being a statement in an appellate brief is a straw man. Denka Br. 27. To be sure, if the text of the footnote in the government's response to Denka's D.C. Circuit stay motion was sent to Denka on EPA letterhead, the result would be the same—the letter would not be final agency action. This is because, as stated in the preceding section, the reiteration of final rule and regulatory language in a separate communication does not create new and separably challengeable final agency action. *See Nat'l Pork Prod.*, 635 F.3d at 756.

If anything, it is Denka that puts form over substance. *See* Denka Opp'n 15, ECF No. 48-1 (arguing that there would be "no question" the footnote text would be final action if sent in a letter). But even so, none of the cases Denka cites supports its broad contention that the footnote text would transform into final agency action by pasting it into a letter. Denka Br. 28.

In *Her Majesty the Queen in Right of Ontario v. EPA*, a Canadian province and others petitioned EPA under the APA to commence a rulemaking and

promulgate findings regarding the effects and causes of acid rain under the Clean Air Act. 912 F.2d 1525, 1529–30 (D.C. Cir. 1990). An acting assistant administrator of EPA wrote letters to the petitioners' counsel explaining that there was not sufficient information to rule on the petitions at that time. *Id.* at 1530. The letters were final agency action, even though they did not expressly deny or grant the petitions, because they rejected the petitioners' requests based on EPA's construction of the relevant statute. *Id.* at 1531–32.

That the court found EPA denied the petitions in letters in that case is unremarkable. EPA grants and denies petitions for rulemaking by letter routinely. But what distinguishes *Her Majesty the Queen* is that EPA was acting in response to a petition for rulemaking under the APA. Here, the footnote text in the government's brief responding to Denka's motion for stay is not responding to any such administrative request to take an additional action beyond the 2024 Rule, which Denka was already challenging. Indeed, Denka even characterizes the footnote text as "gratuitous." Denka Br. 23 n.14.

### E. The Clean Air Act Does Not Authorize Direct Appellate Review of Prospective Litigation Positions.

The unusual nature of this case—an original action seeking review of a sentence in an opposition brief the government filed in a different case—is the result of Denka's attempt to take a second bite at avoiding the compliance deadline set in the 2024 Rule after the D.C. Circuit denied Denka's emergency motion to

stay that deadline. Only the D.C. Circuit can review the 2024 Rule. So Denka asks this Court to take a "pragmatic" approach and weigh in on the validity of the Louisiana extension now rather than wait for EPA to "drop the hammer" by taking enforcement action. This argument assumes the D.C. Circuit upholds the 2024 Rule and the compliance deadline at issue, Denka fails to comply with the standards, *and* EPA decides to take enforcement action—none of which has happened yet. Denka Br. 6, 16, 27-28, 30.

To be sure, courts have long "interpreted the 'finality' element in a pragmatic way." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967); *see* Denka Br. 27–28 & n.17 (citing *Texas*, 89 F.4th 529). But such pragmatism does not excuse the requirement to identify some agency action in the first place. *See, e.g., Abbott Lab'ys*, 387 U.S. at 151 (holding that regulation promulgated after notice-and-comment procedure and made effective upon publication is final agency action within the meaning of APA); *Sackett*, 566 U.S. at 125–26 (holding that administrative compliance order EPA issued under Clean Water Act is final agency action); *Becerra*, 89 F.4th at 538–40 (holding that agency guidance document was binding and thus final agency action within the meaning of APA). Here, the footnote and the government's legal position *in vacuo* are far from any kind of formal or informal agency proceeding that could be characterized as agency action. They are not a direct threat of legal action, nor do they commit EPA to a particular

course. In fact, they say nothing about enforcement. Rather, they summarize the government's view of the state of the law, as any other brief or representation to the court by the government does.

Further, Denka contends that the government's legal position is agency action merely because Denka fears the government will enforce the standards in the 2024 Rule. To be sure, Denka is currently the subject of an imminent endangerment action brought on behalf of EPA. But that action is not over compliance with the standards in the 2024 Rule. Nor does that action demonstrate that EPA would treat Denka differently from any other business that is not complying with the standards in the 2024 Rule. Under Denka's theory, any time the government tells a court that certain conduct would, in the government's view, violate the law (even assuming the footnote text or the government's legal position *in vacuo* could be read that broadly), the government's position could be reviewable as final agency action. Such pre-enforcement interference would improperly encroach on the Executive function. *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985). And it would tie up EPA resources that should be focused on implementing the air pollution program Congress tasked to it.

Moreover, Denka currently faces no "dilemma" of complying with the standards in the 2024 Rule or violating them and risking the consequences of an enforcement action. *Ciba-Geigy Corp*, 801 F.2d at 434. Denka is already

challenging the underlying standards in the D.C. Circuit and the deadline to comply with certain standards. Denka was free to request an extension of the section 7412(f) chloroprene standards from EPA upon the effectiveness of the 2024 Rule. In fact, EPA invited Denka to do so in the rule. And if Denka would have been displeased with EPA's final decision in response, it could seek review. *See Monsanto v. EPA*, 19 F.3d 1201 (7th Cir. 1994) (reviewing EPA's denial of compliance-extension request).

But Denka took a different tack. It asked Louisiana to waive the deadline to comply with section 7412(f) chloroprene standards. Not until after commencing this action and after the D.C. Circuit denied its motion for stay did Denka then ask EPA for an extension.[8] ECF No. 49-7. Denka must live with the consequences of its litigation strategy. But the position Denka put itself in is no basis for the Court to excuse Denka from the requirements Congress set out to obtain judicial review under the CAA.

The Court should dismiss the petition for lack of jurisdiction.

---

[8]     EPA responded to Denka's request on August 9, 2024, but advised that it was suspending further processing and would resume processing if this Court's stay order is lifted and Denka does not withdraw or modify its request.

**II.    Louisiana Lacked Authority to Extend Denka's Deadline.**

The merits of Denka's petition raise a purely legal question: whether Louisiana has the authority to extend the October 15, 2024, deadline to comply with the 2024 Rule's section 7412(f) chloroprene standards. It does not and never did. Louisiana lacked the authority to extend any such deadline for decades prior to the 2024 Rule's existence, and it continued to lack such authority after the 2024 Rule was finalized and became effective this year. While Louisiana has been delegated authority to implement and enforce prior versions of the Subpart U emission standards, those versions explicitly excluded the authority to extend deadlines for section 7412(f) chloroprene standards.

That is because the regulatory provision for extending deadlines of section 7412(f) standards—40 C.F.R. § 63.6(*i*)(4)(ii)—did not apply to Subpart U at all when Louisiana was first delegated implementation authority in 2004. That remained so until EPA revised that limitation in the 2024 Rule when it first promulgated section 7412(f) standards for Subpart U. But even then, EPA declined to delegate extension authority to states. Accordingly, Louisiana has not been delegated authority to extend the compliance deadline for the newly promulgated section 7412(f) chloroprene standards. Unless and until that occurs, Louisiana has no legal basis to extend that deadline for Denka, and the Court should therefore deny Denka's petition.

A.   **Louisiana's Delegated Authority Explicitly Excludes Authority to Extend the Compliance Deadline for Section 7412(f) Chloroprene Standards.**

Louisiana's authority to implement Clean Air Act section 7412 emission standards set forth in the individual Subparts of Part 63 is generally limited to those standards for which it requested, and EPA granted, delegation.[9] Louisiana's latest delegation for Subpart U standards—where the 2024 Rule's section 7412(f) chloroprene standards are newly codified—was for standards that existed on July 1, 2013. *See* 40 C.F.R. § 63.99(a)(19)(i). Those delegated Subpart U standards explicitly excluded the General Provision providing for extension of section 7412(f) emission standards, which did not yet exist in Subpart U, and Louisiana therefore lacks authority to extend Denka's compliance deadline.

Louisiana's delegated authority is clearly delineated and subject to the limitations set forth in EPA's regulations. States have several regulatory options for taking delegation of section 7412 standards. *See, e.g.*, 40 C.F.R. §§ 63.91– 63.93. One option is for EPA to approve a State's mechanism for taking delegation for future standards, which the State then uses to receive delegation of specific

---

[9]     States possess certain authorities outlined in Clean Air Act section 7412(i) by virtue of EPA's approval of a state's operating permit program, rather than through separate regulatory delegation. *See* 42 U.S.C. § 7412(i)(1), (3). EPA's approval of Louisiana's operating permit program, however, is not an independent source of authority to extend the deadline for section 7412(f) standards. *See infra* Part II.B.2.

standards going forward. *Id.* § 63.91(a)(1). Louisiana has used this option. In 1995, EPA approved a mechanism by which Louisiana could take delegation—called "straight delegation"—of unchanged standards going forward. 60 Fed. Reg. at 17755.[10] Straight delegation of future standards is not automatic, however. Rather, under Louisiana's selected option, it must incorporate a new standard by reference in state law, request delegation of that standard, and receive written approval from EPA, notice of which EPA publishes in the Federal Register.[11] *See* 80 Fed. Reg. at 9616.

Louisiana initially sought delegation of section 7412 standards through several requests that EPA ultimately approved in 2004. *See* 69 Fed. Reg. at 15687. This approval included straight—unchanged—delegation of the Subpart U standards that then applied to Denka as amended by EPA through July 1, 2002.[12] *See id.* At that time, none of the emission standards in Subpart U were

---

[10]  The details of this mechanism are outlined in a proposed rule, which was made effective through a subsequent final action. *See* 60 Fed. Reg. at 47296.

[11]  The process for requesting and receiving delegated authority is not a ministerial act. EPA must confirm that Louisiana continues to meet the criteria for receiving straight delegation of standards or, in cases where Louisiana intends to adjust or substitute the requirements in the federal standards, it must undergo review pursuant to 40 C.F.R. §§ 63.92 or 63.93.

[12]  EPA promulgated the first version of Subpart U in 1996, which was subsequently amended in various respects in 1997, 1999, 2000, 2001, 2006, 2008, and 2011, before EPA promulgated the latest amendments in the 2024 Rule.

section 7412(f) standards. And the last time that EPA acted on *any* Louisiana request for delegation was in 2015, when EPA delegated authority for standards codified up to July 1, 2013. *See* 80 Fed. Reg. at 9614. That delegation included amendments to Subpart U standards through 2011, which did not contain section 7412(f) standards. In fact, EPA's delegation regulations for Louisiana expressly state that "[a]ny amendments made to these rules after July 1, 2013, *are not delegated*." 40 C.F.R. § 63.99(a)(19)(i). Further, any delegated authority with respect to those standards is "subject to all of the conditions and limitations set forth in Federal law, regulations, policy, guidance, and determinations." *Id.*

Each delegation of section 7412 authority to Louisiana to date is subject to explicit limitations in EPA's regulation governing how the relevant standards and the broader 40 C.F.R. Part 63, Subpart A General Provisions become applicable to regulated sources. The General Provisions are a procedural framework for implementing the source-category-specific standards set forth in the subsequent Subparts to Part 63. *See* 59 Fed. Reg. at 12408. These General Provisions do not *automatically* apply in their entirety to every regulated source. Instead, each subsequent Subpart containing emission standards must "explicitly" state "whether each provision in this subpart A *is or is not included in such relevant standard*." 40 C.F.R. § 63.1(a)(4)(i) (emphasis added). In other words, the specific provisions in

the General Provisions apply to a regulated source only if the relevant standard says so. *See id.* § 63.1(a)(4)(i), (c)(1).

In conformity with this requirement, Subpart U contains a table entitled "Applicability of General Provisions to Subpart U Affected Sources." *See* 40 C.F.R. Part 63, Subpart U, Table 1. When EPA delegated to Louisiana the authority to implement Subpart U, both in 2004 and later when this delegation was updated in 2015, Subpart U's applicability table expressly stated that 40 C.F.R. § 63.6(i)(4)(ii)—the General Provision allowing operators to request and EPA to grant a compliance extension for section 7412(f) standards—did not apply to Subpart U sources.

TABLE 1 TO SUBPART U OF PART 63—APPLICABILITY OF GENERAL PROVISIONS TO SUBPART U AFFECTED SOURCES

| Reference | Applies to sub-part U | Explanation |
|---|---|---|
| § 63.6(i)(1) ................. | Yes. | |
| § 63.6(i)(2) ................. | Yes. | |
| § 63.6(i)(3) ................. | Yes. | |
| § 63.6(i)(4)(i)(A) ......... | Yes. | |
| § 63.6(i)(4)(i)(B) ......... | No. | Dates are specified in § 63.481(e) and § 63.506(e)(3)(i). |
| § 63.6(i)(4)(ii) ............ | No. | |
| § 63.6(i)(5)–(14) ......... | Yes. | |

**Figure 1 –** Excerpt of 40 C.F.R. Part 63, Subpart U, Table 1 (2001) outlining relevant portion in red.[13]

And this makes sense—Subpart U did not contain *any* section 7412(f) standards until the 2024 Rule went into effect, at which point, EPA decided to retain sole authority to extend such deadlines for itself. *See* 40 C.F.R. § 63.507(c)(6); 89 Fed. Reg. at 42955 n.33.

Importantly, when Louisiana takes delegation of section 7412 standards, those "delegations are subject to all of the conditions and limitations set forth in Federal law, regulations, policy, guidance, and determinations." 40 C.F.R. § 63.99(a)(19)(i). As reflected in the graphic below, at each point in time where Louisiana took delegation of Subparts A and U, it took that delegation subject to the limitations imposed by Table 1—i.e., without the regulatory mechanism for

---

[13]    The image excerpt is from the version published in the Code of Federal Register in 2004, reflecting the 2001 amendments to the table. EPA Statutory & Regulatory Addendum ADD19. The version published in the Code of Federal Register in 2013, containing amendments made in 2006 and 2008, likewise reflects that 40 C.F.R. § 63.6(*i*)(4)(ii) did not apply to Subpart U. *Id.* at ADD23.

extending section 7412(f) compliance deadlines. And when EPA amended Table 1 in the 2024 Rule to allow for such extensions, it expressly retained that authority for itself.



**Figure 2** – Demonstrative timeline summary of past delegations to Louisiana.

Therefore, any authority conferred in these prior delegations of Subpart U explicitly excluded the authority to extend compliance deadlines of future section 7412(f) emission standards, and Louisiana lacked the authority to extend Denka's deadline for the section 7412(f) chloroprene standards once EPA added them to Subpart U in 2024.

**B.     Denka and Louisiana Fail to Identify a Source of Authority for the Louisiana Extension.**

Denka's and Louisiana's contend two different EPA actions conferred authority on Louisiana to extend the compliance deadline. Neither argument succeeds.

**1.     EPA's Delegation of the General Provisions did Not Authorize Louisiana to Extend the Compliance Deadline.**

Denka and Louisiana assert that EPA's delegation of the Subpart A General Provisions gave Louisiana the authority to extend Denka's compliance deadline under the 2024 Rule. This is incorrect for several reasons.

EPA's delegation of the General Provisions does not confer plenary authority to apply those provisions to all Part 63 Subparts' emission standards. As explained in the preceding section, the General Provisions require each substantive Subpart setting forth emission standards to expressly state which of the General Provisions apply to those standards. *See* 40 C.F.R. § 63.1(a)(4)(i). And the General Provisions further provide that owners and operators are subject to the General Provisions to the extent that the standards for their source category included those provisions. *See id.* § 63.1(c)(1). At each point in time that EPA delegated Subpart U to Louisiana, those standards expressly excluded the authority to grant compliance extensions of deadlines for section 7412(f) standards under Subpart U,

which did not yet contain such standards, by explicitly stating that 40 C.F.R. § 63.6(*i*)(4)(ii) did *not* apply to that subpart. *See supra* Figure 1.[14]

Denka and Louisiana attempt to downplay Table 1's express limitation. Those arguments are misguided. They first argue that Table 1 merely governs regulated parties and does not operate as a limitation on Louisiana's authority. Denka Br. 42; Louisiana Br. 26–27. This argument is plainly wrong. The General Provisions provide that each subsequent Subpart must "identify explicitly" which of the General Provisions apply. 40 C.F.R. § 63.1(a)(4)(i). Nothing in the regulatory text suggests that where EPA explicitly excludes a General Provision from a Subpart's relevant standard, a State may still apply that provision to an entity subject to that Subpart. As Denka recognizes, Subpart U, Table 1, "specifies the provisions of subpart A that apply and those that do not apply to owners and operators of affected sources subject to this subpart." *Id.* § 63.481(f). The logical,

---

[14]    Denka asserts that EPA "clearly intended to delegate this specific extension authority" because the 2004 delegation publication explained that Louisiana should submit copies of certain actions, including approvals or disapprovals of compliance extensions to EPA. Denka Br. 33 (citing 69 Fed. Reg. at 15691). That passage is inapposite. It states that Louisiana must submit information "[i]n receiving delegation for specific General Provisions authorities." *Id.* All that passage suggests is that, to the extent Louisiana—under an authority it has been delegated—approves or disapproves an extension, it should submit copies to EPA. If it has not been delegated such authority, then that requirement is inapplicable.

natural reading of that description is that if a regulation does not apply to an owner or operator, then the government cannot apply that regulation to them.[15]

Louisiana further argues that Table 1 does not restrict its authority to extend deadlines for section 7412(f) standards because Table 1 listed section 63.6(*i*)(9) as being applicable under Subpart U. Louisiana Br. 27. Louisiana contends that irrespective of the fact that section 63.6(*i*)(4)(ii) did not apply to Subpart U, because section 63.6(*i*)(9) enables it to extend *any* compliance deadline regardless of whether a regulated entity has requested an extension. *Id.* Not so.

Section 63.6(*i*)(9) defines the scope of information that EPA or a State may consider in reviewing an extension request; it does not establish a basis by which Louisiana can grant an extension unilaterally where section 63.6(*i*)(4)(ii) does not

---

[15]    In support of its argument, Denka cites a passage from the 1994 promulgation of the General Provisions discussing concerns over regulated sources figuring out which provisions applied to them. Denka Br. 41. That discussion does not have any bearing here. EPA at the time was addressing a version of the General Provisions which was *presumptively applicable* to all sources, unless a Part 63 standard specifically stated otherwise. *See* 59 Fed. Reg. at 12415. In 2002, EPA amended the General provisions to add the requirement that standards explicitly identify which provisions apply under 40 C.F.R. 63.1(a)(4)(i), thus eliminating the presumptive applicability of the General Provisions. *See* 67 Fed. Reg. 16582, 16585, 16595 (Apr. 5, 2002); 66 Fed. Reg. 16318, 16321 (Mar. 23, 2001) (proposal explaining the now eliminated presumptive applicability of the General Provisions and the concerns that lead to the amendment). It is this newer version of the General Provisions that Louisiana has delegation to implement. Accordingly, Denka is incorrect to suggest that Table 1 exists merely to clear up confusion for operators.

otherwise apply. *See* 40 C.F.R. § 63.6(*i*)(9). EPA's extension regulations specifically provide that "Paragraphs (*i*)(9) through (*i*)(14) of this section concern approval *of an extension of compliance requested under paragraphs (i)(4) through (i)(6) of this section.*" 40 C.F.R. § 63.6(*i*)(8). In other words, paragraph (*i*)(9) is only relevant and effective to the extent that an extension request could be and is properly made under paragraphs (*i*)(4) through (*i*)(6). *See id.* Thus, where Subpart U provides that paragraph (*i*)(4)(ii) for section 7412(f) extensions does not apply, there is no basis to grant such an extension under paragraphs (*i*)(9) through (*i*)(14).

Paragraph (*i*)(9) further specifies that an extension may be granted only "as specified in paragraphs (*i*)(4) and (*i*)(5) of this section." *Id.* § 63.6(*i*)(9). This language in paragraph (*i*)(9) further reinforces that Louisiana could only possess authority to grant extensions of section 7412(f) standards if section (*i*)(4)(ii) applies. *See id.* Louisiana cannot grant an extension "as specified" under paragraph (*i*)(4)(ii) if that paragraph does not apply to the relevant emission standard. Paragraph (*i*)(4)(ii) sets forth regulatory bases for seeking an extension, the substantive criteria that must be satisfied before an extension can be granted, and the regulatory authorization under which the Administrator can grant such an

extension.[16] *See id.* § 63.6(*i*)(4)(ii) ("The Administrator may grant such an extension if he/she finds that such additional period is necessary for the installation of controls and that steps will be taken during the period of the extension to assure the health of persons will be protected from imminent endangerment.").

Finally, Denka's and Louisiana's arguments that EPA has improperly "withdrawn" authority from Louisiana are incorrect. Denka Br. 34–36, 42, 46–47; Louisiana Br. 29–32. Louisiana was delegated only the version of Subpart U that did not include any section 7412(f) standards or authority to extend deadlines for such standards. *See supra* Part II.A. EPA cannot withdraw from Louisiana authority it did not possess in the first place. Denka's assertion that Table 1 does not comply with the requirements outlined in Clean Air Act section 7412(*l*)(6) for withdrawing delegated authority from states fails for the same reason. Denka Br. 42. EPA's amendment of Table 1 in the 2024 Rule cannot withdraw authority Louisiana never had. The 2024 Rule required Denka to request (and demonstrate its entitlement to) an extension of the new section 7412(f) standards. EPA simultaneously amended Table 1 to make the regulations governing the process for Denka's request applicable for the newly created section 7412(f) standards and

---

[16]     For the reasons stated in this and the preceding paragraph, Denka's assertions regarding "requesting and approving" compliance extensions under EPA's regulations are likewise an incorrect reading of those provisions. *See* Denka Br. 47–48.

declined to delegate authority to extend compliance dates for such standards

to states.

Moreover, Denka's and Louisiana's substantive and procedural criticisms of

the 2024 Rule are improperly raised here. The validity of the 2024 Rule is not

before this Court.

### 2. Louisiana Does Not Possess "Automatic" Regulatory Authority to Implement Section 7412(f) Emission Standards.

Denka argues that Louisiana also has "automatic" regulatory authority to

grant extensions for section 7412(f) emission standards because EPA approved its

Title V operating permit program under the Clean Air Act. In advancing its

"automatic authority" theory, Denka provides no analysis of the statutory text or

regulatory text, neither of which support Denka's position. *See* Denka Br. 37–39.

The Clean Air Act provides that the EPA Administrator may grant a waiver of the

90-day compliance deadline established under section 7412(f)(4)(A) but contains

no reference to states. 42 U.S.C. § 7412(f)(4)(B). And EPA's regulatory provision

providing for section 7412(f) standard compliance extensions aligns with that

statutory text and contains no reference to states with approved permitting

programs.[17] *See* 40 C.F.R. § 63.6(*i*)(4)(ii). None of the three sources Denka

identifies supports its contention or overcome the express statutory and

regulatory text.

First, Denka selectively cites the regulatory provisions under 40 C.F.R.

§ 63.6(*i*), but those cited regulatory provisions are inapposite as they simply align

with statutory provisions addressing section 7412(d)—rather than section

7412(f)—extensions. Those regulatory provisions implement the statutory

provisions that provide that either the Administrator or a State with an approved

operating permit program may grant extensions of section 7412(d) standards. *See*

42 U.S.C. § 7412(i)(3)(B). As discussed, neither the statutory provision providing

for extensions of section 7412(f) deadlines, nor EPA's regulations addressing the

same, contain language referring to states with approved operating permit

programs. *See, e.g.*, *id.* § 7412(f)(4)(B); 40 C.F.R. § 63.6(*i*)(4)(ii). Thus, the

selectively cited regulatory text does not support Denka's "automatic"

authority theory.

---

[17]    As Louisiana points out in its brief, Louisiana Br. 25–26, EPA's regulatory
definition of "Administrator" includes "his or her authorized representative (e.g., a
State that has been delegated the authority to implement the provisions of this
part)." 40 C.F.R. § 63.2. As discussed in the preceding part, Louisiana has not been
delegated authority to grant extensions of section 7412(f) chloroprene standards
under Subpart U. Accordingly, this definition does not support Denka's or
Louisiana's arguments. Moreover, EPA's regulatory definition does not broaden
the statutory definition of "Administrator" under section 7602(a).

Second, Denka relies on a July 10, 1998, EPA memorandum from John Seitz. But its argument there is similarly misplaced. The memorandum simply articulates what is expressly set forth in the statute: that the Clean Air Act confers certain authorities to states upon the approval of their Clean Air Act Title V operating permits program. *See* Denka Add.274–75. The only two authorities that the memorandum refers to as being "automatically" conferred upon approval of a permits program—the authority to grant extensions and the authority to make compliance determinations—exactly align with the two section 7412 provisions allowing states with approved permit programs to exercise such authorities. *See id.*; 42 U.S.C. § 7412(i)(1), (3). By reading the memorandum in conjunction with the express statutory provisions to which it cites, it becomes clear that the memorandum is referring to the authority to grant extensions for 7412(d) standards referred to in the statute. *See id.* § 7412(i)(3)(B). No such comparable provision exists for section 7412(f), *see id.* § 7412(f)(4), and a memorandum cannot circumvent the express terms of the Clean Air Act.

Last, Denka cites a "Compliance Extension Summary," but that document provides no support for its position. The document does not purport to analyze or interpret the Clean Air Act or EPA's regulatory provisions, and the authority conferred by those provisions. Instead, the document is simply an outline that paraphrases the regulations in the General Provisions. *See* Denka Add.268–73. In

the section discussing extensions of section 7412(f) emission standards, the document inelegantly paraphrases language discussing extension requests for section 7412(d) standards. *Compare* Denka Add.272–73 *with* 40 C.F.R. § 63.6(*i*)(12). That description is incorrect. The correct corresponding regulatory procedures for processing extension requests for section 7412(f) standards do not contain any language referring to a State with an approved permit program. *See* 40 C.F.R. § 63.6(i)(13). Neither the statute, nor EPA's regulations confer "automatic authority" to grant extensions of deadlines to comply with section 7412(f) standards upon Louisiana, and a lone summary document containing no analysis does not override that express language and should not be accorded any interpretive weight here.

\*\*\*

Louisiana lacks delegated authority to grant extensions of the Subpart U section 7412(f) standards promulgated in the 2024 Rule. Each delegation of authority to Louisiana to implement Subpart U's previous emission standards explicitly excluded authority to extend section 7412(f) standard deadlines. Without such authority, Louisiana lacked a lawful basis to extend Denka's compliance deadline. And EPA's approval of Louisiana's operating permit program provides no statutory or regulatory basis for Louisiana to extend Denka's deadline. For these

reasons, the Court should reject Denka's and Louisiana's arguments regarding the 2004 delegation.

### C.     That Louisiana Lacks Delegated Authority to Extend the Section 7412(f) Chloroprene Standards Deadlines Does Not Violate the Clean Air Act's Cooperative Federalism Framework.

Last, Louisiana contends that EPA has somehow "egregiously violate[d] the CAA's cooperative federalism framework." Louisiana Br. 33. But this assertion does not have any bearing on the limited question before this Court. That question is whether EPA *has* delegated Louisiana authority, not whether the law obligated it to do so. Louisiana never received delegation of authority to extend section 7412(f) standards under Subpart U, and the Court's inquiry should end there. *See supra* Part II.A–B.

Moreover, Louisiana chose "straight" delegation of Subparts A and U as they then existed and subject to the express limitations set forth in those regulations, including that the General Provision providing for section 7412(f) compliance date extensions did not apply to Subpart U. *Id.* Congress did not otherwise confer states the authority to extend the compliance deadline for those standards or even mention that states could extend such deadlines. 42 U.S.C. § 7412(f)(4). Nothing about EPA's decision to retain its statutorily established authority upon promulgation of such standards violates the cooperative federalism principles in the Clean Air Act.

**III.    The Court Should Deny the Overbroad Relief Denka Seeks.**

If the Court determines it has jurisdiction and disagrees with EPA's merits arguments, it should not order the overbroad relief that Denka requests. Denka has sought review of a legal position asserted in an EPA litigation filing that speaks to a State's authority to grant any compliance extension of section 7412(f) chloroprene standards. As Denka concedes in its opening brief, this case presents a "purely legal" question for this Court to resolve. Denka Br. 30–31. And the only arguments that Denka advances pertain to Louisiana's delegated authority to grant any such extension.

The Clean Air Act permits this Court "to 'reverse' any *EPA* 'action' found to be arbitrary." *Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023) (emphasis added and citing 42 U.S.C. § 7607(d)(9)). Rather than seek relief in accordance with the statute, Denka's requests (i) and (iii) in its brief go far further than this, asking this Court to declare that Louisiana's extension as issued—a State action that no party has sought review of in this Court—is valid and, without limitation, to preclude EPA from ever acting "in contravention" of that action. *See* Denka Br. 50. This is patently improper. In bringing this case, Denka invoked the Court's original jurisdiction to review certain "final action[s] of the [EPA] Administrator," 42 U.S.C. § 7607(b)(1), not actions of Louisiana.

Moreover, questions regarding any factual determinations made in conjunction with underlying extension have not been raised in this case. Denka presents no record of those specific findings and offers no substantive defense of Louisiana's extension beyond asserting that Louisiana was authorized to extend the section 7412(f) chloroprene standards.[18] Denka effectively asks the Court to stand in the shoes of the agency and issue an order regarding the validity of a State action on its specific terms, without any record developed pertaining to that question and without any underlying decision by EPA with respect to that question. Such a request is improper. Denka offers no basis for this Court to venture beyond the narrow legal questions presented this action and speak to the underlying merit of Louisiana's extension. Moreover, Denka provides no argument to explain why such broad relief is warranted in this case.

The only proper remedy here, if the Court determines that there is a final action of EPA it can review and if relief is warranted, is to remand the purported "action"—i.e., EPA's legal position—to EPA for further consideration consistent with the Court's opinion.

---

[18]     Indeed, Denka asserts in its opposition to a motion to intervene that "this case will turn on the legal question of whether [Louisiana] had the authority to issue the [Louisiana] extension." ECF No. 106, at 3.

# CONCLUSION

The Court should dismiss Denka's Petition for lack of jurisdiction or,

alternatively, deny its Petition.

Respectfully submitted,

TODD KIM
*Assistant Attorney General*

*Of Counsel:*                                    *s/ Alexander M. Purpuro*
MICHAEL THRIFT                    ALEXANDER M. PURPURO
HALI KERR                                BRANDON N. ADKINS
   Office of the General Counsel         *Attorneys, Environmental Defense*
   U.S. Environmental Protection         *Section*
   Agency                                    Environment and Natural Resources
   Washington, DC                            Division
                                     U.S. Department of Justice
                                     P.O. Box 7611
                                     Washington, D.C. 20044
                                     (202) 514-9771
                                     Alexander.Purpuro@usdoj.gov
                                     Brandon.Adkins@usdoj.gov

DECEMBER 20, 2024

# CERTIFICATE OF COMPLIANCE

I hereby certify that this response complies with the requirements of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 12,736 words according to the count of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this response complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally-spaced font, and is double-spaced, except for headings and footnotes.

Dated: December 20, 2024          */s/ Alexander M. Purpuro*
                                   ALEXANDER M. PURPURO

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Response Brief on all registered counsel through the Court's electronic filing system (CM/ECF).

Dated: December 20, 2024

*/s/ Alexander M. Purpuro*
ALEXANDER M. PURPURO