## ORAL ARGUMENT NOT SCHEDULED

No. 24-60351

# In the United States Court of Appeals
# For the Fifth Circuit

DENKA PERFORMANCE ELASTOMER LLC,
*Petitioner,*

STATE OF LOUISIANA AND LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,
*Intervenors,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL REGAN,
ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*Respondents,*

On Appeal from Environmental Protection Agency
40 CFR Parts 60 and 63

## REPLY BRIEF OF
## PETITIONER DENKA PERFORMANCE ELASTOMER, LLC

James C. Percy
JONES WALKER LLP
445 N. Boulevard, Suite 800
Baton Rouge, LA 70802
Telephone: (225) 248-2130
jpercy@joneswalker.com

Robert E. Holden
Brett S. Venn
JONES WALKER LLP
201 St. Charles Ave
New Orleans, LA 70170
Telephone: (504) 582-8000
bholden@joneswalker.com
bvenn@joneswalker.com

David A. Super
Jason B. Hutt
Jeffrey R. Holmstead
Britt Cass Steckman
Kevin M. Voelkel
BRACEWELL LLP
2001 M Street NW, Ste. 900
Washington, DC 20036
Telephone: (202) 828-5800
david.super@bracewell.com
jason.hutt@bracewell.com
jeff.holmstead@bracewell.com
britt.steckman@bracewell.com
kevin.voelkel@bracewell.com

*(cont'd)*

Jeffrey L. Oldham
BRACEWELL LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone:  (713) 223-2300
jeffrey.oldham@bracewell.com

*Counsel for Petitioner Denka Performance Elastomer LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ................................................................................. 1

ARGUMENT ...................................................................................... 2

    A.    EPA's Invalidity Determination Is Reviewable Final Agency Action. ....................................................................... 2

        1.    EPA's invalidity determination does not exist in a vacuum. ........................................................................ 2

        2.    EPA's invalidity determination meets the test for final action. ................................................................. 4

            a.    EPA's invalidity determination has real legal consequences. ................................................ 4

            b.    EPA's cited case law supports DPE. .............................. 6

        3.    The issue here is different from the Rule challenge in the D.C. Circuit. ................................................ 8

        4.    Communicating through attorneys does not insulate EPA's final action from review. ................................ 8

        5.    EPA's "slippery slope" arguments are unavailing. .................. 10

        6.    Denka seeks declaratory relief, not remand. .......................... 11

    B.    Louisiana Acted Pursuant To Longstanding Authority In Issuing The LDEQ Extension. ................................................... 12

        1.    EPA expressly delegated extension authority to LDEQ in 2004 and never revoked that authority. ................................ 14

            a.    EPA's position disregards the express 2004 delegation and the mandatory procedures imposed by Congress. ................................................ 14

            b.    The Subpart U applicability table does not apply to states and does not divest Louisiana of its delegated extension authority. ........................................ 18

        c.      EPA's position that Louisiana never had extension authority is undercut by its attempt to remove such authority. ..........................................................................25

    2.      Louisiana also was authorized to issue the LDEQ extension through its EPA-approved permit program. .............26

CONCLUSION .....................................................................................29

CERTIFICATE OF SERVICE ...............................................................30

CERTIFICATE OF COMPLIANCE ........................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000)..................................................4, 7

*Barrick Goldstrike Mines v. Browner*,
  215 F.3d 45 (D.C. Cir. 2000)......................................................3, 7

*Ciba-Geigy Corp. v. EPA*,
  801 F.2d 430 (D.C. Cir. 1986)........................................................3

*Clarke v. CFTC*,
  74 F.4th 627 (5th Cir. 2023) ......................................................4, 5

*Her Majesty the Queen in Right of Ontario v. EPA*,
  912 F.2d 1525 (D.C. Cir. 1990).................................................6, 7

*N.H. Lottery Comm'n v. Rosen*,
  986 F.3d 38 (1st Cir. 2021).........................................................11

*National Pork Producers Council v. EPA*,
  635 F.3d 738 (5th Cir. 2011) .........................................................6

*Querim v. EEOC*,
  111 F. Supp. 2d 259 (S.D.N.Y. 2000) ...........................................9

*Sackett v. EPA*,
  566 U.S. 120 (2012)...........................................................4, 5, 11

*San Francisco Herring Ass'n v. Dep't of Interior*,
  946 F.3d 564 (9th Cir. 2019) ......................................................6, 8

*Steffel v. Thompson*,
  415 U.S. 452 (1974).......................................................................8

*Texas v. Becerra*,
  89 F.4th 529 (5th Cir. 2024) ..........................................................6

*Walmart v. DOJ*,
  21 F.4th 300 (5th Cir. 2021) .....................................................9, 10

*Watts v. SEC*,
   482 F.3d 501 (D.C. Cir. 2007).............................................................9

*Whitman v. American Trucking Associations*,
   531 U.S. 457 (2001)....................................................................3, 4

**Statutes**

5 U.S.C. § 703 ....................................................................................11, 12

5 U.S.C. § 704 ....................................................................3, 7, 10, 11, 12

28 U.S.C. § 2201 ......................................................................................11

28 U.S.C. § 2202 ......................................................................................12

42 U.S.C. § 7412 ............................................... 1, 12, 13, 14, 15, 25, 26

42 U.S.C. § 7412(d) ..........................................................................27, 28

42 U.S.C. § 7412(f)............................................ 15, 18, 19, 20, 23, 27, 28

42 U.S.C. § 7412(f)(4)(B) ........................................................................15

42 U.S.C. § 7412(l) ................................ 12, 13, 14, 15, 16, 17, 20, 21

42 U.S.C. §§ 7412(l)(1)-(5) .....................................................................15

42 U.S.C. § 7412(l)(5) ....................................................15, 17, 18, 26

42 U.S.C. § 7412(l)(6) ..............................................................................20

42 U.S.C. § 7607(b)(1)...............................................................................3

**Regulations**

40 C.F.R. Part 63...................................................................................25

40 C.F.R. Part 63, Subpart A ............................................................16, 18

40 C.F.R. Part 63, Subpart E................................................................17, 21

40 C.F.R. Part 63, Subpart U .............................................................17, 18, 19

40 C.F.R. § 63.6(i) ................... 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27

40 C.F.R. § 63.6(i)(1)....................................................................26, 27

40 C.F.R. § 63.6(i)(4)(ii)............................... 14, 15, 16, 17, 23, 24, 25

40 C.F.R. § 63.6(i)(8)...........................................................................23

40 C.F.R. § 63.6(i)(9).............................................................17, 23, 24, 26, 27

40 C.F.R. §§ 63.6(i)(9) through (i)(14)................................................23

40 C.F.R. § 63.6(4)(ii) ........................................................................18

40 C.F.R. § 63.99(a)(19)(i) ............................................................22, 23

40 C.F.R. § 63.481(f) ......................................................................20, 21

40 C.F.R. § 63.507 ...............................................................................25

40 C.F.R. § 63.507(c)......................................................................25, 26

60 Fed. Reg. 47,296 (Sept. 12, 1995) ............................................13, 26

66 Fed. Reg. 16,318 (Mar. 23, 2001)..................................................19

69 Fed. Reg. 15,687 (Mar. 26, 2004)......................................13, 14, 16

80 Fed. Reg. 9,613 (Feb. 24, 2015) ....................................................18

89 Fed. Reg. 42,932 (May 16, 2024) ..............................................19, 25

## <u>INTRODUCTION</u>

As the Court did last July (R. Doc. 57), it should reject EPA's jurisdictional challenge. Based on the applicable case law, EPA's determination that the LDEQ Extension (as defined in DPE's opening brief at 3) is invalid is plainly a final agency action subject to review in this Court. EPA's invalidity determination undisputedly marks the consummation of EPA's decision-making process. And it has clear legal consequences for DPE—due to EPA's action, DPE simply cannot rely upon the LDEQ Extension and would only do so at its peril. EPA's effort to avoid this Court's jurisdiction is baseless and should be rejected.

On the merits, the only issue here is whether Louisiana, as of June 27, 2024, had authority to grant the LDEQ Extension. Louisiana had such authority, first, because EPA expressly delegated it in 2004 and has never revoked it and, second, because EPA approved Louisiana's Clean Air Act ("CAA") operating permit program. EPA challenges both sources of authority based on legal interpretations that EPA has never before raised in more than three decades of overseeing delegations of CAA authority. EPA's brand-new, litigation-driven interpretations are flawed attempts to rewrite authority provided to Louisiana more than two decades ago, and they should be rejected.

# **ARGUMENT**

## A.     **EPA's Invalidity Determination Is Reviewable Final Agency Action.**

EPA's argument that it has not taken "final agency action" regarding the LDEQ Extension relies on the faulty premise that its determination of invalidity— "*in vacuo*"—is not agency action.  EPA Br. 1, 20, 24.  But EPA ignores the factual context underlying its invalidity determination, which the case law requires the Court to consider, and relies on a tortured interpretation of the law that no court has adopted.  EPA's invalidity determination is final, not subject to further EPA review, and has been treated by EPA as binding.  Therefore, it is reviewable here.[1]

### 1.     **EPA's invalidity determination does not exist in a vacuum.**

Contrary to EPA's portrayal of the agency action at issue, DPE does not seek declaratory relief for a legal determination in a vacuum or based solely on an isolated footnote in EPA's brief.  EPA Br. 22.  DPE challenges EPA's determination that the LDEQ Extension is invalid, as publicly communicated to DPE repeatedly.  DPE Br. 21.  The EPA statements on which DPE relies (*id.* 22-23) demonstrate EPA's final action, which occurred in the broader context of EPA's campaign to shut down DPE's Facility.  *Id.* 3-6 & n.2.  Tellingly, EPA never denies that its statements were intended to convey that DPE could not rely on the LDEQ Extension, and in context,

---

[1] Other than jurisdiction, EPA does not dispute the elements for declaratory judgment.  *See* DPE Br. 19-20, 30-31 (establishing actual controversy on which Court should exercise its discretion to grant declaration).

it is clear that EPA intended to send precisely that message. As a regulated entity that is currently in EPA's crosshairs, DPE would ignore that message at its peril. The case law requires consideration of that context. *Id.* 28-29.

EPA argues that its determination "*in vacuo*" is unreviewable. *See, e.g.*, EPA Br. 1. There is no precedent allowing the Court to separate an agency action into pieces—(i) an underlying legal determination that is not reviewable and (ii) a separate "exercise of power" by the agency. *See id.* 1-2, 23. "The term 'agency action' encompasses an agency's interpretation of law…. It is…the *finality* of that interpretative position which is relevant for purposes of determining" whether the action is reviewable. *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986) (emphasis added); *see also Barrick Goldstrike Mines v. Browner*, 215 F.3d 45, 50 (D.C. Cir. 2000) (finding that "judicial review of the agency's interpretation of the statute or regulation" was appropriate).

EPA cites *Whitman v. American Trucking Associations*, 531 U.S. 457, 478 (2001), to assert that the legal determination underlying an agency action is somehow separate (and unreviewable) from the "exercise" of the agency's power based on that determination. EPA Br. 23. But *Whitman* says no such thing. EPA plucks two words ("exercise" and "power") from a longer sentence:

> The bite in the phrase "final action" (which bears the same meaning in § 307(b)(1) that it does under the Administrative Procedure Act (APA), 5 U.S.C. § 704), is not in the word "action," which is meant to cover comprehensively every manner in which an agency may *exercise* its

> *power*. It is rather in the word "final," which requires that the action under review mark the consummation of the agency's decisionmaking process.

531 U.S. at 478 (cleaned up; emphases added).   Further, EPA's interpretation contradicts *Sackett v. EPA*, which found an EPA legal determination to be final once it was "not subject to further Agency review" and threatened liability.  566 U.S. 120, 127 (2012).  The Court *rejected* EPA's argument that its action was not reviewable until it brought an enforcement action.  *Id.* (petitioners need not wait for EPA to "drop the hammer").

### 2.    EPA's invalidity determination meets the test for final action.

Both sides agree that agency action is final if it (1) marks the consummation of the agency's decision, and (2) determines a party's rights or obligations, or has legal consequences flowing from it.  DPE Br. 23; EPA Br. 27-28.  EPA does not dispute that its invalidity determination is not subject to further agency review.  Thus, finality turns on whether EPA's invalidity determination determines DPE's rights or obligations, or has legal consequences flowing from it.

### a.    EPA's invalidity determination has real legal consequences.

EPA's assertion that "[n]o legal consequences flow" from its invalidity determination (EPA Br. 27-28) disregards reality.  Before EPA's declarations of invalidity, DPE could rely on the LDEQ Extension to operate; afterwards, DPE cannot.  This case is like *Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023), where withdrawal of a license to engage in conduct that would otherwise violate the law

was reviewable agency action.  *See* DPE Br. 25-26.  The fact that EPA did not "withdraw" the LDEQ Extension (EPA Br. 31) does not distinguish *Clarke*: Just like *Clarke*, EPA's invalidity determination prevents DPE from relying on the LDEQ Extension.  Thus, EPA's invalidity determination unquestionably determines DPE's rights and obligations.

EPA's assertion that the legal consequences arise from the Rule, not the invalidity determination (EPA Br. 28-30), disregards that the invalidity determination differs from the Rule in a critical aspect—only the former addresses the LDEQ Extension.[2]  Further, applying existing law to a specific party *does* constitute a separate, reviewable final agency action:

> In some sense, an enforcement directive, sanction, or compliance order can always be described as "restating existing law." The EPA compliance order in *Sackett*, for example, could be regarded as a restatement of the Clean Water Act's requirements. What [the government]'s characterization ignores is that by their very form and nature, enforcement orders like the ones at issue here—based on clearly-stated agency pronouncements and repeated refusals to change course—are not free-floating legal guidance but actual commands to actual regulated parties to engage or refrain from engaging in a particular action, subject to penalty.

---

[2] While EPA argues that its D.C. Circuit brief "precede[d] Louisiana's grant of the waiver," *id.* 31, the D.C. Circuit brief specifically responded to DPE's statement that it had applied for the LDEQ Extension.

*San Francisco Herring Ass'n v. Dep't of Interior*, 946 F.3d 564, 581-82 (9th Cir. 2019).[3]

### b. EPA's cited case law supports DPE.

EPA cites *National Pork Producers Council v. EPA*, 635 F.3d 738 (5th Cir. 2011), and *Texas v. Becerra*, 89 F.4th 529 (5th Cir. 2024), to argue that the invalidity determination is unreviewable. EPA Br. 29-30, 32, 34. But those cases support DPE.

In *National Pork*, this Court found that EPA guidance interpreting a rule "neither create[s] new legal consequences nor affect[s] [petitioners'] rights or obligations," and was not new final agency action. 635 F.3d at 756. In *Becerra*, this Court considered a challenge to agency guidance issued after new Supreme Court authority, and found that such authority was a "new ingredient" that "caused a sea change in the law" and therefore, the new agency guidance did not "merely restate" existing requirements. 89 F.4th at 541. Like *Becerra*, and unlike *National Pork*, the LDEQ Extension was a "new ingredient" to which EPA responded with new agency action—the invalidity determination.

Finally, EPA's attempt to distinguish *Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525 (D.C. Cir. 1990), as limited to a "response to a

---

[3] EPA's brief fails to address *San Francisco*, which is on point. *See* DPE Br. 26, 27, 29.

petition for rulemaking under the APA," fails.  *See* EPA Br. 33.[4]  *Her Majesty* describes broad principles of finality (912 F.2d at 1531) and has been applied to multiple types of agency action.  *See, e.g.*, *Barrick Goldstrike Mines*, 215 F.3d at 50 n.6 (applying *Her Majesty* to series of "interpretative statements in a rulemaking preamble, in a guidance document, and in a letter from a branch chief," and considering EPA counsel's representations at oral argument); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020 n.10 (D.C. Cir. 2000) (applying *Her Majesty* to EPA guidance document that "was drafted, and reviewed by, high ranking officials in several EPA offices, including EPA's lawyers").  Thus, *Her Majesty* is highly instructive here, where EPA argues that the views expressed by a person other than the EPA Administrator cannot be deemed final.  912 F.2d at 1532 (finding "there is nothing tentative about" conclusions expressed in letters at issue and "there can be little doubt that in this instance, [the writer] was speaking for the EPA").  As *Her Majesty* concluded: "The agency's failure to issue a more formal interpretation is irrelevant, as [the writer]'s statement represents 'effectively final agency action…that the agency has not frankly acknowledged.'"  *Id.* (quotation omitted). That point applies with equal force to EPA's invalidity determination.

---

[4] EPA's characterization of *Her Majesty* as "unremarkable" (EPA Br. 33) is surprising given that, there, EPA argued there was no reviewable final agency action and the court disagreed.  912 F.2d at 1531 (EPA arguing agency letters had no effect on petitioners' rights and merely represented views of subordinate EPA official).

### 3. The issue here is different from the Rule challenge in the D.C. Circuit.

EPA's determination is locally applicable in Louisiana, and only this Court may consider it.  DPE Br. 1, 21.  EPA suggests DPE could obtain relief from the 90-day compliance deadline in the D.C. Circuit or by requesting an extension from EPA.  EPA Br. 35-36.  But DPE is not required to show it has no other means to remedy its harms besides the declaratory relief it seeks.  *See Steffel v. Thompson*, 415 U.S. 452, 471–72 (1974) (stating that "irreparable injury [is] a traditional prerequisite to injunctive relief, [but has] no equivalent in the law of declaratory judgments").  Moreover, D.C. Circuit briefing will not be completed until mid-May 2025 and the Rule challenge will not be resolved until long after DPE's compliance deadline.  Further, whether DPE could request an extension from EPA has no bearing on the validity of the extension *already issued* by LDEQ, on which DPE is entitled to rely.

### 4. Communicating through attorneys does not insulate EPA's final action from review.

EPA acknowledges that "a lawyer speaks for his or her client" and courts may "rely on representations and interpretations advanced by the Department of Justice on behalf of the United States."  EPA Br. 24.  EPA nonetheless insists that its invalidity determination was not an action by EPA because it was communicated by DOJ "on EPA's behalf."  *Id.*  But this ignores that "agency action…can include actions taken at an agency's direction."  *San Francisco*, 946 F.3d at 576.  The record

shows that those statements were fully authorized by EPA and made on its behalf. DPE Br. 24-25 (citing record support, including counsel's statement that EPA's position was "approved by officials at an appropriate level"); *see also* R. Doc. 99 (EPA Mot. for Extension) (requesting extension due to "required coordination of drafting and review through multiple levels of management at both the EPA and [DOJ]").

EPA's cited cases are inapposite. EPA Br. 25-26. First, *Watts v. SEC* involved an effort to depose agency employees, not an agency determination directly affecting a regulated entity's ability to operate. 482 F.3d 501, 506 (D.C. Cir. 2007) (agency position not "final agency action" because "agency's response to a judicial subpoena...neither finally disposes of the subpoena, nor even disposes of the agency's responsibilities regarding it—because the subpoena issues under the authority of the district court, not the agency"). Next, *Querim v. EEOC* involved challenges to a consent decree between the EEOC and plaintiff's employer. 111 F. Supp. 2d 259, 269 (S.D.N.Y. 2000). The plaintiff argued that the EEOC had breached its authority by supporting the consent decree. The underlying decree, not the EEOC's brief supporting it, caused plaintiff's injury. Unlike EPA's statements here, which adversely impact DPE by adjudging the LDEQ Extension invalid, the EEOC brief created no new legal obligations. *Id.* ("plaintiff has not shown that he has been adversely affected by the EEOC's legal brief"). Finally, *Walmart v. DOJ*

involved a statement made in private settlement negotiations, not a public statement like here.  21 F.4th 300, 309 (5th Cir. 2021) ("[B]ecause the positions Walmart challenges were expressed behind closed doors, they are not general policy statements or interpretive rules, both of which announce agency views to the public.").  None of EPA's cases involved facts remotely like here, where EPA has been on a years-long campaign to shut down the Facility.

**5.    EPA's "slippery slope" arguments are unavailing.**

EPA asserts that, if DPE were to prevail here, "all manner of statements of litigation position could be subject to [judicial] review."  EPA Br. 26.  That threat is an empty one because of the particular facts here that make EPA's invalidity determination reviewable—EPA made a legal determination that the LDEQ Extension is invalid and relayed enforcement threats through counsel, causing real legal consequences to DPE.  The only legitimate concern is against allowing EPA to evade judicial review by slipping agency determinations with real legal consequences into legal briefs and court statements that are insulated from judicial review.

EPA's other "what-if" scenario—the suggestion that a defendant in an enforcement action could "immediately file a separate and contemporaneous petition for review in the court of appeals" (EPA Br. 27)—would be plainly contrary to the APA, which provides for judicial review of agency action "in civil or criminal

proceedings for enforcement" and allows separate proceedings only where "there is no other adequate remedy in a court." 5 U.S.C. §§ 703, 704. Because there is no current enforcement proceeding here to allow for review of EPA's invalidity determination, DPE may obtain pre-enforcement review. *See Sackett*, 566 U.S. at 126-27; DPE Br. 23-30. EPA's assertion that "pre-enforcement interference would improperly encroach on the Executive function" (EPA Br. 35) conflicts with *Sackett*.

### 6. Denka seeks declaratory relief, not remand.

EPA asserts that "the standard remedy of remand" would be unworkable here because no "administrative process led to the footnote text." EPA Br. 27. But EPA's invalidity determination did not arise out of thin air; it could only have been directed by EPA. The fact that EPA may lack, or be withholding, appropriate documentation of its determination does not shield the action from review. Moreover, while it is true that remand with vacatur is the standard remedy in actions under the APA, EPA ignores that DPE's Petition does not seek a remand, but rather a declaration that the LDEQ Extension is valid and enforceable. R. Doc. 1 ¶ 56; *see* Declaratory Judgment Act, 28 U.S.C. § 2201 (permitting courts to "declare the rights and other legal relations of any interested party seeking such declaration…"); *see also N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 62 (1st Cir. 2021) (finding relief under the APA unnecessary "where the remedy provided by the Declaratory Judgment Act is

adequate under the circumstances").[5]  DPE also seeks to enjoin EPA from denying

the validity of, or taking action in contravention of, the LDEQ Extension.  R. Doc.

1 at 27; *see* 28 U.S.C. § 2202 (allowing "further necessary or proper relief based on

a declaratory judgment").  EPA's argument about remand is immaterial; if

declaratory relief is granted, no action by EPA is required.

**B.**     **Louisiana Acted Pursuant To Longstanding Authority In Issuing The LDEQ Extension.**

On the merits, the sole question here is whether Louisiana on June 27, 2024,

had authority to grant DPE an extension to comply with requirements under Section

112 of the CAA.  As EPA acknowledges, a state's ability to implement Section 112

can be authorized through an express delegation under Section 112(l) or by virtue of

EPA's approval of a state's operating permits program.  EPA Br. 38.  Here, on June

27, 2024, Louisiana had—and continues to have—both sources of authority.  In

challenging both sources of authority, EPA now advances legal interpretations that

have never been raised by EPA in 30-plus years of overseeing delegations of CAA

authority.  EPA's new made-for-litigation interpretations are flawed attempts to

rewrite authority provided to Louisiana over two decades ago.

First, Louisiana was authorized to issue the LDEQ Extension because, in

2004, EPA expressly delegated to Louisiana authority to implement the regulations

---

[5] The APA itself also permits "actions for declaratory judgments."  5 U.S.C. § 703.

governing extensions—40 C.F.R. § 63.6(i).  In making that delegation, EPA followed the statutory procedures and published a Federal Register notice memorializing the delegation.  69 Fed. Reg. 15,687 (Mar. 26, 2004) (Add.233-241).  EPA now seeks to avoid that delegation by arguing that, in each set of emission standards under Section 112, EPA must (i) designate the same provisions in Section 63.6(i) as "applicable" in those emission standards, and (ii) specifically delegate those standards.  EPA Br. 37.  But EPA's newfound theory would require the same provision to be delegated twice (which *is not* required by the statute) and render EPA's 2004 delegation entirely superfluous.  EPA's litigation position lacks support in the statute, the regulations, and EPA's guidance.  EPA may now regret that it delegated broadly-applicable extension authority to Louisiana in 2004, but it cannot withdraw its delegation without adhering to the statutory requirements of Section 112(l).

Second, Louisiana was authorized to issue the LDEQ Extension because, in September 1995, EPA authorized Louisiana to implement Louisiana's operating permits program under the CAA.  60 Fed. Reg. 47,296 (Sept. 12, 1995) (Add.263).  EPA seeks to undercut its own guidance—which instructs that states with an approved permit program can grant extensions—by now describing that guidance as "inelegant" and "incorrect."  EPA Br. 51-52.  But tellingly, EPA fails to point to a

single example in any guidance or administrative action over two decades of implementation where it took the position it takes here.

In short, EPA's arguments are inconsistent with the CAA and lack citation to regulatory actions, memoranda, or guidance. EPA's determination that the LDEQ Extension is invalid is arbitrary, capricious, and contrary to law.

> **1.      EPA expressly delegated extension authority to LDEQ in 2004 and never revoked that authority.**

Louisiana had (and still has) authority to grant the LDEQ Extension because EPA expressly delegated such authority in 2004 under Section 112(l), and never withdrew it. DPE Br. 32-37; 69 Fed. Reg. 15,687 (Add.233-241). Despite this clear delegation, EPA asserts that the extension provisions were "never" delegated and that the 2004 delegation was only a first step in delegating authority to Louisiana. EPA Br. 2. That argument contradicts Section 112(l), misstates the legal effect of a regulatory table, and is undercut by EPA's eleventh-hour attempt to withdraw Louisiana's delegation through the Rule.

> **a.      EPA's position disregards the express 2004 delegation and the mandatory procedures imposed by Congress.**

EPA's litigation position rests on the notion that Louisiana was "never" delegated the authority to extend the standards at issue. EPA Br. 53. But the only regulatory provision identified by EPA as applicable here—Section 63.6(i)(4)(ii)—

*was* delegated to Louisiana in accordance with the statutory and regulatory provisions governing delegation.

The LDEQ Extension grants DPE additional time to comply with requirements that EPA contends were promulgated pursuant to Section 112(f) of the CAA. *See* DPE Br. 4-6. In Section 112(f)(4)(B), Congress provided EPA with authority to grant extensions of Section 112(f) standards. 42 U.S.C. § 7412(f)(4)(B) (Add.26-27); DPE Br. 11. EPA implemented its statutory extension authority in the "General Provisions" of its Section 112 regulations, specifically at 40 C.F.R. § 63.6(i). Section 63.6(i) broadly defines the procedures for extensions and, in paragraph (4)(ii), includes language mirroring the statutory language of Section 112(f)(4)(B). *See* 40 C.F.R. § 63.6(i)(4)(ii) (Add.82-87).

Importantly, Congress authorized EPA delegation of authorities and responsibilities to the states in Section 112(l). 42 U.S.C. §§ 7412(l)(1)-(5) (Add.36-37); DPE Br. 32-37. Section 112(l)(1) provides that states may seek EPA approval of "a program for the implementation and enforcement…of emission standards and other requirements for air pollutants" subject to Section 112. *Id.* § 7412(l)(1) (Add.36). Section 112(l)(5) then requires that EPA "either approve or disapprove such program" and sets forth conditions for disapproval. *Id.* § 7412(l)(5) (Add.37). This is the sole statutory framework in Section 112 that prescribes how EPA authorities are delegated to states.

In 2004, pursuant to Section 112(l), EPA delegated to Louisiana the authority to implement 40 C.F.R. Part 63, Subpart A, which includes authority to grant extensions under Section 63.6(i). 69 Fed. Reg. 15,687 (Mar. 26, 2004) (Add.233-241). EPA made that delegation in response to Louisiana's formal request. *Id.* at 15,689 (Add.238). EPA expressly required Louisiana to report semiannually the "approval/disapprovals of compliance extensions (§ 63.6(i))" issued by Louisiana. *Id.* at 15,691 (Add.237). EPA now asserts that its explicit requirement that Louisiana report to EPA on any compliance extensions it grants under Section 63.6(i) is somehow "inapposite" to whether EPA "delegated such authority" to Louisiana in the first place. EPA Br. 45, n.14. But that position is nonsensical: Section 63.6(i) *only addresses extension authority*, and the Federal Register notice *only applies to Louisiana*. EPA's requirement that Louisiana report on any compliance extensions it grants can only mean that Louisiana was delegated authority to grant compliance extensions. 69 Fed. Reg. at 15,691 (Add.237). EPA's position defies the plain language of the 2004 delegation and common sense.

EPA's litigation mantra that Louisiana *never* received delegated extension authority fails to grapple with the fact that all the provisions in Section 63.6(i), including paragraph (4)(ii), were delegated to Louisiana twenty-plus years ago. While EPA argues that Louisiana lacked authority to grant extensions because Section 63.6(i)(4)(ii) was designated as not "applicable" in prior versions of the

standards at issue (40 C.F.R. Part 63, Subpart U), EPA's interpretation of the applicability designations is baseless as explained immediately below in Part B.1.b. But even assuming EPA's theory were correct, Louisiana's extension authority is defined by the 2004 delegation of Section 63.6(i) in Subpart A—not by past iterations of Subpart U that are no longer effective.

Additionally, EPA's 2004 delegation complied with the requirements of Section 112(l)(5).  Contrary to EPA's suggestion, the statute does *not* require an additional step of delegating the standards subject to the extension.  Figure 2 in EPA's brief (at 43) indicates years in which past Subpart U requirements were delegated from EPA to Louisiana.  But EPA omits discussion of the 2004 delegation of Section 63.6(i), which unlike Subpart U, contains the regulatory authority that Louisiana exercised in granting the LDEQ Extension.  Louisiana is not relying on EPA's delegation of Subpart U.  *See* LDEQ Extension at 1 (identifying 40 C.F.R. §§ 63.6(i)(4)(ii) and 6(i)(9) as the regulatory provisions Louisiana exercised in granting extension) (App.63).  EPA's Figure 2 and accompanying discussion are irrelevant.

EPA's argument leads to an illogical conclusion and would effectively preclude states from *ever* exercising extension authority.  The time needed to secure delegations under the process in Section 112(l) and 40 C.F.R. Subpart E can take *years*.  EPA's most recent delegation to Louisiana in 2015 approved requests

submitted over a five-year period (2010-2014).  80 Fed. Reg. 9,613, 9,614 (Feb. 24, 2015) (EPA.Add.44).  This multi-*year* period dwarfs the 90-day deadline by which operators must submit extension requests for Section 112(f) requirements.  *See* 40 C.F.R. § 63.6(4)(ii) (Add.82-83).  Requiring individual standards to be delegated before states can exercise extension authority would render such authority illusory, which explains *why* EPA delegated broad extension authority ahead of promulgating individual standards.  Contrary to EPA's argument, Section 112(l)(5) did not require Louisiana to obtain any additional delegation before exercising the Section 63.6(i) extension authority granted by EPA in 2004.

### b. The Subpart U applicability table does not apply to states and does not divest Louisiana of its delegated extension authority.

The lynchpin of EPA's argument is that the delegation of Section 63.6(i) to Louisiana did not authorize Louisiana to issue extensions of individual emission standards unless Section 63.6(i) was also marked as "applicable" in those individual standards.  EPA Br. 41-43.

As DPE discussed in its opening brief (at 40-43), individual standards—like the "Group I Polymers and Resins" standards found in Subpart U—include an "applicability table" to clarify when requirements in those individual standards supersede the "General Provisions" found in Subpart A.  DPE Br. 41-42.  In Subpart U, this table is labeled as "Table 1."

Critically, Subpart U has never contained any regulatory provisions governing extensions of Section 112(f) standards. Thus, as a legal matter, the Section 63.6(i) provisions are the *only* provisions capable of governing how extensions of Section 112(f) standards under Subpart U are requested and approved. And these extension approval provisions have been delegated to Louisiana.

EPA nonetheless relies on the fact that *Table 1* in Subpart U *previously* designated one of the Section 63.6(i) provisions as not "applicable," even though Subpart U contained no provisions superseding Section 63.6(i) in Subpart A. If EPA's designation is taken at face value, it would mean DPE and other Subpart U operators are not obligated to follow *any* procedures when requesting extensions of Section 112(f) standards. Regardless of what accounts for this clerical misstep in Subpart U,[6] past designations in applicability tables are irrelevant to defining Louisiana's authority to grant extensions. Such authority is defined solely through

---

[6] EPA cites a 2002 rulemaking that it contends removed the "presumptive applicability" of the general provisions in Subpart A, including Section 63.6(i). *See* EPA Br. 46, n.15. But the preamble to that rulemaking underscores why Section 63.6(i) has *always* been applicable to Subpart U owners and operators. There, EPA explained that if an applicability table indicates that a general provision does not apply, "the appropriate requirement would be set out in its entirety in the subpart." 66 Fed. Reg. 16,318, 16,321 (Mar. 23, 2001). Subpart U has no "appropriate requirement" addressing extensions of Section 112(f) standards. Even EPA acknowledged this fact by inviting DPE to request an extension from EPA under Section 63.6(i) and not any Subpart U provisions. *See* 89 Fed. Reg. at 42,955 (Add.221).

the approval and withdrawal of delegations. EPA's argument to the contrary disregards the statute, regulations, and EPA's own guidance.

*Statute*: Section 112(l) provides the process that must be undertaken to delegate authority, and *nowhere* makes a state's delegation of authority contingent on subsequent "applicability" designations. *See supra* Part B.1.a. The absence of such a requirement undercuts the central premise of EPA's argument.

Moreover, EPA's revision of an applicability table in a rulemaking would not even comply with Section 112(l)(6)'s mandatory steps for withdrawing a delegation, which require notice of an intent to withdraw, providing an opportunity to correct deficiencies, a public hearing, and a final determination. *See* DPE Br. 34-35. EPA failed to take any of those required steps.

*Regulations*: EPA's assertion that Subpart U's applicability table in Subpart U defines Louisiana's delegated authority is also contradicted by EPA's own regulations.

First, EPA's regulations expressly state that Table 1 applies only to *owners and operators*—not states. *See* 40 C.F.R. § 63.481(f) (Add.211). Even if EPA correctly designated as inapplicable all the Section 112(f) extension provisions (which it did not),[7] the effect of the designation would be limited to *owners and*

---

[7] EPA has always designated the extension approval authority in § 63.6(i) as "applicable" in Subpart U, Table 1. *See* DPE Br. 47-48.

*operators* like DPE, not states like Louisiana. It would not preclude delegated states from approving extensions pursuant to Section 63.6(i). As noted, the point of the applicability table is to direct owners and operators to general provisions or superseding provisions in an individual standard. The applicability table was never intended as a backdoor mechanism to withdraw existing state delegations.

In explaining that Table 1 is limited to governing the obligations of owners and operators, DPE's brief (at 42) directly quoted Section 63.481(f): "Table 1 of this subpart specifies the provisions of subpart A that apply and those that do not apply to *owners and operators* of affected sources." 40 C.F.R. § 63.481(f) (Add.211) (emphasis added). EPA asserts that DPE's "argument" is "plainly wrong" (EPA Br. 45), but EPA offers no alternative reading of Section 63.481(f)'s plain language. Instead, EPA contends that "[n]othing in the regulatory text suggests that where EPA explicitly excludes a General Provision from a Subpart's relevant standard, a State may still apply that provision...." *Id*. But that is *precisely* what Section 63.481(f) suggests by limiting the applicability of Table 1 to "owners and operators." 40 C.F.R. § 63.481(f). Further, the notion that a state may apply the provision is precisely what Section 112(l) and 40 C.F.R. Subpart E authorize. EPA must delegate and withdraw authorities through delegation procedures and not through applicability designations. If EPA intended to make the extension authority in Section 63.6(i) contingent on subsequent applicability designations, then EPA

should have withheld delegation of Section 63.6(i) altogether and waited to delegate specific extension authority in each individual standard.

Second, contrary to EPA's assertion, no conditions or limitations rendered EPA's express delegation of Section 63.6(i) ineffective. EPA argues that its 2004 delegation of Section 63.6(i) ought to be overcome by Section 63.99(a)(19)(i), which provides that "delegations are subject to all of the conditions and limitations set forth in the Federal law, regulations, policy, guidance, and determinations." EPA Br. 42 (quoting 40 C.F.R. § 63.99(a)(19)(i)). But there are no "conditions or limitations" that would modify the 2004 delegation of Section 63.6(i). EPA clearly identified the Subpart A provisions that "may not be delegated" to Louisiana and, critically, the Section 63.6(i) provisions are *not* listed among the non-delegable provisions. 40 C.F.R. § 63.99(a)(19)(i), n.1 (Add.142- 48; 205).[8]

Additionally, EPA's assertion that Table 1 in Subpart U similarly limits the delegation of Section 63.6(i) has no support. The table does not address delegation at all, nor can it for the reasons described above. Likewise, EPA's 2004 delegation of Section 63.6(i) is not conditioned on individual standards being delegated in the

---

[8] Those non-delegable provisions include approvals of alternative non-opacity emission standards, alternative opacity standards, major alternatives to test methods, and major alternatives to monitoring. *Id.*

future or on applicability table designations.  Without such limitations or conditions, EPA's attempt to rely on general language in Section 63.99(a)(19)(i) fails.

Third, EPA's repeated observation that Subpart U "did not contain [Section 112(f)] standards" is irrelevant to whether Louisiana can grant an extension of the Section 112(f) standards issued in 2024.  EPA Br. 39-40.  DPE did not seek an extension of past Subpart U requirements.  It sought an extension of the specific standards published on May 17, 2024, which, according to EPA, *do* contain Section 112(f) standards.  *Id.* 9.  Section 63.6(i) authorizes the approval of extensions of Section 112(f) standards, to which DPE is now subject.

Fourth, EPA's focus on the designation of Section 63.6(i)(4)(ii) ignores that the operative provision for granting extensions has never been designated as inapplicable in Table 1.  *See* DPE Br. 47-48.  Sections 63.6(i)(9) through (i)(14) "concern *approval of an extension* of compliance requested under paragraphs (i)(4) through (i)(6) of [Section 63.6(i)]...."  40 C.F.R. § 63.6(i)(8) (Add.84) (emphasis added).  Included in these *approval* provisions is Section 63.6(i)(9), which states:

> Based on the information provided in any request made under paragraphs (i)(4) through (i)(6) of this section, or other information, the Administrator (or *the State with an approved permit program) may grant an extension of compliance with an emission standard*, as specified in paragraphs (i)(4) and (i)(5) of this section.

40 C.F.R. § 63.6(i)(9) (Add.85) (emphasis added).  Table 1 has never designated Section 63.6(i)(9) as inapplicable to Subpart U.  Thus, even under EPA's overbroad

reading of Table 1, Louisiana would maintain delegated authority to exercise Section 63.6(i)(9).

EPA argues that Louisiana is indirectly precluded from exercising Section 63.6(i)(9) by virtue of EPA designating Section 63.6(i)(4)(ii) as inapplicable in Table 1. EPA asserts that "paragraph (i)(9) is only relevant and effective to the extent that an extension request could be and is properly made under paragraphs (i)(4) through (i)(6)." EPA Br. 47. But EPA fails to explain why it would then designate Section 63.6(i)(9) as *applicable*. If EPA had been operating under the view it espouses here, it would have designated Section 63.6(i)(9) as *inapplicable* or at least would have clarified its partial inapplicability in the "explanation" column as it does for other requirements. EPA's position that Table 1 divests Louisiana of its delegated authority regardless of the designation is blatantly outcome-driven.

***EPA guidance/practice***: EPA identifies no guidance or prior actions that support its position that Louisiana's delegated authority to exercise Section 63.6(i) is contingent on subsequent designation in an applicability table. EPA fails to point to any rulemaking preambles, agency memoranda, or public-facing documents that suggest applicability tables are capable of divesting already-delegated authority or are required as a condition to exercising such authority. And EPA points to no instance where it took action against a state's use of delegated authority based on a

designation in an applicability table. EPA's position fails because it is incompatible with Section 112 and 40 C.F.R. Part 63, but it is telling that EPA cannot identify any support in its guidance or prior practice for its position here.

      **c.**    **EPA's position that Louisiana never had extension authority is undercut by its attempt to remove such authority.**

EPA barely mentions its attempt in the Rule to prevent Louisiana from granting extensions. *See* EPA Br. 10. EPA states that it amended Section 63.507(c) to "retain[] authority to grant or deny requests for extensions of the compliance date under 40 CFR 63.6(i)(4)(ii)." *Id.* (quoting 89 Fed. Reg. at 42,955) (Add.221). But EPA does not rebut DPE's extensive arguments that EPA's amendment was ineffective. DPE Br. 43-49. For example, DPE explained that Section 63.507—entitled "Implementation and Enforcement" provisions—was adopted in 2003 as part of a broad rulemaking that adopted nearly identical provisions in 47 other subparts, none of which included Section 63.6(i). *Id.* In contrast, EPA's amendment of Section 63.507(c) ineffectively declaring that extension authority could not be delegated was *only* included in Subpart U, acknowledging that this authority to issue an extension *could* be delegated. EPA fails to rebut DPE's arguments that Section 63.507(c) had no legal effect.

EPA's failure is unsurprising: The fact that EPA now seeks to deprive Louisiana of extension authority implies that Louisiana already possessed such authority in the first place. If EPA truly believed that Louisiana *never* had authority

to grant extensions, then EPA would have had no reason to attempt its unprecedented amendment in the Rule. Indeed, if Louisiana *never* had authority to grant extensions and was required to receive delegation of the Rule's Subpart U standards, then EPA could have simply carved out Section 63.6(i) from any future delegation requested by Louisiana. EPA plainly did not view that course of action to be sufficient. The only plausible explanation for EPA's amendment of Section 63.507(c) is that EPA recognized that LDEQ already possessed extension authority through EPA's delegation of such authority in 2004.

### 2.    Louisiana also was authorized to issue the LDEQ extension through its EPA-approved permit program.

Separate from the extension authority expressly delegated to LDEQ in 2004 under Section 112(l)(5), Louisiana was also authorized to issue the LDEQ Extension through its EPA-approved permit program. In September 1995, EPA approved and authorized Louisiana to implement and enforce Louisiana's operating permits program under the CAA. 60 Fed. Reg. 47,296 (Sept. 12, 1995) (Add.263). Section 63.6(i)(9) provides that "the Administrator (*or the State with an approved permit program*) may grant an extension of compliance." 40 C.F.R. § 63.6(i)(9) (emphasis added) (Add.82-85). Section 63.6(i)(1) contains the same reference to a "State with an approved permit program." 40 C.F.R. § 63.6(i)(1) (Add.82-85); DPE Br. 38-39.

EPA argues that Louisiana cannot exercise Sections 63.6(i)(1) and (9) based on its permit program because they are reserved for extensions of Section 112(d) standards only and do not apply to Section 112(f) standards.  EPA Br. 50.  But Section 63.6(i)(1) expressly applies to any extension granted under the entire *paragraph* of 63.6(i), which includes subparagraph 63(6)(i)(4)(ii)—a provision that EPA concedes only governs Section 112(f) standards.  40 C.F.R. § 63.6(i)(1) ("Until an extension of compliance has been granted by the Administrator (or a State with an approved permit program) under this *paragraph*") (emphasis added) (Add.82-85).

Moreover, EPA does not identify any regulatory provisions, guidance, or past documents to support its contention that—despite the regulatory language—Sections 63.6(i)(1) and (9) should be applied solely to Section 112(d) requirements, and not Section 112(f) requirements.  In contrast, EPA guidance *does* instruct that states with an approved permit program can implement extension authority in Section 63.6(i).  DPE Br. 37-38 (citing Seitz Memorandum (Add.274)); *id.* 38-39 (citing Compliance Extensions Summary (Add.268-73)).  The Seitz Memo, issued over 25 years ago, directly contradicts EPA's litigation position, and EPA has never amended it to apply only to Section 112(d) emission standards.

Similarly, EPA rejects its own Compliance Extension Summary, which expressly instructs that a "State with an approved permit program" is authorized to

act on behalf of EPA with respect to *Section 112(f) standards*.  EPA contends its guidance only "paraphrases the regulations in the General Provisions" (EPA Br. 51).  It is hardly surprising for a guidance document to quote the regulations it is interpreting.  But rather than merely reciting regulations, the document separately addresses how the regulations govern extensions under Sections 112(d) and (f) and determines the state may act under both.  Compliance Extensions Summary 5-6 (Add.272-73).  If EPA's current theory were correct, the document would have only described EPA's role in processing extension requests of Section 112(d) standards.

EPA protests that this guidance document—which EPA issued to provide a "step-by-step procedure for obtaining a compliance extension"—should be disregarded because it is "incorrect" and "inelegant."  EPA Br. 51-52.  But *EPA issued that document* (along with the Seitz Memorandum) to guide parties through the Section 112(f) extension procedures.  EPA asks this Court not to give these guidance documents "any interpretative weight," but EPA points to no other guidance containing a different interpretation.  That is because, until this litigation, EPA recognized that states with an approved permit program have authority to grant extensions of Section 112(f) standards.

## <u>CONCLUSION</u>

For the foregoing reasons, DPE respectfully requests that this Court grant

DPE's petition for relief and grant the relief requested in DPE's opening brief.


Date:  January 17, 2025                     Respectfully submitted,

James C. Percy                              */s/ David A. Super*
JONES WALKER LLP                            David A. Super
445 N. Boulevard, Suite 800                 Jason B. Hutt
Baton Rouge, LA 70802                       Jeffrey R. Holmstead
Telephone: (225) 248-2130                   Britt Cass Steckman
jpercy@joneswalker.com                      Kevin M. Voelkel
                                            BRACEWELL LLP
Robert E. Holden                            2001 M Street NW, Ste. 900
Brett S. Venn                               Washington, DC 20036
JONES WALKER LLP                            Telephone: (202) 828-5800
201 St. Charles Ave                         david.super@bracewell.com
New Orleans, LA 70170                       jason.hutt@bracewell.com
Telephone: (504) 582-8000                   jeff.holmstead@bracewell.com
bholden@joneswalker.com                     britt.steckman@bracewell.com
bvenn@joneswalker.com                       kevin.voelkel@bracewell.com


                                            Jeffrey L. Oldham
                                            BRACEWELL LLP
                                            711 Louisiana Street, Suite 2300
                                            Houston, TX 77002
                                            Telephone:  (713) 223-2300
                                            jeffrey.oldham@bracewell.com

***Counsel for Petitioner Denka Performance Elastomer LLC***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 17th day of January 2025, I electronically filed the foregoing REPLY BRIEF OF PETITIONER DENKA PERFORMANCE ELASTOMER, LLC with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I further certify that: (1) any required privacy redactions have been made (5th Cir. R. 25.2.13); (2) the electronic submission is an exact copy of the paper document in compliance with (5 Cir. R. 25.2.1); and (3) the document has been scanned with the most recent version of CrowdStrike Windows Sensor Version 7.19.18913.0, last updated on January 7, 2025, and is free of viruses.


*/s/ David A. Super*
David A. Super

***Counsel for Petitioner***
***Denka Performance Elastomer LLC***

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains **6,480 words**.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Date:  January 17, 2025          */s/ David A. Super*_____
                                  David A. Super

                                  ***Counsel for Petitioner***
                                  ***Denka Performance Elastomer LLC***