No. 24-60351

# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘 𝖋𝖔𝖗 𝖙𝖍𝖊 𝕱𝖎𝖋𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

DENKA PERFORMANCE ELASTOMER LLC,
*Petitioner,*

STATE OF LOUISIANA AND LOUISIANA DEPARTMENT OF ENVIRONMENTAL
QUALITY,
*Intervenors,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL REGAN,
ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*Respondents,*

On Appeal from Environmental Protection Agency
40 CFR Parts 60 and 63

## REPLY BRIEF OF INTERVENORS
## STATE OF LOUISIANA AND LOUISIANA DEPARTMENT OF
## ENVIRONMENTAL QUALITY

NOAH HOGGATT
Executive Counsel

LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY
602 North Fifth Street
Baton Rouge, LA 70802
(225) 219-3985
Noah.Hoggatt@la.gov

ELIZABETH B. MURRILL
Attorney General of Louisiana

KELSEY L. SMITH
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 428-7432
SmithKel@ag.louisiana.gov

*Counsel for Intervenors the
State of Louisiana and the
Louisiana Department of
Environmental Quality*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................3

  I.  LOUISIANA LAWFULLY GRANTED THE EXTENSION OF COMPLIANCE....3

    A.  Cooperative Federalism is Central to the CAA's Structure and Should Inform this Court's Review. .......................................3

    B.  Louisiana Used its Delegated Authority to Grant the Extension.........................................................................................6

      1.  Louisiana has had the delegated authority to grant extensions of compliance since 2004. .......................................7

      2.  Subpart U does not restrict or divest Louisiana's delegated authority to grant an extension of compliance. ...........................8

CONCLUSION ....................................................................................16

CERTIFICATE OF SERVICE................................................................17

CERTIFICATE OF COMPLIANCE.........................................................18

# TABLE OF AUTHORITIES

## Cases

*BCCA Appeal Group v. EPA,*
   355 F.3d 817 (5th Cir. 2003), *as amended on denial of reh'g and reh'g en banc* (Jan. 8, 2004) .................................................................... 4

*Denka Performance Elastomer LLC v. EPA,*
   No. 24-1135 (D.C. Cir. filed May 16, 2024) .......................................... 1

*Fla. Power & Light Co. v. Costle,*
   650 F.2d 579 (5th Cir. 1981) ................................................................ 4

*Ohio v. EPA,*
   603 U.S. 279 (2024) .............................................................................. 4

*Texas v. EPA,*
   690 F.3d 670 (5th Cir. 2012) ................................................................ 5

*Texas v. EPA,*
   829 F.3d 405 (5th Cir. 2016) ................................................................ 4

*Union Elec. Co. v. EPA,*
   427 U.S. 246 (1976) .............................................................................. 4

## Statutes

5. U.S.C. § 706 ......................................................................................... 6

42 U.S.C. § 7407 ..................................................................................... 4

42 U.S.C. § 7408 ..................................................................................... 4

42 U.S.C. § 7409 ..................................................................................... 4

42 U.S.C. § 7412 ..................................................................................... 7

## Regulations

40 C.F.R. § 63.1 ................................................................8

40 C.F.R. § 63.2 ..............................................................12

40 C.F.R. § 63.481 .......................................................8, 10

40 C.F.R. § 63.507 ...........................................................15

40 C.F.R. § 63.99 .........................................................7, 12

40 C.F.R. § 63.6 ....................................................... passim

40 C.F.R. Part 63, Subpart A..............................................7

40 C.F.R. Part 63, Subpart U...............................................8

## Federal Register

69 Fed. Reg. 15687 (Mar. 26, 2004) ......................................7

88 Fed. Reg. 25080 (Apr. 25, 2023) .....................................14

**INTRODUCTION**

Relying on the Proposed Rule, Denka Performance Elastomer LLC (DPE) and Louisiana reasonably anticipated that DPE would have years to meet the Environmental Protection Agency's (EPA) new compliance standards for sources producing neoprene. But the Final Rule changed course, leaving DPE with a Hobson's choice: Either comply with the new requirements within 90 days of the Final Rule's effective date (which is impossible) or shut down.[1]

As the entity with primary authority for implementing and enforcing the Clean Air Act (CAA) requirements within the State, Louisiana prevented an economically disastrous situation by lawfully granting DPE a two-year extension of compliance (the Extension) for

---

[1] The change in compliance deadline, as well as the Final Rule in general, is subject to the separate, on-going challenge in the D.C. Circuit brought by Louisiana, DPE, and other entities affected by the Rule. *See Denka Performance Elastomer LLC v. EPA*, No. 24-1135 (D.C. Cir. filed May 16, 2024). Petitioners' opening briefs were filed on January 17, 2025. Louisiana and DPE's joint brief discusses the change in compliance deadline and the revocation of Louisiana's authority to grant extensions of compliance.

meeting the new standards, thus restoring the timeline to the one originally imagined by the Proposed Rule.

The surprise change in DPE's compliance timeline was but another tactic in EPA's political crusade against DPE to shut down its neoprene producing facility. Throughout this campaign, EPA has continually flouted cooperative federalism and tried to usurp Louisiana's primary authority to implement and enforce CAA requirements within the State.

EPA's brief is yet another example of how little it thinks of the cooperative federalism framework embodied in the CAA—dedicating two paragraphs to Louisiana's arguments based on these important principles. Rather than respecting the way the CAA balances power between state and federal governments in the CAA, EPA impermissibly interferes with Louisiana's primary responsibility to manage air pollution within its borders.

Yet EPA claims it has violated no cooperative federalism principles because Louisiana never had the authority to grant DPE the Extension. This is not true, and it is belied by both the regulatory framework and the text of the general provisions governing extensions of compliance. EPA's stance is arbitrary, capricious, and contrary to the law.

# ARGUMENT[2]

## I.   LOUISIANA LAWFULLY GRANTED THE EXTENSION OF COMPLIANCE.

EPA's declaration that the Extension is "ineffectual" upsets the bedrock principles of the CAA's cooperative federalism framework and undermines Louisiana's delegated authority to implement and enforce the CAA within the State.

### A.   Cooperative Federalism is Central to the CAA's Structure and Should Inform this Court's Review.

EPA brushes past Louisiana's argument about cooperative federalism—that EPA's refusal to acknowledge the Extension as a valid exercise of the State's delegated authority violates the CAA's cooperative federalism framework. EPA Br. 53 (two cursory paragraphs of analysis). EPA's response belittles the importance of Louisiana maintaining its primary enforcement authority and ignores EPA's politically-motivated machinations leading up to this lawsuit.

---

[2] The State continues to take no position on the arguments regarding jurisdiction. State Br. 4 n.1, *see also* DPE Reply at 2–12; EPA Br. 19–36. As previously explained, Louisiana intervened solely because this litigation concerns its long-held authority to grant extensions of compliance.

"The Clean Air Act envisions States and the federal government working together to improve air quality" through the cooperative federalism framework. *Ohio v. EPA*, 603 U.S. 279, 283 (2024). Within this framework, EPA's limited role is to identify air pollutants and establish emission standards to prevent and control pollution. 42 U.S.C. §§ 7408–09; *see also Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 587 (5th Cir. 1981) (describing EPA's role as "narrow"). States with approved programs, including Louisiana, are trusted with a much larger task: The primary enforcement responsibility of CAA requirements within their borders based on professional judgment and localized knowledge. *See BCCA Appeal Group v. EPA*, 355 F.3d 817, 822 (5th Cir. 2003), *as amended on denial of reh'g and reh'g en banc* (Jan. 8, 2004); *see also* 42 U.S.C. §§ 7407(a), 7401(a)(3). As such, the States "have broad authority to determine the methods and particular control strategies they will use to achieve the statutory requirements." *Id.* (citing *Union Elec. Co. v. EPA*, 427 U.S. 246, 266 (1976)).

Even more, "[t]he structure of the Clean Air Act indicates a congressional preference that states, not EPA, drive the regulatory process." *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016). And this

"regulatory design, which requires cooperation between the federal government and the state in administering the CAA, also necessarily informs [this Court's] review." *Texas v. EPA*, 690 F.3d 670, 677 (5th Cir. 2012).

EPA's disregard for Louisiana's cooperative federalism arguments is not surprising: EPA has flouted this framework at every step leading up to this litigation in an attempt to claw back primary jurisdiction over one specific permit—DPE's. As previously explained, EPA has targeted Louisiana and DPE for years, attempting to shut down the facility and unceremoniously strip the State of its primary enforcement responsibility of CAA requirements. *See* State Br. 10–18 (detailing EPA's ongoing attack on DPE and Louisiana and its attempted use of the Final Rule to force DPE to close). The Final Rule's targeted, shortened 90-day deadline for compliance was the latest scheme to ensure permanent closure of DPE's facility, jeopardizing the jobs of hundreds of employees and contractors within the State, and significantly affecting local and State economies.

EPA's proclamation that Louisiana's extension was "ineffectual" is merely the latest ploy to usurp Louisiana's control over the regulatory

processes within the State and is directly at odds with the CAA's cooperative federalism framework. EPA's position is therefore arbitrary, capricious, and contrary to the fundamental structure of the CAA. *See* 5 U.S.C. § 706(2)(A).

## B. Louisiana Used its Delegated Authority to Grant the Extension.[3]

EPA's arguments regarding Louisiana's delegated authority to grant the Extension also miss the mark. Louisiana granted DPE an extension of compliance from the Final Rule's new Section 7412(f) standards that apply to neoprene facilities. *See generally* Extension Letter (Pet. App.63–65). This was improper, according to EPA, largely because Louisiana *never* had the authority to grant an extension of compliance. EPA Br. Part II. But that is plainly incorrect: EPA delegated the authority to grant extensions of compliance to Louisiana under Section 112(l) decades ago.

---

[3] Louisiana largely agrees with DPE's reply briefing on the merits. *See* DPE Reply Part B.

6

> *1.   Louisiana has had the delegated authority to grant extensions of compliance since 2004.*

On March 26, 2004, EPA expressly delegated to Louisiana the authority to implement and enforce Section 112 standards under Section 112(l) of the CAA. 42 U.S.C. §§ 7412(l)(1)–(5) (defining the process for delegation); 69 Fed. Reg. 15687 (Mar. 26, 2004) (Pet. Add.233–41); *see also* State Br. 23–24. This delegation included the general provisions found in Subpart A, which includes the authority to grant extensions of compliance under Section 63.6(i), including the ability to extend the compliance period for Section 7412(f) standards. 69 Fed. Reg. at 15689 (Pet. Add.235); 40 C.F.R. Part 63, Subpart A; *see also* 40 C.F.R. § 63.99(19) ("Delegated Federal Authorities," listing Subpart A as being delegated to Louisiana). Put simply, EPA delegated to Louisiana the authority to grant extensions in 2004, and Louisiana has exercised this authority for decades without EPA's objection or assertion of no legal basis. *See* State Br. 9 & n.3 (collecting examples of Louisiana using its delegated authority to grant compliance extensions). Yet EPA now claims that Louisiana was *never* delegated the extension authority. Its argument, premised on Subpart U, is fundamentally flawed.

2.  *Subpart U does not restrict or divest Louisiana's delegated authority to grant an extension of compliance.*

Subpart U, Table 1 is not outcome determinative for this case, as it has no bearing on the State's delegated authority to grant an extension under Section 63.6(i)(9). *See* State Br. 23–29; *contra* EPA Br. 44–49. Again, that authority was delegated under Section 112(l).

Subpart U comes into play because it sets forth the emission standards for sources producing neoprene. 40 C.F.R. Part 63, Subpart U. As EPA explains, the general provisions require each substantive subpart (those setting forth emission standards) to expressly state which of the general provisions apply to those standards. *See* 40 C.F.R. § 63.1(a)(4)(i). Table 1 does just that: It specifies the provisions of Subpart A "that apply and those that do not apply *to owners and operators of affected sources* subject to [Subpart U]." *Id.* § 63.481(f) (emphasis added); *see also* DPE Reply 18. EPA incorrectly argues that Subpart U restricts the authority broadly delegated to Louisiana through Section 112(l). That is not true for several reasons.

*First*, it is irrelevant that Subpart U "did not contain" Section 112(f) standards. *See* EPA Br. 38–42. The Final Rule promulgated the Section 7412(f) standards that newly apply to Subpart U sources, including to

8

neoprene produced at DPE's facility. And those new standards are the basis of the Extension. This lawsuit is therefore only necessary because of Subpart U's *new* 7412(f) standards and the Final Rule's impossible compliance schedule for DPE. This is not nearly the smoking gun that EPA makes it out to be.

Furthermore, adding Section 7412(f) standards to Subpart U does nothing to cabin Louisiana's ability to grant an extension under Section 63.6(i), as delegated by Section 112(l). This remains true even if EPA were correct that Subpart U could strip Louisiana of its delegated authority to grant an extension (it's not, *see infra* pp. 9–15), because the timeline simply does not work. DPE sought and obtained an extension of compliance from Louisiana *before* the Final Rule went into effect, so the Final Rule's supposed prohibition on a Louisiana's ability to grant an extension of Subpart U's new Section 7412(f) standards was not even applicable.

*Second*, Subpart U, Table 1 does not restrict or divest Louisiana's ability to grant an extension. Section 63.6(i)(4)(ii), the provision to request an extension of Section 7412(f) standards, has historically been listed in Table 1 as "not applicable." EPA mistakenly thinks that ends

the case. *See* DPE Reply 18 ("The lynchpin of EPA's argument is that the delegation of Section 63.6(i) to Louisiana did not authorize Louisiana to issue extensions of individual emission standards unless Section 63.6(i) was also marked as 'applicable' in those individual standards."); *see also* EPA Br. 41–43. Not so.

**a.** EPA gives short shrift to the scope of Table 1, which applies only to owners and operators and has absolutely no bearing on States or their delegated authority. 40 C.F.R. § 63.481(f) ("Table 1 of this subpart specifies the provisions of subpart A that apply and those that do not apply to *owners and operators* of affected sources." (emphasis added)); *see also* State Br. 26–27; DPE Reply 20–21 (discussing EPA's failure to respond to the plain text of this provision). At most, the restriction on Section 63.6(i)(4)(ii) might have been applicable to DPE as the owner and operator of its facility. But it says nothing about Louisiana's delegated authority—especially since the granting provision, Section 63.6(i)(9), was (and continues to be) listed as applicable. The rub? Table 1 does not, and cannot, divest Louisiana of its delegated authority to grant extensions.

The Final Rule's amendment to Table 1 does not change this analysis. Table 1 now lists Section 63.6(i)(4)(ii) as applicable to owners

and operators of affected sources producing neoprene. Going forward, that might alter the responsibilities of an owner or operator who formally request an extension, but it does nothing to alter Louisiana's ability to grant an extension under Section 63.6(i)(9).

**b.** The granting provision, Section 63.6(i)(9), remains the crux of this case. State Br. 24–29; *see also* DPE Reply 23–24. That provision enshrines the delegated authority to issue extensions of compliance: "Based on the information provided in any request made under paragraphs (i)(4) through (i)(6) of this section, or other information, the Administrator … may grant an extension of compliance with an emission standard, as specified in paragraphs (i)(4) and (i)(5) of this section." 40 C.F.R. § 63.6(i)(9).

EPA briefly argues that Louisiana does not qualify as an Administrator because Louisiana was never delegated the authority to grant extension of Section 7412(f) chloroprene standards under Subpart U. EPA Br. 50 n.17. This reasoning is circular and contrary to the statutory definition. "Administrator" is defined in Subpart A as "the Administrator of [EPA] or his or her authorized representative (e.g., a State that has been delegated the authority to implement the provisions

11

of this part)." 40 C.F.R. § 63.2. Louisiana was delegated the authority to implement the provisions of Subpart A back in 2004. *See supra* Part B.1.; 40 C.F.R. § 63.99(19) (listing Subpart A as being delegated to Louisiana). The granting provision also falls under Subpart A. 40 C.F.R. § 63.6(i)(9). And, as explained in the preceding section, nothing in Subpart U rescinds or divests Louisiana of its delegated authority to implement the provisions of Subpart A. *See also* DPE Reply 16–17 (explaining that Subpart U does not require re-delegation of authorities already delegated to States). Therefore, Louisiana is the "Administrator" for purposes of granting extensions of compliance.

The text of the granting provision makes clear that a formal request under Section 63.6(i)(4) is unnecessary to trigger Louisiana's ability to grant an extension. *Contra* EPA Br. 47. The State may grant an extension based on either "the information provided in any request made under paragraphs (i)(4) through (i)(6) of this section*, or other information*[.]" 40 C.F.R. § 63.6(i)(9) (emphasis added). EPA ignores this plain language.

EPA also misreads the second half of paragraph (i)(9), which enables a State to "grant an extension of compliance with *an emission standard*, as specified in paragraphs (i)(4) and (i)(5) of this section." *Id.*

(emphasis added). Paragraphs (i)(4) and (i)(5) specify that Section
7412(d), Section 7412(f), and Lowest Achievable Emission Rate
standards are all fair game for extensions of compliance granted under
paragraph (i)(9). *Id.* §§ 63.6(i)(4), (i)(5). EPA reads too much into the "as
specified" language, claiming it requires a request under paragraph (i)(4).
EPA Br. 47. But that interpretation ignores the language before the
comma: The "as specified" clause merely explains which emission
standards an extension may be granted to cover. It does not create an
independent requirement for a request. Indeed, that would contradict the
first half of the paragraph (which makes clear "other information" can be
the basis of a grant). When read properly as a whole, paragraph (i)(9)
codifies a State's delegated authority to grant an extension of compliance
to Section 7412(f) emission standards based on information not contained
in a request.

Here, there was plenty of information to support Louisiana
granting the Extension. To be sure, Louisiana relied upon information
provided by DPE. But it also considered EPA's own analysis that
explicitly acknowledged a longer time frame was necessary for DPE to
meet the new compliance standards. *See* Extension Letter at 3

(discussing EPA's own determination that compliance would take two years); *see also* Proposed Rule, 88 Fed. Reg. 25080, 25178 (Apr. 25, 2023) (Pet. Add.232) (discussing the two-year compliance deadline and recognizing that the DPE Facility "will require additional time to plan, purchase, and install equipment for … chloroprene control"). Louisiana granted the Extension, which included additional protections to ensure the health of persons is protected from imminent endangerment, after determining that additional time was necessary for DPE to install controls. *Id.*

Moreover, the Extension meets the all criteria set forth in Section 63.6(i)(10). An extension must be in writing, identify affected sourced covered, specify the extension's termination date, specify dates for each step toward compliance (if appropriate), specify other requirements, and specify any additional conditions deemed necessary to assure installation of the necessary controls and protection of the health of persons during the extension period (if appropriate). 40 C.F.R. 63.6(i)(10). Louisiana complied with all of these requirements when issuing the Extension, and nothing in these requirements limit a State's ability to grant an extension to comply with Section 7412(f) standards.

14

Finally, Table 1 has always listed the granting provision as "applicable," which contradicts EPA's argument that a proper request is necessary to trigger the granting provision. *See* DPE Reply 24 ("If EPA had been operating under the view it espouses here, it would have designated Section 63.6(i)(9) as inapplicable or at least would have clarified its partial inapplicability in the "explanation" column as it does for other requirements.").

**c.** The Final Rule's amendment to 40 C.F.R. § 63.507(c) suggests EPA does not believe its own argument. If Louisiana never had the authority to grant an extension of compliance for any Subpart U source, then why amend Section 63.507(c) to newly include "approval of an extension request under § 63.6(i)(4)(ii)" in the list of non-delegable authorities?[4] *See* State Br. 30–32.

*     *     *

Louisiana's granting of the Extension was a valid exercise of its delegated authority. EPA's proclamation that the Extension is "ineffectual" is therefore arbitrary, capricious, and contrary to law.

---

[4] The merits of EPA's attempt to withdraw Louisiana's delegated authority via the amendment to 40 C.F.R. § 63.507(c) is being litigated in the D.C. Circuit litigation.

## CONCLUSION

For the foregoing reasons, Louisiana respectfully requests that this

Court grant DPE's petition for relief.

Respectfully submitted,

NOAH HOGGATT
EXECUTIVE COUNSEL

ELIZABETH B. MURRILL
ATTORNEY GENERAL OF LOUISIANA

LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY
602 North Fifth Street
Baton Rouge, LA 70802
(225) 219-3985
Noah.Hoggatt@la.gov

*/s/ Kelsey L. Smith*
KELSEY L. SMITH
DEPUTY SOLICITOR GENERAL

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 428-7432
SmithKel@ag.louisiana.gov

*Counsel for Intervenors the
State of Louisiana and the
Louisiana Department of
Environmental Quality*

16

## CERTIFICATE OF SERVICE

I certify that on January 24, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this brief complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 2,867 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

Dated:   January 24, 2025

18